# EXHIBIT 2



**U.S. Department of Justice**

Office of Justice Programs

*Office for Victims of Crime*

---

*Washington, D.C. 20531*

**JUL 0 2 2010**

Cassie T. Jones, Ed.D.
Executive Director
Alabama Crime Victims' Compensation Commission
5845 Carmichael Road
Montgomery, AL 36117-2329

Dear Dr. Jones:

The purpose of this letter is to respond to your July 1, 2010, letter requesting clarification regarding the rationale for OVC's listserve message of June 28, 2010 regarding the applicability of the Personal Responsibility and Work Opportunity Reconciliation Act of 1996 to OVC's VOCA formula crime victims' compensation and assistance programs.

OVC consulted with counsel on this matter, and on May 12, 2010, concluded that neither compensation nor assistance funded by VOCA Victim Compensation or Victim Assistance grants are "Federal public benefits" within the meaning of the Personal Responsibility and Work Opportunity Reconciliation Act of 1996[1], and therefore should not be denied to an individual on the ground of status as an unqualified alien under that Act. Generally speaking, the grounds for OVC's conclusion are as follows:

The Act provides that an alien who is not a "qualified alien" (as defined in section 431(b) thereof) is not eligible for any "Federal public benefit." Federal public benefit, in turn, is defined in section 401(c)(1) to mean ---

> (A) any grant, contract, loan, professional license, or commercial license provided by an agency of the United States or by appropriated funds of the United States; and

> (B) any retirement, welfare, health, disability, public or assisted housing, post secondary education, food assistance, unemployment benefit, or any other similar benefit for which payments or assistance are

---

[1]     Pub. L. No. 104-193, codified at 8 U.S.C. ch. 14 (the Act). Pursuant to §§ 401(b)(1)(D) and 411(b)(4) of the Act, the Attorney General ("AG") may specify the types of programs, services, and assistance to which the Act's limitations apply. This was done in AG Order No. 2353-2001, 66 Fed. Reg. 3613 (Jan. 16, 2001). The AG Order sets out general criteria for such programs, services, and assistance, and refers service providers to the benefit-granting agency's interpretation of the term "federal public benefit" to determine whether a particular program is subject to the alienage restrictions of the Act.

provided to an individual, household, or family eligibility unit by an agency of the United States or by appropriated funds of the United States.

<u>Victim Compensation and Assistance Payments</u>

Section 1403 of VOCA authorizes funding for State crime victim *compensation* programs if such programs, at a minimum, offer compensation to victims and survivors of victims of criminal violence. Such compensation covers expenses associated with the crime, such as medical or funeral expenses or lost wages attributable to a physical injury caused by the crime. Additionally, the State crime victim compensation programs should promote victim cooperation with the reasonable requests of law enforcement and may not discriminate against any victim, regardless of the victim's residency.

Section 1404 of VOCA provides grants to a State to support crime victim *assistance* programs that provide services to victims of crime, especially underserved victim populations with a priority given to victims of sexual assault, spousal abuse, or child abuse. Eligible victim assistance programs are run either by a public agency or by a non-profit entity, and provide services addressing immediate physical and psychological health and safety,[2] personal advocacy,[3] mental health counseling and care, and assistance with participation in criminal justice proceedings, including forensic medical evidence collections and interviews.[4]

The VOCA formula compensation and assistance grants to states are funded solely from the Crime Victims Fund ("Fund"), established under section 1402 of VOCA as a separate account in the Treasury. Nearly all fines that are collected from persons convicted of offenses against the United States are required by statute to be deposited in the Fund, as well as certain other criminal penalties and forfeitures, and any gifts, bequests, or donations from private entities or individuals. In other words, the money in the Fund comes from criminals or those seeking to help crime victims. The money in the Fund does not come from taxes or general revenues, which is how federal programs are typically funded.

<u>Victim Compensation</u>

Victim compensation payments are not a "Federal public benefit" under the Act. Section 401(c)(1) of the Act lists as federal public benefits "retirement, welfare, health, disability, public or assisted housing, post secondary education, food assistance, unemployment benefit, or any other similar benefit" but only where such benefit is

---

[2]    These services include, but are not limited to, crisis intervention services, emergency food and shelter, emergency costs of health care items, and emergency legal assistance such as a temporary restraining order.

[3]    These services include, but are not limited to, assessing the impact of the crime, case management, identifying needs and obtaining information and referrals for continued services.

[4]    *See* VOCA Assistance Guidelines, § IV.E, 62 Fed. Reg. 19,607, 19,616 (April 22, 1997).

"provided to an individual, household, or family eligibility unit . . . ." Victim compensation payments are not among the listed benefits. Nor are they "similar benefit[s]" as none of the listed benefits shares the unique characteristics of victim compensation payments.

The nature of victim compensation payments is distinct from that of the payments listed in the definition of "Federal public benefit." The listed benefits are generally in the nature of those that assist people in overcoming financial hardship until they can sustain themselves financially (welfare, food assistance, unemployment, disability), are an earned benefit (such as retirement), or are a benefit designed to sustain people at a minimum level of well-being (health, post secondary education). The listed benefits share a common characteristic of generally affording an individual a standard of living or advantage that in the general course of everyday living they would not otherwise have.[5] Moreover, the listed benefits are generally of an ongoing character. Finally, section 400 of the Act specifies that the purpose of denying unqualified aliens access to these listed benefits is to "remove the incentive for illegal immigration provided by the availability of public benefits," thereby indicating that such "similar" benefits would be those that would serve as incentives for illegal immigration and could be seen as providing an extra value that could be obtained by entry into the United States.

In sharp contrast, a victim compensation payment is a one-time reimbursement for an actual loss that a person suffered as a result of being a victim of crime. It does not provide an ongoing benefit that an individual would otherwise not have in the course of everyday living, but seeks, rather, to restore the person to pre-victimization status. In this way, crime victim compensation payments are in the nature of restitution[6], not an additional value or benefit. VOCA's conceptual underpinning is that its crime victim compensation grants provide funds from criminals to be given to victims of crime; the general tax payer does not contribute to the compensation payments provided to victims of crime -- only criminals do. The benefits listed in the Act's definition of "Federal public benefit," however, are paid for with tax revenues exacted from the general public. Moreover, crime victim compensation payments do not provide an incentive for illegal immigration -- clearly, people do not set out for the United States to become victims of crime.

VOCA compensation payments are further distinguished from the benefits in the Act in that they are specifically intended to promote victim co-operation with the reasonable requests of law enforcement. This is a statutory requirement, in the nature of consideration, that section 1403(b)(2) of VOCA places on all State crime victim compensation programs. And this "consideration" and public safety aspect is a distinction not only in purpose, but also in the effect of the payments (*i.e.*, enhancement

---

[5]    *See, e.g., Basiente* v. *Glickman*, 242 F.3d 1137, 1140 (9th Cir. 2001) (finding that the U.S. Department of Agriculture's Nutritional Assistance Program was a federal public benefit).

[6]    Black's Law Dictionary defines restitution as "return or restoration of some specific thing to its rightful owner or status [or] compensation or reparation for the loss caused to another."

of law enforcement efforts), that further differentiates victim compensation payments from the Act's list of benefits. Many of the benefits listed in the definition of "Federal public benefit" do not require specific action on the part of a beneficiary in exchange for the provision of the benefit. Excluding unqualified aliens from victim compensation payments would not only fail to serve the legislative intention that the Act itself expressly articulates (that of discouraging illegal immigration), but also undermine public safety by eliminating an incentive for victim co-operation with law enforcement and prosecution efforts.[7]

Victim Assistance

Much of the analysis relating to the victim compensation payments applies with like force to victim assistance grants, and although the matter is not entirely free from doubt, victim assistance services do not appear to be "Federal public benefit[s]" under the Act. As with victim compensation, victim assistance services are not among the listed benefits, nor are they "similar benefit[s]" under the Act. Unlike the listed benefits, victim assistance grants are funded by the Crime Victims Fund rather than tax revenues and are intended to restore a crime victim to pre-victimization status. Moreover, any victim assistance service under the program is predicated on the recipient's having been a victim of crime, and therefore crime victim assistance payments are unlikely to provide an incentive for potential immigrants to travel or stay in the United States.

But even if victim assistance services somehow were considered to fall within the meaning of "Federal public benefits" under the Act, section 401(b)(1) thereof provides exceptions to the prohibition of providing benefits to unqualified aliens. Specifically, programs qualifying for the exception are programs that provide non-cash services at the community level; do not condition the provision, amount, or cost of the assistance on the recipient's income or resources; and are necessary for the protection of life and safety. Paragraph 4 of AG Order No. 2353-2001, 66 Fed. Reg. at 3616, clarifies what programs are necessary for the "protection of life and safety":

> (a) Crisis counseling and intervention programs; services and assistance relating to child protection, adult protective services, violence and abuse prevention, victims of domestic violence or other criminal activity; or treatment of mental illness or substance abuse;

---

[7]    *Cf. Rajeh v. Steel City Corp.*, 813 N.E.2d 697, 706 - 707 (Ohio App. 2004) (discussing similar definition in the Act applicable to state and local governments, and concluding that workers' compensation was unlike the eight listed benefits in that it had a purpose of serving as a substitute for negligence claims and promoting safety in the workplace, a purpose that would be undermined by excluding unqualified aliens); *Caballero v. Martinez*, 897 A.2d 1026, 1031 fn.1 (N.J. 2006) (citing *Rajeh*, and finding that New Jersey Unsatisfied Claim and Judgment Fund payments for injuries caused by unidentified or uninsured motorists, did not fall within the Act's definition of public benefit because of the unique nature of the funding and because the payments were not need-based or income-based, but rather were determined by the extent of a person's injuries).

(b) Short-term shelter or housing assistance for the homeless, for victims of domestic violence, or for runaway, abused, or abandoned children;

(c) Programs, services, or assistance to help individuals during periods of heat, cold, or other adverse weather conditions;

(d) Soup kitchens, community food banks, senior nutrition programs such as meals on wheels, and other such community nutritional services for persons requiring special assistance;

(e) Medical and public health services (including treatment and prevention of diseases and injuries) and mental health, disability, or substance abuse assistance necessary to protect life or safety;

(f) Activities designed to protect the life or safety of workers, children and youths, or community residents; and

(g) Any other programs, services, or assistance necessary for the protection of life or safety.

Most victim assistance programs clearly are included under ¶4(a), (b), (e) and (f) of the AG Order. Victim assistance services addressing immediate physical and psychological health and safety are medical and mental health services necessary to protect life or safety, as are personal advocacy services, mental health counseling and care for victims are crisis counseling and the treatment of mental illness and mental health, and assistance with participation in criminal justice proceedings are activities designed to protect the life or safety of community residents. Section 1404(a)(2)(A) of VOCA specifies that state administering agencies must give priority funding to programs providing assistance to victims of sexual assault, spousal abuse, or child abuse -- areas encompassed by the AG Order. Furthermore, the federal regulations implementing the VOCA formula assistance program explicitly require state or local programs receiving VOCA funding to provide in-kind services, unless waiver is granted.[8]

Finally, many (if not most) programs receiving VOCA funding for victim assistance are (and in all likelihood will continue to be) non-profit charitable organizations, thereby falling within section 432(d) of the Act, which exempts such organizations from determining, verifying, or otherwise requiring proof of eligibility of any applicant for federal public benefits.

---

[8] VOCA Assistance Guidelines, § IV.B.12, 62 Fed. Reg. at 19,616 ("Subrecipients must provide services to crime victims, at no charge [absent] prior approval by the state grantee.").

It is my sincere hope that this additional information has been helpful and responsive to your request.

Sincerely,

Joye E. Frost
Acting Director