# EXHIBIT #1




# DOJ Grants Financial Guide



**UNITED STATES DEPARTMENT OF JUSTICE**

OFFICE OF JUSTICE PROGRAMS

OFFICE ON VIOLENCE AGAINST WOMEN

OFFICE OF COMMUNITY ORIENTED POLICING SERVICES

Last Updated October 2024





# Table of Contents

FOREWORD ...........................................................................................................II

I. GENERAL INFORMATION ..............................................................................1

1.1 Users ..............................................................................................................1

1.2 Resources ......................................................................................................3

II. PREAWARD REQUIREMENTS.......................................................................5

2.1 Application Process .......................................................................................5

2.2 Acceptance of Award and Award Conditions................................................10

2.3 Standards For financial Management Systems ............................................12

III. POSTAWARD REQUIREMENTS ...................................................................16

3.1 Payments .......................................................................................................16

3.2 Period of Availability of Funds ......................................................................20

3.3 Cost Sharing Requirements ..........................................................................25

3.4 Program Income ............................................................................................31

3.5 Adjustments to Awards .................................................................................36

3.6 Costs Requiring Prior Approval .....................................................................40

3.7 Property Standards ........................................................................................44

3.8 Procurement Under Awards of Federal Assistance.......................................52

3.9 Allowable Costs .............................................................................................58

3.10 OJP/COPS Office Conference Approval, Planning, and Reporting..............66

3.11 Indirect Costs ..............................................................................................89

3.12 OJP's Confidential Funds ...........................................................................93

3.13 Unallowable Costs .......................................................................................100

3.14 Subrecipient Management and Monitoring..................................................104

3.15 Reporting Requirements ..............................................................................111

3.16 Retention and Access Requirements for Records.......................................115

3.17 Remedies for Noncompliance .....................................................................117

3.18 Closeout.......................................................................................................119

3.19 Audit Requirements ......................................................................................122

3.20 Grant Fraud, Waste, and Abuse .................................................................128

3.21 OJP's Payment Programs ...........................................................................133

3.22 Financial Management Training Requirements............................................138

IV. ORGANIZATION STRUCTURE ......................................................................139

4.1 Organization Charts.......................................................................................139

V. APPENDICES ..................................................................................................140

5.1 Acronyms .......................................................................................................140

5.2 Glossary of Terms ..........................................................................................142

5.3 Appendices I and II ........................................................................................146

# Welcome to the *DOJ Grants Financial Guide*

## Foreword

We hope you find this guide useful and informative. If you have any questions or comments, please contact your appropriate DOJ Funding Source.

| TOP 10 TOPICS | |
|---|---|
| 1. **Financial Management Systems** | 6. **Audit Requirements** |
| 2. **Allowable Costs** | 7. **Conference Costs** |
| 3. **Unallowable Costs** | 8. **Adjustments to Awards** |
| 4. **Federal Financial Reports** | 9. **Accounting by Approved Budget Category** |
| 5. **Performance Reports** | 10. **Subrecipient Monitoring** |

The Department of Justice (DOJ) has three primary grant-making components, the Office of Justice Programs (OJP), the Office on Violence Against Women (OVW) and the Office of Community Oriented Policing Services (COPS Office). The mission of OJP is to provide innovative leadership to federal, state, local, and tribal justice systems by disseminating state-of-the-art knowledge and practices across America, and providing grants for the implementation of these crime fighting strategies. The mission of OVW is to provide federal leadership in developing the national capacity to reduce violence against women, and administer justice for and strengthen services to victims of domestic violence, dating violence, sexual assaults, and stalking. The mission of the COPS Office is to advance the practice of community policing by the nation's state, local, territory, and tribal law enforcement agencies through information and resources.

These three grant-making components provide Federal leadership in developing the nation's capacity to prevent and control crime, administer justice, and assist crime victims. they also provide policy guidance, financial control, and support services to their recipients in the areas of grants, accounting, and financial management.

Each grant-making component conducts programmatic monitoring through site visits and desk reviews, and provides technical assistance and training to recipients. Additionally, OJP's Office of the Chief Financial Officer (OCFO) conducts financial monitoring through site visits and desk reviews, and provides training to OJP's recipients in the Grants Financial Management Training Seminars.

> ⓘ **FINANCIAL MANAGEMENT TIP**
>
> The DOJ Grants Financial Management Online Training is available to all DOJ grant-making component recipients.

The *DOJ Grants Financial Guide* (the *"Guide"*) serves as the primary reference manual to assist OJP, OVW, and COPS Office award recipients in fulfilling their fiduciary responsibility to safeguard grant funds and ensure funds are used for the purposes for which they were awarded. It compiles a variety of laws, rules and regulations that affect the financial and administrative management of your award. there may be instances where the requirements may differ among the three grant-making components; to the extent possible, those differences are spelled out throughout this *Guide*. However, recipients (and subrecipients) should refer to their award terms and conditions to determine the specific requirements that apply to their award. We have provided references to the underlying laws and regulations as much as possible.

# Foreword

This *Guide* should be the starting point for all recipients and subrecipients of DOJ grants and cooperative agreements in ensuring the effective day-to-day management of awards.

For additional information on grants management, please visit the website of the Results-Oriented Accountability for Grants Council on Financial Assistance Reform at https://www.performance.gov/. The Government Printing Office also maintains electronic copies of the Code of Federal Regulations at https://ecfr.federalregister.gov and e-CFR at https://www.ecfr.gov.

We are pleased to respond to any questions not covered by this *Guide* and welcome suggestions to improve the utility of the Guide and its content. Please feel free to contact the OCFO's Customer Service Center at 1-800- 458-0786, OVW Grants Financial Management Division at 1-888-514-8556, or COPS Office Response Center at 1-800-421-6770 with any financial management questions or suggested revisions. In addition, questions and comments can also be directed to the OCFO via e-mail at ask.ocfo@usdoj.gov, OVW via email at OVW.GFMD@usdoj.gov, or COPS Office via email at askCopsRC@usdoj.gov.

| Hugh T. Clements, Jr. | Brent Cohen | Rosie Hidalgo |
|---|---|---|
| Director | Acting Assistant | Director |
| COPS Office | Attorney General, OJP | OVW |

E1-04

III. Postaward Requirements

## 3.13 UNALLOWABLE COSTS

### Introduction

Federal awards generally provide recipients and/or subrecipients with the funds necessary to cover costs associated with the award program. There are other costs, however, categorized as unallowable costs, that will not be reimbursed. Recipients and subrecipients must not use award or match funding for unallowable costs. Also within the category of unallowable costs are any costs considered inappropriate by the awarding DOJ agency. See 2 C.F.R. § 200.1 (Disallowed Cost)

The allowability of certain costs is discussed in 2 C.F.R. § 200, Subpart E - Cost Principles. (For-profit entities and hospitals follow different cost principles – see FAR 31.2, and 2 C.F.R. Part 200b Appendix. IX, respectively; and certain nonprofit organizations are exempted from the cost principles in Subpart E, see 2 C.F.R. Part 200  Appendix VIII).

Unallowable cost items that may be of particular relevance for DOJ-funded programs are highlighted below.

### Land Acquisition

DOJ grant funds may not be used for land acquisition. See, e.g., 34 U.S.C. 10233.

### Compensation of Federal Employees

This category of unallowable costs includes salary payments, consulting fees, or other compensation to full-time Federal employees.

### Travel of Department of Justice (DOJ) Employees

Award funds may not be spent on transportation, lodging, subsistence, and related travel expenses of agency DOJ employees.

### Bonuses or Commissions

Recipients and subrecipients cannot pay any bonus or commission to any individual or organization to obtain approval of an application for award assistance.

Distribution of earnings in excess of costs, such as when used for bonuses and commissions for certain positions for non-profit organizations, may be unallowable. See 2 C.F.R. § 200.430(h)

> ☑ **ACTION ITEM**
>
> Be sure to check the award package to determine which salaries, fringe benefits, and other personnel costs are allowable under the specific award.

### Lobbying

Recipients and subrecipients must comply with the provisions in 2 C.F.R. § 200.450 (Lobbying) and 18 U.S.C. 1913, as appropriate. Also, see Chapter 2.1 of this *Guide* for more specifics about restrictions on lobbying.

- The lobbying cost prohibition applies to all award recipients and subrecipients.
- Award funds cannot be used for the following purposes:
  - ▶ Attempting to influence the outcome of any Federal, State, or local election, referendum, initiative, or

## 3.13 UNALLOWABLE COSTS

similar procedure, through in-kind or cash contributions, endorsements, publicity, or similar activity;

▶ Establishing, administering, contributing to, or paying for the expenses of a political party, campaign, political action committee, or other organization established to influence the outcome of elections;

▶ Attempting to influence (a) the introduction of Federal or State legislation; or (b) the enactment or modification of any pending Federal or State legislation through communication with any member or employee of the Congress or State legislature (including efforts to influence State or local officials to engage in similar lobbying activity), (c) the enactment or modification of any pending Federal or State legislation by preparing, distributing, or using publicity or propaganda, or by urging members of the general public, or any segment thereof, to contribute to or participate in any mass demonstration, march, rally, fund raising drive, lobbying campaign or letter writing or telephone campaign, or (d) with any Government official or employee in connection with a decision to sign or veto enrolled legislation;

▶ Engaging in or supporting the development of publicity or propaganda designed to support or defeat legislation pending before legislative bodies;

▶ Paying, directly or indirectly, for any personal service, advertisement, telephone, letter, printed or written matter, or other device, intended or designed to influence a member of Congress or of a State legislature to favor or oppose, by vote or otherwise, any legislation or appropriation by either Congress or a State legislature, whether before or after the introduction of any bill or resolution proposing such legislation or appropriation;

▶ Engaging in legislative liaison activities, including attendance at legislative sessions or committee hearings, gathering information regarding legislation, and analyzing the effect of legislation, when such activities are carried out in support of or in knowing preparation for an effort to engage in unallowable lobbying;

▶ Paying a publicity expert for purposes unallowable under the anti-lobbying rules; or

▶ Attempting to improperly influence, either directly or indirectly, an employee or officer of the executive branch of the Federal Government to give consideration or to act regarding a sponsored agreement or a regulatory matter.

■ The Anti-Lobbying Act, 18 U.S.C. § 1913, contains significant restrictions on the use of appropriated funding for lobbying.

▶ These anti-lobbying restrictions are enforceable via large civil penalties, with civil fines between $10,000 and $100,000 per each individual occurrence of lobbying activity.

▶ These restrictions are in addition to the anti-lobbying and lobbying disclosure restrictions imposed by 31 U.S.C. § 1352.

■ All recipients must understand that no federally appropriated funding made available under the grant program may be used, either directly or indirectly, to support the enactment, repeal, modification, or adoption of any law, regulation, or policy, at any level of government, without the express approval of DOJ.

■ Any violation of this prohibition is subject to a minimum $10,000 fine for each occurrence. Tis prohibition applies to all activity, even if currently allowed within the parameters of the existing OMB guidance.

■ Any question(s) relating to the lobbying restrictions should be submitted in writing to the DOJ agency's ethics official (typically in the awarding DOJ agency's Office of the General Counsel) through the DOJ program manager.

## III. Postaward Requirements

### 3.13 UNALLOWABLE COSTS

> ▶ **OVW SPECIFIC TIP**
>
> OVW has some programs with purpose areas that expressly authorize "developing and promoting state, local, or tribal legislation and policies that enhance best practices for responding to domestic violence, dating violence, sexual assault, and stalking." Recipients with questions on specific authorized activities should contact their grant manager.

### Fundraising

The costs of organized fundraising, including financial campaigns, endowment drives, solicitation of gifts and bequests, and similar expenses incurred solely to raise capital or obtain contributions may not be charged as direct or indirect costs against awards. However, certain fundraising costs for meeting the Federal program objectives may be allowable with the prior approval of the DOJ awarding agency. See 2 C.F.R. § 200.442 for more details.

- The portion of a person's salary that covers time spent engaged in unallowable fundraising, and any indirect costs associated with those salaries, may not be charged to the award.
- An organization may accept donations (e.g., goods, space, services) towards fundraising, as long as the value of the donations is not charged as a direct or indirect cost to the award.
- Nothing in this section should be read to prohibit a recipient from engaging in fundraising activities, as long as such activities are not financed by Federal or matching funds.

### Corporate Formation

The cost for corporate formation (startup costs) may not be charged as either direct or indirect costs against the award except with prior approval from the awarding DOJ agency. See 2 C.F.R. 200.455.

> ▶ **OVW SPECIFIC TIP**
>
> OVW's Grants to Tribal Domestic Violence and Sexual Assault Coalitions may allow for corporate formation costs to be charged directly to the award.

### Legal Services for Aliens

Except as indicated in the following sentence, costs of providing legal services (that is, professional services of the kind lawfully provided only by individuals licensed to practice law) to any removable alien (see 8 U.S.C. § 1229a(e)(2)) or any alien otherwise unlawfully present in the United States are disallowed and may not be charged against the award.

Costs for legal services disallowed under the preceding sentence do not include costs for legal services— (1) to obtain protection orders for victims of crime (including associated or related orders (e.g., custody orders), arising from the victimization); (2) that are associated with or relate to actions under 18 U.S.C. ch. 77 (peonage, slavery, and trafficking in persons); (3) to obtain T-visas, U-visas, or "continued presence" immigration status (see, e.g., 8 U.S.C. § 1101(a)(15)(T) & (U); 22 U.S.C. § 7105(c)(3)(A)); or (4) as to which such disallowance would contravene any express requirement of any law, or of any judicial ruling, governing or applicable to the award.

## 3.13 UNALLOWABLE COSTS

**Other Unallowable Costs**

Other categories of unallowable costs include:

- Entertainment, including amusement, diversion, social activities, and any associated costs (e.g., gifts, tickets to shows or sports events, meals, lodging, rentals, transportation, and gratuities) are unallowable. Certain exceptions may apply when such costs have a specific and direct programmatic purpose and have been approved by the awarding DOJ agency (2 C.F.R. 200.438);

- Fines and penalties, except when incurred as a result of compliance with specific provisions of an award or contract, or with prior written approval from the awarding DOJ agency (2 C.F.R. 200.441);

- Honoraria is unallowable when the primary intent is to confer distinction on, or to symbolize respect, esteem, or admiration for the recipient of the honorarium. A payment for services rendered, such as a speaker's fee under an award is allowable.

- Bar charges/alcoholic beverages (2 C.F.R. 200.423), and

- Membership fees to organizations whose primary activity is lobbying (2 C.F.R. 200.454(e))

> **▶ OJP SPECIFIC TIP**
>
> The use of BJA grant funds for unmanned aircraft systems (UAS), including unmanned aircraft vehicles (UAV), and all accompanying accessories to support UAS or UAV is unallowable.

**Costs Incurred Outside the Project Period**

Any costs that are incurred either before the start of the project period or after the expiration of the project period (except for closeout costs, see 2.C.F.R.200.471(b) are not allowable, unless written approval covering these costs is granted by the awarding DOJ agency. See Section 3.2, Period of Availability of Funds.

## III. Postaward Requirements

### 3.14 SUBRECIPIENT MANAGEMENT AND MONITORING

#### Introduction

A subaward is an award provided by a pass-through entity to a subrecipient for the subrecipient to contribute to the goals and objectives of the project by carrying out part of a Federal award received by the pass-through entity. The pass-through entity may use any form of legal agreement for making a subaward, including an agreement that the pass-through entity considers a contract. It does not include payments to a contractor, beneficiary, or participant.   See 2 C.F.R. § 200.1 ("Definition").

Under 2 C.F.R. § 200.331 (Subrecipient and Contractor Determinations), the pass-through entity is responsible for making case-by-case determinations to determine whether the entity receiving federal funds is a subrecipient or contractor. All of the characteristics listed below may not be present in all cases, and some from both categories may be present at the same time. The pass-through entity must use judgment in classifying each agreement as a subaward or a procurement contract.

The following characteristics that support the classification of an entity as a subrecipient include, but are not limited to, when the entity:

- Determines who is eligible to receive what Federal assistance;
- Has its performance measured in relation to whether the objectives of the Federal program were met;
- Has responsibility for programmatic decision-making;
- Is responsible for adhering to applicable program requirements under the Federal award; and
- Implements a program for a public purpose specified in the authorizing statute, as opposed to providing goods or services for the benefit of the pass-through entity.

In contrast, a contract is for the purpose of obtaining goods and services for the recipient's or subrecipient's  use and creates a procurement relationship with the contractor. The following characteristics that support the classification as a contractor include, but are not limited to, when the contractor

- Provides the goods and services within normal business operations;
- Provides similar goods or services to many different purchasers;
- Normally operates in a competitive environment;
- Provides goods or services that are ancillary to the implementation of a Federal program; and
- Is not subject to the compliance requirements of the Federal program as a result of the agreement, however similar requirements may apply for other reasons.

> ### ⓘ FINANCIAL MANAGEMENT TIP
>
> In determining whether an agreement between a pass-through entity and non- federal entity creates a subrecipient or a contractor relationship, the substance of the relationship is more important than the form of the agreement.

The contract or other written agreement must not affect the recipient's overall responsibility and accountability to the Federal Government as the award recipient for the duration of the project. The recipient of the award is responsible for monitoring the subrecipient and ascertaining that all fiscal and programmatic responsibilities are fulfilled.

E1-09

## 3.14 SUBRECIPIENT MANAGEMENT AND MONITORING

### Subrecipient Monitoring

The purpose of subrecipient monitoring is to ensure that the subaward is being used for the authorized purpose, in compliance with the federal program and grant requirements, laws, and regulations, and the subaward performance goals are achieved. All pass-through entities must verify that the subrecipient is not excluded or disqualified from receiving Federal funds. See 2 C.F.R. § 200.332(a).

All pass-through entities are required to monitor their subrecipients. The requirements for subrecipient monitoring can be found in 2 C.F.R. § 200.332(e), (f), and (g). See also the audit requirements applicable to subrecipients contained in Subpart F of 2 C.F.R. Part 200.

Under 2 C.F.R. § 200.415(b), all pass-through entities must require subrecipients of all tiers certify to them whenever applying for funds, requesting payment, and submitting financial reports: "I certify to the best of my knowledge and belief that the information provided herein is true, complete, and accurate. I am aware that the provision of false, fictitious, or fraudulent information, or the omission of any material fact, may subject me to criminal, civil, or administrative consequences including, but not limited to violations of U.S. Code Title 18, Sections 2, 1001, 1343 and Title 31, Sections 3729-3730 and 3801-3812." Each such certification must be maintained pursuant to the requirements of 2 C.F.R. § 200.334.

Additional requirements can be found in the program legislation and the terms and conditions of the award. As part of the organization's subrecipient monitoring process, it is important to develop systems, policies, and procedures to ensure that subrecipient reviews are conducted in accordance with Federal program and grant requirements, laws, and regulations. Additionally, organizations should develop, implement, and perform procedures to ensure that the subrecipient obtains the required audits, and that audit findings identified in subrecipient audit reports are timely and effectively resolved and corrected.

### Subrecipient Agreements

When a pass-through entity makes an award to a subrecipient, the Federal award information and applicable compliance requirements, including applicable special conditions, must be clearly identified in the subrecipient award agreement. Pass-through entities must ensure subaward documents include the following information at the time of the subaward (2 C.F.R. § 200.332(b)). If any of these data elements change during the period of performance, the changes must be included in subsequent subaward modifications. The subaward must include the following information:

- Federal Award Identification;
  - Subrecipient's Name (must match the name associated with its unique entity identifier);
  - Subrecipient's unique entity identifier);
  - Federal Award Identification Number (FAIN);
  - Federal Award Date;
  - Subaward Period of Performance Start and End Date;
  - Subaward Budget Period Start and End Date;
  - Amount of Federal Funds Obligated in the subaward;
  - Total Amount of Federal Funds Obligated to the Subrecipient including the current financial obligation;
  - Total amount of the Federal Award committed to the subrecipient;
  - Federal Award Project Description;
- Name of the Federal Agency, Pass-through entity, and contact information for the awarding official of the pass-through agency.

## III. Postaward Requirements

### 3.14 SUBRECIPIENT MANAGEMENT AND MONITORING

- Assistance listings title and number (the pass-through entity must identify the dollar amount under each Federal award and the Assistance Listings Number at the time of disbursement);

- Identification of whether the Federal award is for research and development;

- Indirect cost rate for the Federal award (including if the de minimis rate is used in accordance with 2 C.F.R. § 200.414);

- All requirements of the subaward, including requirements imposed by Federal statutes, regulations, and the terms and conditions of the Federal award;

- Any additional requirements that the pass-through entity imposes on the subrecipient for the pass- through entity to meet its responsibilities under the Federal award. This includes information and certifications (See 2 C.F.R. § 200.415) required for submitting financial and performance reports that the pass-through agency must provide to the DOJ agency;

- Indirect cost rate to be used by the subrecipient (either a federally-approved rate, a rate negotiated between the pass-through entity and the subrecipient, or the de minimis indirect cost rate);

- A requirement that the subrecipient permit the pass-through entity and auditors t o access the subrecipient's records and financial statements for the pass-through entity to fulfill its monitoring requirements of 2 C.F.R. Part 200; and

- Appropriate terms and conditions concerning the closeout of the subaward.

Additional elements to consider including in the agreement are listed in this chapter in the Best Practices section.

**Subrecipient Monitoring Procedures**

The pass-through entity must have established written policies on subrecipient monitoring, as described in 2 C.F.R. § 200.332. The pass-through entity is required to monitor the subrecipient's use of Federal funds during the program period. The pass-through entity must evaluate each subrecipient's fraud risk and risk of non-compliance with a subaward to determine the appropriate subrecipient monitoring. When evaluating a subrecipient's risk, a pass-through entity should consider the following:

- Subrecipient's prior experience with the same or similar subawards;

- Results of previous audits;

- Whether the subrecipient has new personnel or a new or substantially changed systems; and

- The extent and results of any Federal agency monitoring. See 2 C.F.R. § 200.332(c).

Subrecipients may be evaluated as higher risk or lower risk to determine the need for closer monitoring. Generally, new subrecipients require closer monitoring. For existing subrecipients, closer monitoring may be warranted based on results noted during monitoring and subrecipient audits, (e.g., the subrecipient has a history of non-compliance as either a recipient or subrecipient, new personnel, or new or substantially changed systems).

- Programs with complex compliance requirements have a higher risk of non-compliance;

- The larger the percentage of program awards passed through, the greater the need for subrecipient monitoring;

- Larger dollar awards are of greater risk.

Some of the mechanisms that may be used to monitor subrecipient activities throughout the year include regular communication with subrecipients, and appropriate inquiries concerning program activities; performing subrecipient site visits to examine financial and programmatic records and observe operations; and reviewing detailed financial and program data and information submitted by the subrecipient.

## 3.14 SUBRECIPIENT MANAGEMENT AND MONITORING

However, when no site visit is conducted, the pass-through entity should be familiar with the subrecipient's financial operations and procedures, as well as their maintenance of current financial data such as timesheets, invoices, contracts, and ledgers that tie back to financial reports.

The pass-through entity is responsible for monitoring the overall performance of a subrecipient to ensure that the goals and objectives of the subaward are achieved. In monitoring a subrecipient, a pass-through entity, must:

- Review financial and performance reports submitted by the subrecipient;
- Ensure the subrecipient takes corrective action on all significant developments that negatively affect the subaward.
- Issue a management decision for audit findings pertaining to the award (see below, and 2 C.F.R. §§ 200.332(e) and 200.521(c)).
- Resolve audit findings specifically related to the subaward.

The purpose of these monitoring activities is to provide reasonable assurance that the subrecipient has administered the pass-through funding in compliance with the laws, regulations, and the provisions of the award and that the required performance goals are being achieved.

> ☑ **ACTION ITEM**
>
> Recipients must have written subrecipient monitoring policies and procedures.

### Subrecipient Audits

The pass-through entity needs to develop procedures to ensure that subrecipients expending $1,000,000 or more in Federal awards during the subrecipient's fiscal year submit the required completed audit within the earlier of 9 months after the end of the audit period or 30 calendar days after receipt of the audit report. See 2 C.F.R. § 200.512. Upon receipt of the subrecipient audit, the pass- through entity needs to:

- Evaluate the impact of subrecipient activities on the recipient organization's ability to comply with applicable Federal regulations,
- Issue a management decision on audit findings pertaining to their subrecipient's subaward within 6 months after receipt of the subrecipient's audit report, and
- Ensure that the subrecipient takes corrective action on all significant developments that negatively affect the award.

In cases of continued inability or unwillingness of a subrecipient to have the required audits conducted, the pass- through entity shall take appropriate action as provided in 2 C.F.R. § 200.339 (Remedies for Noncompliance). See 2 C.F.R. § 200.505. It is important to have policies and procedures in place to properly exercise the fiduciary responsibility in executing the award requirements should a subrecipient not comply with requirements, laws, and regulations.

As prescribed in 2 C.F.R. § 200 Subpart F, subrecipients are not required to submit a copy of the reporting package when there are "no audit findings," i.e., when the schedule of findings and questioned costs does not disclose audit findings relating to the Federal award requirements that was provided in the agreement with the subrecipient, and the summary schedule of prior audit findings does not report the status of audit findings relating to Federal award.

## 3.14 SUBRECIPIENT MANAGEMENT AND MONITORING

> ### ⓘ FINANCIAL MANAGEMENT TIP
>
> The information in the Federal Audit Clearinghouse (FAC) database may be used as evidence to verify that the required audit was performed and the subrecipient had "no audit findings." This verification is in lieu of reviewing submissions from the subrecipient when there are no audit findings. The FAC database is available online.

### Best Practices

Listed below are best practices that pass-through entities may consider in developing policies and procedures around making subawards and monitoring subrecipients.

#### Subrecipient Pre-Award and Monitoring Procedures

- Develop a request for applications (proposals) that clearly defines the work to be accomplished in furtherance of the Federal award purpose(s).
- Require subrecipients to include in their applications a time-phased milestone plan of action based on clearly-stated accomplishments defined in the proposal.
- Integrate budget line items into the performance plan.
- Require performance reports and supporting documentation with monthly invoices. Performance reports should discuss:
  - ▶ Milestones achieved/to be achieved;
  - ▶ Any significant problem, issues, or concerns;
  - ▶ Timely accomplishments and delays, and
  - ▶ Actual cost incurred compared to each budget line item with variances explained.

#### Remedies for Subrecipient Noncompliance

If a subrecipient fails to comply with Federal statutes, regulations, or the terms and conditions of a Federal award, the pass-through entity may impose additional conditions. However, if it is determined that noncompliance cannot be remedied by imposing additional conditions, the pass-through entity may take one or more actions set forth in Section 3.17 [Remedies for Noncompliance].

### Avoiding Business with Debarred and Suspended Organizations

Recipients and subrecipients must not award or permit any award at any level to any party which is debarred or suspended from participation in Federal assistance programs.

For details regarding debarment procedures, see the government-wide guidelines for debarment and suspension codified in 2 C.F.R. Part 180, and 2 C.F.R. Part 2867, which adopts the OMB guidance in subparts A through I of Title 2 CFR Part 180, as supplemented by Title 2 Part 2867, as the DOJ policies and procedures for non- procurement debarment and suspension.

E1-13

## 3.14 SUBRECIPIENT MANAGEMENT AND MONITORING

> ⓘ **FINANCIAL MANAGEMENT TIP**
>
> To proactively monitor subrecipients:
>
> • Read subaward documents carefully.
>
> • Ask for explanation and clarity; don't assume.
>
> • Document transactions, agency guidance, performance evaluations, etc., in writing.
>
> • Keep documentation on hand.
>
> • Document, document, document! If it isn't documented, it doesn't exist!

### Reviewing Financial Operations

- Direct recipients should be familiar with, and periodically monitor, their subrecipients' financial operations, records, systems, and procedures.
- Recipients should direct particular attention to the subrecipient's maintenance of current financial data.

### Recording Financial Activities

- The recipient should record in its financial records in summary form the subrecipient's award or contract obligation, as well as cash advances and other financial activities.
- The recipient should record in its records the expenditures of its subrecipients. Alternatively the subrecipient may file report forms for tracking of its financial activities.
- Non-Federal contributions applied to programs or projects by subrecipients should likewise be recorded, as should any program income resulting from program operations.

### Budgeting and Budget Review

- The recipient should ensure that each subrecipient prepares an adequate budget on which its award commitment will be based.
- The detail of each project budget should be kept on file by the recipient..

### Accounting for Non-Federal Contributions

- Non-Federal contributions may include in-kind services (donated services such as volunteered time) or cash.
- Recipients should ensure that the requirements, limitations, and regulations pertinent to non-Federal contributions are applied.

### Ensuring Subrecipients Meet All Award Requirements

- Recipients must ensure that subrecipients have met the necessary audit requirements contained in this *Guide* (see Chapter 3.19: Audit Requirements). For additional information, see 2 C.F.R. § 200.332(g).

## 3.14 SUBRECIPIENT MANAGEMENT AND MONITORING

☑ **ACTION ITEM**

Where the conduct of a program or one of its components is delegated to a subrecipient, the direct recipient is responsible for all aspects of the program including proper accounting and financial recordkeeping by the subrecipient. The recipient is responsible for the accounting of receipts and expenditures, cash management, maintenance of adequate financial records, and refunding of expenditures disallowed by audits.

## III. Postaward Requirements

### 3.15 REPORTING REQUIREMENTS

#### Introduction

The Department of Justice (DOJ) requires award recipients to submit both financial and performance reports. Before either report can be submitted in JustGrants, the award must be accepted and active. These reports describe the status of the funds or the project, compare actual accomplishments to objectives, and provide other pertinent information. The specific requirements, reporting periods, and submission deadlines are identified below. The award documents may also include information regarding reporting requirements specific to the particular award.

 **ACTION ITEM**

Be sure to read ALL the special conditions in the award carefully!

#### SF-425 Federal Financial Reports

The SF-425 Federal Financial Report (FFR) must show the actual funds that have been spent (expenditures) and any bills that will be paid (unliquidated obligations incurred) at the recipient/subrecipient level for each award.

Recipients will report on a quarterly basis the cumulative information on expenditures on line 10e, 10f, 10j, 10m, and 10n of the FFR. However, the expenditures for indirect costs (IDC) will be reported on a quarterly basis, only if IDC applies to the grant and is approved. Also the FFR should indicate whether the recipient's accounting system operates on a cash or accrual-basis for accounting.

All DOJ award recipients must submit their FFR online in JustGrants. This system will allow authorized users to view current and past FFRs and file or amend the FFR for the current quarter.

The quarterly FFR must be submitted online no later than 30 days after the last day of each quarter. If the FFR is not submitted by the due date, JustGrants will automatically consider it to be delinquent and draw down of funds through the Automated Standard Application for Payments (ASAP) will not be permitted. An automatic email notification will be sent if this occurs.

(i) **FINANCIAL MANAGEMENT TIP**

If the award date is after the start date of the award period, the first FFR submitted to DOJ should cover the time period from the actual start date of the award to the end of the calendar quarter. Recipients will be required to submit FFRs for all due dates which have passed upon acceptance of the award. For example, an award's period of performance is October 1, 2024 to September 30, 2025. The recipient is awarded the grant on October 20, 2024. The first FFR covers the period from October 1, 2024 to December 31, 2024.

## III. Postaward Requirements

### 3.15 REPORTING REQUIREMENTS

| SF-425 Federal Financial Reports—Due Quarterly | | |
|---|---|---|
| Reporting Period | Due By Date | Delinquent After |
| October 1-December 31 | January 30 | January 30 |
| January 1-March 31 | April 30 | April 30 |
| April 1-June 30 | July 30 | July 30 |
| July 1-September 30 | October 30 | October 30 |

ⓘ **FINANCIAL MANAGEMENT TIP**

If the Federal Financial Report (SF-425) or performance report is delinquent, an **automatic hold will be placed on the remaining funds associated with the award** and payments cannot be requested through ASAP. In addition, any new awards or adjustments to current awards may be restricted until all reports are current.

The final FFR is due within 120 days after the end date of the period of performance, but may be submitted as soon as all outstanding expenditures have been completed. A subrecipient must submit a final financial report to a pass-through entity no later than 90 calendar days after the conclusion of the period of performance.

**Important Reminders**

- Report actual funds expensed, NOT the draw down amounts from the Federal Government.
- Report all allowable costs incurred, both at the recipient and subrecipient level.
- Report the cumulative expenditures by providing a sum of expenditures for the life of the grant. To arrive at your cumulative total, add all expenses incurred to date.
- Report program income as the cumulative amount, NOT the quarterly amount.
- Report correct indirect cost rate and base approved by the cognizant Federal agency.
- Report correct indirect cost rate type (provisional, final, de minimis, or fixed).

See 2 C.F.R. § 200.328.

ⓘ **FINANCIAL MANAGEMENT TIP**

For information concerning online filing of SF-425 reports, go to JustGrants Training; Financial Reporting or OJP recipients should contact the OCFO Customer Service Center by phone at 1-800-458-0786 (option 2) or by email at ask.ocfo@usdoj.gov. OVW recipients should contact the OVW Grants Financial Management Division at 1-888-514-8556 or OVW.GFMD@usdoj.gov. COPS Office recipients should go to https://cops.usdoj.gov/contactcops or call the COPS Office Response Center at 800-421-6770.

## III. Postaward Requirements

### 3.15 REPORTING REQUIREMENTS

### Performance Reports

Performance reports provide information relevant to the performance and activities of a plan, program, or project. Performance reports are submitted by recipients annually or semi-annually, depending on the award type. DOJ recipients' semi-annual performance reports must be submitted within 30 days after the end of the reporting periods. For OJP and OVW, due dates are: June 30 and December 31, for the life of the award. For COPS Office recipients' due dates please visit the Performance Management tab of the funded award in JustGrants. Unless otherwise indicated, the final report is due within 120 days after the end date of the period of performance. Reporting requirements are specified in the solicitation and in the award conditions specified in the award. Performance Reports must be submitted via JustGrants. Questions concerning performance reporting should be directed to the Program Manager for the award.

> ### ⓘ FINANCIAL MANAGEMENT TIP
> Technical questions concerning JustGrants should be addressed to JustGrants Support at 1-833-872-5175 for OJP and COPS Office awards, and 1-866-655-4482 for OVW awards. Programmatic questions should be directed to the program office grant manager identified in the award documents.

> ### ▶ OJP SPECIFIC TIP
> FFRs and performance reports are not applicable to awards under the State Criminal Alien Assistance Program, and Bulletproof Vest Partnership Program.

### Special Reporting Requirements

In the review and approval process for plans and applications, it is sometimes necessary for the awarding agency to impose special or unique reporting requirements. These requirements may vary from award to award.

### Government Performance and Results Act (GPRA), Modernization Act (GPRAMA)

Award recipients must agree to collect data appropriate for facilitating reporting requirements established by the Government Performance and Results Act Modernization Act.

- Ensure that valid and auditable source documentation is available to support all data collected for each performance measure required by the program including those specified in the program solicitation or award.

### Reports Required under the Federal Funding Accountability and Transparency Act (FFATA)

The Federal Funding Accountability and Transparency Act of 2006 (referred to as FFATA or The Transparency Act) requires the office of Management and Budget to maintain a single, searchable website that provides the public with information about how tax dollars are spent and gives them the ability to hold the Federal Government accountable for each spending decision. That site is https://www.usaspending.gov.

E1-18

III. Postaward Requirements

## 3.15 REPORTING REQUIREMENTS

Effective November 12, 2020, pass-through entities that award $30,000 or more to subrecipients are required to submit data in the Subaward Reporting in SAM.gov system. Pursuant to 2 C.F.R. Part 170, Appendix A (Reporting Subaward and Executive Compensation Information), prime award - recipients awarded a new Federal award greater than or equal to $30,000 are subject to FFATA subaward reporting requirements. The prime awardee is required to file a FFATA subaward report through the Subaward Reporting in SAM.gov system, located at https://sam.gov/fsrs., by the end of the month following the month in which the direct recipient awards any subgrant greater than or equal to $30,000. Pass-through entities should also review and carefully consider 2 C.F.R. § 200.331 (Subrecipient and Contractor Determinations), as it includes guidance in making an appropriate determination that is relevant not only with regard to subrecipient reporting under FFATA, but also is key to the proper financial and programmatic administration and management of federal award funds.

The reporting requirements for Federal award recipients of both formula and discretionary grants are:

- All subaward information must be reported by the Federal recipient.

- If the initial subaward is at least $30,000, the award recipient must report the subawards and the names and annual compensation of the sub awardee's five highest paid executives.

- If the initial award is below $30,000 but subsequent award modifications result in a total award equal to or over $30,000, the award will be subject to the reporting requirements as of the date the award reaches $30,000.

- If the initial award is equal to or greater than $30,000 but de-obligation of funding causes the total award amount to fall below $30,000, recipients will continue to be subject to the reporting requirements.

The reporting requirements do NOT apply to the following:

- Awards to individuals

- Recipients that had a gross income of $300,000 or less in their previous tax year

- Classified information

☑ **ACTION ITEM**

Reporting requirements for DOJ awards may change from year to year. Please read the award documents.

## 3.16 RETENTION AND ACCESS REQUIREMENTS FOR RECORDS

### Retention of Records

Recipients and subrecipients must retain all federal award records for a period of 3 years from the date of submission of the final expenditure report (Federal Financial Report/SF-425). For more information, see 2 C.F.R. §200.334.

- Retention is required for purposes of Federal examination and audit.
- Records may be retained in an electronic format.

**Coverage**

The retention requirement includes, if applicable, books of original entry, source documents, supporting accounting transactions, the general ledger, subsidiary ledgers, personnel and payroll records, cancelled checks, and related documents and records.

- Source documents may include copies of all awards, applications, and required recipient financial and narrative reports.
- Charges to Federal awards for salaries and wages must be based on records that accurately reflect the work performed.
- Time and effort reports are also required for consultants.

**Exception to the 3-Year Retention Period**

The 3-year retention period starts from the date of submission of the final expenditure report. The following are exceptions to the standard record retention period:

The records must be retained until all issues involving the records have been resolved and final action taken, if any litigation, claim, or audit is started before the expiration of the 3-year period.

- When notified by the DOJ grant-making component, cognizant agency for audit, oversight agency for audit, cognizant agency for indirect costs, or pass-through entity to extend the retention period.
- Records for real property and equipment acquired with the support of Federal funds must be retained for 3 years after the final disposition.
- The 3-year retention requirement does not apply to the recipient or subrecipient when records are transferred to or maintained by the DOJ grant-making component or pass-through entity.
- The records for program income earned after the period of performance must be retained 3 years from the end of the recipient's or subrecipient's fiscal year in which the program income is earned.
- Indirect cost proposals submitted for negotiation must be retained for 3 years from the date of submission.
- Indirect cost proposals not required to be submitted for negotiation must be maintained for 3 years from the end of the fiscal year covered by the proposal.

## 3.16 RETENTION AND ACCESS REQUIREMENTS FOR RECORDS

### Maintenance of Records

Maintain and separately identify all records for each Federal fiscal period so that information desired may be readily located. See 2 C.F.R. §200.336.

- Protect the records adequately against fire or other damage.
- Whenever practicable, information should be collected, transmitted and stored in open and machine-readable formats.

### Access to Records

The DOJ grant-making component, or pass-through entity, the DOJ Office of the Inspector General, the Comptroller General of the United States, or any of their authorized representatives, must have the right of access to any records of recipients or subrecipients pertinent to the award to perform audits, to execute site visits, or for any other official use. See 2 C.F.R. §200.337.

- The DOJ agency or pass-through entity's right of access are not limited to the required retention period; it will last as long as the records are retained.
- The recipient or subrecipient and DOJ agency or pass-through entity must take measures to protect the name of victims of crime when access to the victim's name is necessary. Only under extraordinary and rare circumstances would such access include a review of information that would personally identify victims of crime. Routine monitoring cannot be considered extraordinary and rare circumstances that would necessitate access to this information.
- Any such access, other than under a court order or subpoena pursuant to a bona fide confidential investigation, must be approved by the head or delegate of the DOJ component.

> **▶ OVW SPECIFIC TIP**
>
> - Unless required by statute, OVW will not place restrictions on recipients that limit public access to records of recipients that are pertinent to an award, except when OVW can demonstrate that such records must be kept confidential and would have been exempted from disclosure pursuant to the Freedom of Information Act (FOIA) if the records had belonged to OVW.
>
> - In addition, under 34 U.S.C. §12291(b)(2), OVW grantees and subgrantees may not disclose identifying information about victims served with VAWA funds without a written, informed, time-limited release from the victim. Such a release may not be a condition of receiving services. Grantees and subgrantees can also release information if compelled by a statutory or court mandate. In that case, they are required to make reasonable attempts to provide notice to affected victims and take steps to protect the privacy and safety of the persons affected by the release of information. Grantees and subgrantees are required to document their compliance with this provision.

III. Postaward Requirements

**3.17 REMEDIES FOR NONCOMPLIANCE**

### Introduction

The Department of Justice (DOJ) grant-making component or pass-through entity may implement specific conditions if the recipient or subrecipient fails to comply with the U.S. Constitution, Federal statutes, regulations, or terms and conditions of the award. See 2 C.F.R. § 200.208 for addition information on specific conditions. However, if it is determined that noncompliance cannot be remedied by imposing additional conditions, the DOJ grant-making component or pass- through entity may take one or more of the following actions under C.F.R. § 200.339:

- Temporarily withhold payments until the recipient or subrecipient takes corrective action;

- Disallow cost for all or part of the activity associated with the noncompliance of the recipient or subrecipient;

-  Suspend or terminate the Federal award in part or in its entirety;

- Initiate suspension or debarment proceedings as authorized in 2 C.F.R. Part 180 and DOJ's implementing regulations at 2 C.F.R. Part 2867 (or for pass-through entities, recommend suspension or debarment proceedings be initiated by the DOJ grant-making component);

- Designate the award recipient as a high-risk recipient under the DOJ high-risk policy;

- Withhold further DOJ funds (new awards or continuation of funding) for the project or program; or

- Pursue other legally available remedies:

### Termination

Pursuant to 2 C.F.R. § 200.340, a Federal award may be terminated in in part or its entirety as follows:

- By the DOJ awarding agency or pass-through entity for failure to comply with the terms and conditions of an award;

- By the DOJ awarding agency or pass-through entity with consent of the recipient or subrecipient, in which case the two parties must agree upon termination conditions, including the effective date, and in the case of partial termination, the portion to be terminated;

- By the DOJ awarding agency or pass-through entity pursuant to the terms and conditions of the Federal award including, to the extent authorized by law, if an award no longer effectuates the program goals or agency priorities; or

- By the recipient or subrecipient upon sending the DOJ awarding agency or pass-through entity a written notification of the reasons for such termination, the effective date, and in the case of partial termination, the portion to be terminated. However, if the DOJ awarding agency or pass-through agency determines that remaining portion of the award or subaward will not accomplish the purposes for which the award was made, then DOJ or the pass-through entity may terminate the award in its entirety.

The awarding DOJ agency or pass-through entity will provide the recipient or subrecipient written notice of termination. The written notice of termination will include the reasons for termination, the effective date, and the portion of the award to be terminated, if applicable.

If the award is terminated for failure to comply with the award, the notification must state that the termination decision must be considered in evaluating future applications received from the non-Federal entity.

## III. Postaward Requirements

**3.17 REMEDIES FOR NONCOMPLIANCE**

When an award is terminated or partially terminated, the awarding agency or pass-through entity and the recipient or subrecipient remain responsible for compliance with the requirements in 2 C.F.R. § 200.344 (Closeout) and 2 C.F.R. § 200.345 (Post-closeout adjustments and continuing responsibilities).

### Hearings and Appeals

Upon taking a remedy for noncompliance, the DOJ awarding agency will provide the recipient with an opportunity to object and provide information and documentation challenging the suspension or termination action (2 C.F.R. § 200.342). Refer to Office of Justice Programs (OJP) Hearing and Appeal Procedures for appeal rights in event of termination (Title 28 C.F.R. Part 18).

### Effects of Suspension and Termination

Costs incurred during a suspension or after termination of a Federal award or subaward are not allowable unless the DOJ awarding agency or pass-through entity expressly authorizes them in the notice of suspension or termination, or subsequently. However, costs during suspension or after termination are allowable if:

- The costs result from financial obligations which were properly incurred before the effective date of suspension or termination, are not in anticipation of it; and

- The costs would be allowable if the Federal award was not suspended or expired normally at the end of the period of performance in which the termination takes effect:

## III. Postaward Requirements

### 3.18 CLOSEOUT

#### Introduction

Closeout means the process that takes place when the DOJ grant-making component or pass-through entity determines that all applicable administrative actions and all required work of the Federal award have been completed by the recipient or subrecipient. See 2. C.F.R. § 200.344 (Closeout) for the actions to be taken as part of the closeout process. Administrative closeout costs may be incurred until the due date of the final report(s). If incurred, these costs must be liquidated prior to the due date of the final report(s) and charged to the final budget period of the award unless otherwise specified by the Federal agency. The following chapter provides guidance on closeout procedures applicable to DOJ awards.

#### First Step

The Grant Award Administrator will initiate the closeout process once programmatic and financial requirements have been met by using the JustGrants Module.

- A recipient must submit all reports (financial, performance, and other reports required by the Federal award) no later than 120 calendar days after the conclusion of the period of performance.

- A subrecipient must submit all reports (financial, performance, and other reports required by a subaward) to the pass-through entity, no later than 90 calendar days after the conclusion of the period of performance of the subaward (or an earlier date as agreed upon by the pass-through entity and subrecipient). See 2. C.F.R. § 200.344(b).

- If the award recipient does not submit all required reports within 120 calendar days of the end of the period of performance, the DOJ component will begin the closeout process based on the information available.

> ⓘ **FINANCIAL MANAGEMENT TIP**
>
> Award recipients should start the closeout process as soon as the program is completed and all Federal and matching funds have been spent.

#### Closeout of Awards

##### Cash Reconciliation and Final Draw Down

Award recipients must conduct a financial reconciliation of their accounting records to the final Federal Financial Report (FFR/SF-425) at closeout. Recipients must:

- Report final Federal share of cumulative expenditures and recipient share, if required, on the final FFR.

- Liquidate all financial obligations incurred under the Federal award no later than 120 calendar days after the conclusion of the period of performance.

- Subrecipients must liquate all financial obligations incurred under a subaward no later than 90 calendar days after the conclusion of the period of performance of the subaward (or an earlier date as agreed by the pass-through entity and subrecipient).

- Request final reimbursement (draw down) of Federal expenditures made within the approved period of performance in conjunction with the final SF-425. This request must be submitted prior to the end of the liquidation period (120 days or 90 days after the end of the period of performance for recipients or subrecipients, respectively). Failure to request final payment by this date will cause delays and result in additional administrative paperwork.

## III. Postaward Requirements

### 3.18 CLOSEOUT

**Recipient Closeout Requirements**

Within 120 days of the end of the period of performance the recipient must submit the following to the DOJ grant-making component:

- Final Federal Financial Report (FFR) (submitted on SF-425)
  - ▶ The FINAL report of cumulative expenditures must have no unliquidated obligations.
  - ▶ Any unobligated or unexpended funds will be de-obligated from the award amount.
  - ▶ Recipient share requirements must be met by the end of the period of performance and included in the report.
  - ▶ Recipients who have drawn down funds in excess of their Federal expenditures must return those funds to the DOJ grant-making component when they submit the final report.
  - ▶ Be sure to reconcile the final FFR against the internal accounting records. All entries in the accounting system must be supported by adequate source documentation (for example, original invoices and contracts).
  - ▶ Report all allowable costs incurred, both at the recipient and subrecipient level.
- Final performance report must be prepared in accordance with instructions provided by the DOJ grant-making component.
- Any award conditions must have been met.
- Inventions that were conceived or first introduced to practice during the course of work under the award project must be listed on an invention report before closeout.
- Real or personal property reports must be submitted in accordance with the terms of the award.

See 2 C.F.R. § 200.344

---

☑ **ACTION ITEM**

Submit the final SF-425, final performance report, and invention or equipment reports (if applicable) well in advance of the end of the 120-day period. After the liquidation period, recipients are unable to draw down any additional funds on the award.

---

If the recipient does not comply with the requirements set forth above including submitting all final reports, the DOJ component  must report the recipient's material failure to comply with the terms and conditions of the award in SAM.gov. The DOJ grant-making component may also pursue other enforcement actions per 2 C.F.R. §200.339, as appropriate. See 2 C.F.R. § 200.344(i).

The recipient or subrecipient may charge the Federal award during the closeout for the necessary administrative costs of that Federal award (for example, salaries of personnel preparing final reports, publication and printing costs, costs associated with the disposition of equipment and property, and related indirect costs). These costs may be incurred until the due date of the final report(s). If incurred, these costs must be liquidated prior to the due date of the final report(s) and charged to the final budget period of the award unless otherwise specified by the DOJ.

## 3.18 CLOSEOUT

### Refund of Federal Grant Monies and/or Program Income

Award recipients must report the amount of Federal funds returned (unobligated balance of Federal funds) on line 10(h) of the final SF-425, and any unexpended program income returned on line 10(o) of the final FFR DOJ strongly encourages submission of refunds electronically using either the Automated Clearing House (ACH) or Fed wire. For instructions on how to complete either form click here.

If the Electronic Fund Transfer (EFT) is returned for insufficient funds, DOJ will attempt to process two more times and may charge a processing fee.

If funds must be returned at award closeout, remit using ASAP. For more information on the ASAP system, see Chapter 3.1 Payments.":

### Failure to Remit Funds Owed

Any Federal funds paid to the recipient or subrecipient that exceeds the amount to which the organization is determined to be entitled to under the Federal award constitutes a debt to the Federal government.  DOJ must collect all debts arising out of its Federal awards in accordance with the Standards for the Administrative Collection of Claims (31 CFR part 901). See 2 C.F.R. § 200.346

If the recipient does not pay funds owed to DOJ, the debt may be referred to the U.S. Department of the Treasury for collection, as provided by Federal laws.

- Treasury may add fees, fines, and penalties to the original amount of the debt owed to the Federal agency.
- Failure to return any funds due to DOJ may result in a high-risk designation for future awards, withholding or freezing of funds, or award conditions on all other awards to the organization. It may also impact future financial integrity reviews, which in turn will affect future grant awards

E1-26

## III. Postaward Requirements

### 3.19 AUDIT REQUIREMENTS

#### Audit Threshold

**For fiscal years beginning on or after December 26, 2014.** Non-Federal entities that expend $1,000,000 or more in Federal funds (from all sources including pass-through subawards) in the organization's fiscal year are required to arrange for a single organization-wide audit conducted in accordance with the provisions of 2 C.F.R. Subpart F.

**For fiscal years beginning on or after December 26, 2014, but before October 1, 2024.** Non-Federal entities that expend $750,000 or more in Federal funds (from all sources including pass-through subawards) in the organization's fiscal year are required to arrange for a single organization-wide audit conducted in accordance with the provisions of 2 C.F.R. Subpart F.

Non-Federal entities that expend less than the applicable audit threshold a year in Federal awards are exempt from Federal audit requirements for that year. However, non-Federal entities must keep records that are available for review or audit by appropriate officials including the Federal agency, pass-through entity, and U.S. Government Accountability Office (GAO).

#### Audit Objectives

Awards are subject to conditions of fiscal, program, and general administration to which the recipient expressly agrees upon acceptance of the award. See 2 C.F.R. § 200.514.

- The audit objective is to review the recipient's accountability of funds and required non-Federal contributions to determine whether the recipient has done all of the following:
  - Established an accounting system with adequate internal controls that provide full accountability for revenues, expenditures, assets, and liabilities.
  - Prepared financial statements which are presented fairly and in accordance with generally accepted accounting principles.
  - Submitted financial reports (including Federal Finance Reports (FFRs/SF-425s); cash reports; and claims for advances and reimbursements that contain accurate and reliable financial data and are presented in accordance with the terms of applicable agreements.
  - Expended Federal funds in accordance with the terms of award agreements and those provisions of Federal law or regulations that could have a material effect on the financial statements or on the awards tested.

### Audit Reporting Requirements

Independent auditors should follow the requirements prescribed in 2 C.F.R. Subpart F or OMB Circular A-133, as applicable.

- The recipient's accounting records must support all amounts reported to the Department of Justice (DOJ).
- The recipient's financial activity reported to DOJ should reconcile to the amounts reported on the recipient's audited financial statements.
- If there are any differences between the recipient's audited financial statements and the financial activity reported to DOJ, the recipient must be able to explain the differences.

III. Postaward Requirements

......................................................................................................................

### 3.19 AUDIT REQUIREMENTS

- If the auditor becomes aware of illegal acts or other irregularities, he or she must give prompt notice to the recipient's management officials above the level of involvement.

- The recipient, in turn, must promptly notify the Federal cognizant agency and/or awarding agency of the illegal acts or irregularities and of proposed and actual actions, if any.

- All awarding agency personnel are responsible for informing the following individuals and groups of any known violations of the law within their respective area of jurisdiction:

    - OJP Office of the Chief Financial Officer

    - OJP Office of the General Counsel

    - U.S. Department of Justice Office of the Inspector General (OIG)

    - State and local law enforcement agencies or prosecuting authorities, as appropriate (see Chapter 3.20: Grant Fraud, Waste, and Abuse).

---

**ⓘ FINANCIAL MANAGEMENT TIP**

Costs for audits not required or not performed in accordance with 2 C.F.R. Part 200 Subpart F, are unallowable. If a non-Federal entity did not meet the applicable expenditure threshold in 2 C.F.R 200.501 for Federal funds during the non-Federal entity's fiscal year, but contracted with a certified public accountant to perform a Single or program specific audit, those costs may not be charged to the grant. Audit costs, if allowable by the award, should be allocated appropriately to the grant. See 2 C.F.R. § 200.405 and 2 C.F.R. § 200.425.

---

### Audit Due Dates and Submission Requirements

Audit reports must be submitted within the earlier of 30 calendar days after the auditee receives the auditor's, report(s), or nine months after the end of the audit period (whichever is earlier). See 2 C.F.R. § 200.512(a).

The General Service Administration (GSA) requires all grant award recipients to use the Internet Data Entry System (IDES) to submit Standard Form-Single Audit Component (SF-SAC) and the Single Audit Reporting package online.

- To review the submission requirements and create an online report ID, visit GSA's website at fac.gov .

---

**ⓘ FINANCIAL MANAGEMENT TIP**

Completed audit reports for State and local governments, institutions of higher education, and nonprofit institutions, should not be mailed to DOJ unless requested by an agency official.

---

October 2024

E1-28

**123**

## 3.19 AUDIT REQUIREMENTS

- Commercial organizations and individuals should mail one copy of all completed audit reports to:

  U.S. Department of Justice Office of Justice Programs
  Office of Audit, Assessment, and Management
  Audit and Review Division
  999 N. Capitol St., NE
  Washington, DC 20531

### Audit Report Confirmation Requests

When an independent audit is being conducted, on OJP/COPS Office awards, audit confirmation requests should be emailed to auditconfrmation@ojp.usdoj.gov.

Audit confirmation requests for OVW awards should be emailed to ovw.gfmd@usdoj.gov.

### Resolution of Audit Reports

For an audit to be effective, it is important for a recipient to have policies and procedures in place to ensure timely corrective action on audit recommendations.

Each recipient must designate officials responsible for the following tasks:

- Following up on audit recommendations.
- Maintaining a record of the corrective action taken on recommendations, including time schedules for completing corrective action, such as those stated in a Corrective Action Plan (CAP).
  - ▸ Typically, the CAP letter will include a description of the funding, specific steps to take to implement the recommendation, including written formal procedures; a timetable for performance of each corrective action; and a description of monitoring to be performed to ensure implementation of the CAP.
  - ▸ The recipient must generate a response to the CAP letter within the specified timeframe, usually within 30 days after receipt of the letter.
- Implementing audit recommendations.

> ⓘ **FINANCIAL MANAGEMENT TIP**
>
> Audit reports for commercial organizations are forwarded to OJP. If the report contains findings, OJP will forward the report to the Office of the Inspector General (OIG). The OIG will process the report and transmit it to OJP for follow-up with the commercial organization. OJP will track the audit report until all findings are closed.

### Top Audit Findings (Fiscal Year 2021)

Below are the most common findings from audits of DOJ awards in Fiscal Year 2021, the most recent year for which this information is available. These findings are provided to make recipients aware of some areas to monitor closely in managing their award so that they are in compliance with all requirements and their audits go smoothly.

III. Postaward Requirements

## 3.19 AUDIT REQUIREMENTS

| | Top Audit Findings (Fiscal Year 2021) |
|---|---|
| 1 | Procedures not documented or need improvement. |
| 2 | Financial and performance reports not accurately prepared. |
| 3 | Special condition not met by recipient. |
| 4 | Questioned costs – Unsupported costs charged to award. |
| 5 | Questioned costs – Unallowable costs charged to award. |
| 6 | Drawdowns not adequately supported / Excess cash-on-hand identified. |
| 7 | Matching funds not provided and/or not adequately supported. |
| 8 | Procurement not supported (e.g., RFP's, bids, etc.). |
| 9 | Suspension and Debarment – verification not performed or not properly documented. |
| 10 | Accounting system inadequate or not effectively utilized to account for grant funds. |

### Audit of Subrecipients

When subawards are made by the pass-through entity to another organization or organizations, the pass-through entity is responsible for making sure that subrecipients comply with the audit requirements set forth in this chapter. See 2 C.F.R. § 200.332(g).

- It is the pass-through entity responsibility to ensure that subrecipient audit reports are received and that corrective actions on all audit findings have been implemented.

- The pass-through entity must require the subrecipient to convey to the pass-through entity any known or suspected violations of law encountered during audits, including fraud, theft, embezzlement, forgery, or other serious irregularities.

- The pass-through entity must include all audit requirements in each subaward

> ☑ **ACTION ITEM**
>
> If a subrecipient is not required to have an audit, as stipulated in 2 C.F.R Subpart F, the pass-through entity is still responsible for monitoring the subrecipient's activities to provide reasonable assurance that the subrecipient administers Federal awards in compliance with Federal requirements. See 2 C.F.R. § 200.331 through 200.333 – (Subrecipient Monitoring and Management).

### Technical Assistance

If DOJ is the assigned cognizant agency or has oversight responsibilities because it has provided the preponderance of direct Federal funding to an organization, then the DOJ Office of the Inspector General (OIG) is available to provide technical assistance in implementing the audit requirements of this chapter. Requests for technical assistance should be addressed to the OIG Chicago Regional Audit Office.

This assistance is available for areas such as:

- Review of the audit arrangements and/or negotiations

- Review of the audit program or guide to be used for conducting the audit

## 3.19 AUDIT REQUIREMENTS

- Onsite assistance in the performance of the audit, when deemed necessary, as a result of universal or complex problems that may arise.

### Full-Scope Auditing

In addition to arranging and providing for the organizational, financial, and compliance audits required by 2 C.F.R. Subpart F, direct recipients and subrecipients are encouraged to provide for additional audit coverage, as deemed appropriate.

- The additional audit coverage to be provided should be determined based on the circumstances surrounding the particular organization, function, program, or activity to be audited; management needs; and available audit capability.
- Direct recipients and subrecipients can determine the need for additional audit coverage by considering answers to the following questions about the organization that may need the coverage:
  - ▶ Are resources managed and used economically and efficiently?
  - ▶ Are desired results and objectives achieved effectively?
  - ▶ Are the accounting system and system of internal controls acceptable prior to the receipt of awarding agency funds? At a minimum, internal controls should include documented written procedures of the direct recipient or subrecipient.
  - ▶ Are the systems and controls adequate to detect fraud, waste, and abuse?

### Commercial (For-Profit) Organizations

These organizations must have financial and compliance audits conducted by qualified individuals who are organizationally, personally, and externally independent from those who authorize the expenditure of Federal funds.

- This audit must be performed in accordance with the Government Auditing Standards ( July 2018 Revision) [PDF - 867 Kb], as found on the GAO website.
- The purpose of this audit is to ascertain the effectiveness of the financial management systems and internal procedures that have been established to meet the terms and conditions of the award.
- Usually, these audits must be conducted annually. They must be conducted no less frequently than every 2 years. The dollar threshold that is established for audit reports in 2 C.F.R. § 200.501 applies, as amended

### Failure to Comply

Failure to have audits performed as required will result in the awarding agency taking remedial action, as allowed under law. This may include, but not be limited to, the withholding of new discretionary awards and/or withholding of funds, or a change in the method of payment on active awards.

E1-31

## III. Postaward Requirements

### 3.19 AUDIT REQUIREMENTS

### Office of Inspector General Regional Offices

As mentioned previously, if DOJ is the assigned cognizant agency or has oversight responsibilities because it has provided the preponderance of direct Federal funding to an organization, then the organization is eligible to receive technical assistance from the DOJ OIG. Direct the request to the Chicago regional audit office of the DOJ OIG in the table in this section.

| Regional Audit Office | Geographical Area |
|---|---|
| **Atlanta Region (40)**<br>Ferris B. Polk, Regional Audit Manager<br>75 Spring Street, Suite 1130<br>Atlanta, GA 30303<br>Phone: 404-331-5928<br>Fax: 404-331-5046 | Alabama, Arkansas, Florida, Georgia, Louisiana, Mississippi, North Carolina, Puerto Rico, South Carolina, Tennessee, and Virgin Islands |
| **Chicago Region (50)**<br>Carol S. Taraszka, Regional Audit Manager<br>500 West Madison, Suite 1121<br>Chicago, IL 60661<br>Phone: 312-353-1203<br>Fax: 312-886-0513 | Illinois, Indiana, Iowa, Kentucky, Michigan, Minnesota, Missouri, Ohio, and Wisconsin |
| **Denver Region (60)**<br>David M. Sheeren, Regional Audit Manager<br>1120 Lincoln Street, Suite 1500<br>Denver, CO 80203<br>Phone: 303-864-2000<br>Fax: 303-864-2004 | Arizona, Colorado, Idaho, Kansas, Montana, Nebraska, New Mexico, North Dakota, Oklahoma, South Dakota, Texas, Utah, and Wyoming |
| **Philadelphia Region (70)**<br>Thomas O. Puerzer, Regional Audit Manager 701 Market Street, Suite 201<br>Philadelphia, PA 19106<br>Phone: 215-580-2111<br>Fax: 215-597-1348 | Connecticut, Delaware, Maine, Massachusetts, New Hampshire, New Jersey, New York, Pennsylvania, Rhode Island, and Vermont |
| **San Francisco Region (90)**<br>David J. Gaschke, Regional Audit Manager<br>90 7th Street, Suite 3-100<br>San Francisco, CA 94103<br>Phone: 650-876-9220<br>Fax: 650-876-0902 | Alaska, American Samoa, California, Guam, Hawaii, Nevada, Oregon, Trust Territory of the Commonwealth of Northern Mariana Islands, and Washington |
| **Washington Region (30)**<br>John J. Manning, Regional Audit Manager<br>1300 North 17th Street, Suite 3400<br>Arlington, VA 22209<br>Phone: 202-616-4688<br>Fax: 202-616-4581 | District of Columbia, Maryland, Virginia, and West Virginia |

## 3.20 GRANT FRAUD, WASTE, AND ABUSE

### Introduction

The U.S. Department of Justice (DOJ) awards Federal funds to recipients for specific purposes and requires them to use the funds within established guidelines. Unfortunately, some recipients and subrecipients have misused award funds in multiple ways ranging from award mismanagement to intentional criminal fraud. With this chapter, DOJ aims to help recipients avoid the misuse of award funds and the resulting penalties.

### Detection of Grant Fraud

Non-Federal entities are encouraged to:

- Be aware of common grant fraud schemes. This knowledge is the best way to reduce or even eliminate the risk of fraud.
- Adopt effective fraud risk-management efforts within the organization, and encourage subrecipients to do the same in order to prevent and detect fraud as early as possible.

> ⓘ **FINANCIAL MANAGEMENT TIP**
>
> Detecting grant fraud schemes early allows every chance of success with the award and ensures taxpayer dollars are used as efficiently and effectively as possible.

### Reporting Irregularities

- Recipients and their subrecipients are responsible for promptly notifying the awarding agency and the Federal cognizant audit agency of any illegal acts, irregularities, and/or proposed or actual actions (see 2 C.F.R. § 200.112 and 200.113).
- Illegal acts and irregularities include conflicts of interest, falsification of records or reports, and misappropriation of funds or other assets.
- Please notify the appropriate DOJ awarding agency of any irregularities that occur.

### Penalties for Grand Fraud

If found guilty of grant fraud, recipients may be subject to various remedies available under Federal law, including any or all of the following:

- A ban from receiving future Federal funding;
- Administrative recoveries of funds;
- Civil lawsuits and criminal prosecution; or
- A combination of all or some of these remedies.

## III. Postaward Requirements

### 3.20 GRANT FRAUD, WASTE, AND ABUSE

#### Fraud Indicators

The indicators or markers of fraud, waste, and/or abuse of award funds are varied and can be due to a range of causes. Follow-up on all such concerns is important.



Mistakes    Gross Negligence    Criminal Fraud

ⓘ **FINANCIAL MANAGEMENT TIP**

As the award is being managed, it may be necessary to investigate an area or activity for possible fraud. Look for clues or hints of possible fraud in the following three areas: employee behavior; employee communications; and employee performance.

#### Common Grant Fraud Schemes

Most misuse of funds falls into one or more of three general categories:

- Conflicts of Interest
- Misapplication of Award Funds
- Theft/Embezzlement

Each of these categories will be examined in the sections that follow.

#### Conflicts of Interest

Recipients and subrecipients are required to use Federal funds in the best interest of the award program. Decisions related to these funds must be free of undisclosed personal or organizational conflicts of interest, both in fact and in appearance. Recipients and subrecipients are required to disclose in writing any potential conflict of interest to the DOJ agency or pass-through entity, as applicable. See 2 C.F.R. § 200.112

- **Conflict in Fact.** In the use of award funds (direct or indirect), a recipient or subrecipient should not participate in any decisions, approval, disapproval, recommendations, investigation decisions, or any other proceeding concerning any of the following people or groups:
    - ▸ An immediate family member;
    - ▸ A partner;
    - ▸ An organization in which they are serving as an officer, director, trustee, partner, or employee;
    - ▸ Any person or organization with whom they are negotiating or who has an arrangement concerning prospective employment, has a financial interest, or for other reasons can have less than an unbiased transaction with the recipient or subrecipient.

EI-34

## III. Postaward Requirements

### 3.20 GRANT FRAUD, WASTE, AND ABUSE

- **Conflict in Appearance.** In the use of award funds, recipients and subrecipients should avoid any action which might result in, or create the appearance of:
  - Using an official position for private gain;
  - Giving special treatment to any person;
  - Losing complete independence or objectivity;
  - Making an official decision outside official channels; or
  - Affecting negatively the confidence of the public in the integrity of the Government or the program

Typical conflict-of-interest issues may include:

- Less-than-arm's-length transactions—the act of purchasing goods or services or hiring an individual from a related party such as a family member or a business associate of the recipient.

- Not using fair and transparent processes for subrecipient decisions and vendor selection. These processes must be free of undue influence, and fair and transparent. Most procurement requires full and open competition.

- Consultants can play an important role in award programs; however, recipients and subrecipients must ensure that their work conforms to all applicable regulations governing the selection process, reasonable pay rates, and specific verifiable work product.

**Case Example #1**

| Background | Possible Fraud Indicator | Scheme Identified | Result |
|---|---|---|---|
| An individual was assigned to purchase equipment using a Federal award. | Circumvention of the established procurement process; vendor complaints. | Individual stole over $100,000 by directing contracts to bogus companies that he had established. | 240-month prison sentence |

**Failure to Properly Support the Use of Award Funds**

A Federal award agreement creates a legal and binding obligation. Recipients and subrecipients are obligated to:

- Use the award as outlined in the agreement.

- Act with integrity when applying for and reporting the actual use of funds.

- Properly track the use of funds and maintain adequate supporting documentation.

Typical issues involving failure to properly support the use of award funds include:

- Deliberate redirection of the use of funds in a manner different from the purpose outlined in the award agreement.

- Failure to adequately account for, track, or support transactions such as personnel costs, contracts, indirect cost rates, matching funds, program income, or other sources of revenue.

E1-35

III. Postaward Requirements

## 3.20 GRANT FRAUD, WASTE, AND ABUSE

> ⓘ **FINANCIAL MANAGEMENT TIP**
>
> Applicants and recipients must represent their eligibility for funding accurately and cannot provide false or misleading information in their application, subsequent narrative performance reports, or federal financial reports.

**Case Example #2**

| Background | Possible Fraud Indicator | Scheme Identified | Result |
|---|---|---|---|
| A recipient received a Federal award for specific purposes. | An inability to provide sufficient and verifiable supporting documentation concerning the actual use of those funds. | | Recipient paid the Federal government over $300,000 to settle civil fraud allegations. |

### Theft/Embezzlement

Teft/Embezzlement is a potential risk in almost all organizations—including those that receive Federal awards. Non- federal entities are encouraged to keep the following in mind:

- People who embezzle funds can be extremely creative, while often appearing very trustworthy. These abilities are precisely why they can do so much damage to an organization and remain undetected for extended periods of time.

- Poor or no internal controls provide an opening for theft. A lack of proper separation of duties is one of the most common weaknesses.

> ☑ **ACTION ITEM**
>
> Checks routinely written to employees for the "reimbursement" of expenses, and the routine use of ATM/debit/gift/credit cards for award costs, must be carefully controlled and require strong oversight.

Case Example #3

| Background | Possible Fraud Indicator | Scheme Identified | Result |
|---|---|---|---|
| A nonprofit received $2.7 million in Federal award funds to assist underprivileged children. | Unsuccessful program, lack of internal controls, unexplained income. | Funds had been diverted to pay for a wedding reception, building construction, plasma TV, and personal credit card bills, with an estimated total loss of $450,000. | 36- and 66-month prison sentences and full restitution. |

III. Postaward Requirements

## 3.20 GRANT FRAUD, WASTE, AND ABUSE

### Ways to Reduce the Risk of Fraud

There are several things that can be done to reduce or even eliminate the risk of fraudulent use of the Federal award:

- Examine operations and internal controls to identify fraud vulnerabilities.
- Implement specific fraud prevention strategies including educating others about the risks. The more people are aware of the issues, the more they can help prevent problems or detect them as early as possible.
- Maintain a well-designed and tested system of internal controls.
- Ensure all financial or other certifications and performance reports are adequately supported with appropriate documentation and evidence.
- Identify any potential conflict-of-interest issues and disclose them to the awarding agency for specific guidance and advice.
- Follow a fair and transparent procurement process. Ensure that the rate of pay for professional services is reasonable and justifiable, and that the work product is well-defined and documented.

Contact the DOJ Office of the Inspector General for more information.

---

**ⓘ FINANCIAL MANAGEMENT TIP**

Information on designing and testing internal controls may be found in the following references:

- 2 CFR Part 200 Appendix XI, Compliance Supplement, Part 6, Internal Control  (PDF) (updated annually).

- OMB Circular A-123, Management's Responsibility for Internal Control (main portion). Please also see multiple appendices to this circular. Although this is written for Federal Agencies, its guidance on internal control systems and testing those systems may be a useful reference resource.

- Committee of Sponsoring Organizations of the Treadway Commission (COSO), (https://www.coso.org/guidance-on-ic). This site has guidance available on internal control framework and testing and has been designed for the private sector, but may be a useful reference resource.

---

E1-37

III. Postaward Requirements

## 3.21 OJP'S PAYMENT PROGRAMS

### Introduction

The Office of Justice Programs (OJP) has several payment or reimbursement programs that are available to eligible applicants: the Bulletproof Vest Partnership (BVP), the State Criminal Alien Assistance Program (SCAAP), the Northern Border Prosecution Initiative (NBPI), and the Southwest Border Prosecution Initiative (SWBPI). This section briefly introduces each of these programs; please visit the related websites for recently updated information and each program's specific guidelines.

### Bulletproof Vest Partnership

The BVP was created for the sole purpose of purchasing bullet-resistant body armor for sworn law enforcement officers. The program is administered by OJP's Bureau of Justice Assistance (BJA). It was enacted in 1998 by the Bulletproof Vest Partnership Grant Act (Public Law 105-181).

**Eligibility and Guidelines**

- Eligible jurisdictions that employ law enforcement officers may participate in this program. A jurisdiction is a State, town, city, village, borough, parish, or Indian tribe.
- Trough the BVP program, recipients are reimbursed for up to 50 percent of the cost of each unit of eligible body armor purchased for law enforcement officers.
- Under current legislation, jurisdictions with fewer than 100,000 residents receive priority funding. Any remaining funds are distributed on a pro rata basis to jurisdictions with 100,000 residents or more.
- In order to qualify for this reimbursement, body armor must comply with the National Institute of Justice (NIJ) standards as of the date the body armor was ordered. Information pertaining to the current NIJ standards is available online at the NIJ Definition of Eligible Body Armor web page.

**Application and Funding Process**

Obtain current information and manage the entire BVP program process from application through payment using the online BVP system located at https://www.ojp.gov/program/bulletproof-vest-partnership/overview. To participate in the BVP program, State, local, and tribal jurisdictions must follow four steps:

- Register as a jurisdiction
  - ▶ Jurisdictions that have never participated in the BVP program can register at any time throughout the year by contacting BVP Customer Support via phone at 1-877-758-3787 or email at vests@usdoj.gov.
  - ▶ If an eligible jurisdiction has more than one law enforcement agency (LEA), each LEA should register in the BVP system, and the application will be submitted by the jurisdiction on behalf of all of its LEAs.
  - ▶ Once registered with the BVP program, jurisdictions are responsible for regularly updating their own critical information.
- Submit application
  - ▶ When submitting an application, jurisdictions must make sure to identify the total number, type, and projected cost of vests for all eligible, participating law enforcement officers.
  - ▶ Applications may be submitted only during the annual 6-week open application period.
  - ▶ Funding decisions are made within 3 months after the application period closes.

E1-38

III. Postaward Requirements

## 3.21 OJP'S PAYMENT PROGRAMS

- ▶ Applicants are notified via email regarding approved funding levels.
- ▶ BVP funds are dispersed when the LEA receives the vests and the jurisdiction submits a request for payment through the BVP system.

- Purchase vests
  - ▶ BVP funds may only be used to purchase vests that meet the current NIJ bullet-resistant body armor standards.
  - ▶ A list of vest models that meet the current NIJ standards is available on the BVP website.

- Submit receipt information
  - ▶ Once vests are received, jurisdictions can submit a request for payment through the BVP system.
  - ▶ Recipients have up to 2 years from the date of the award to submit payment requests.
  - ▶ Once the payment request is submitted, BJA reviews the request for accuracy and processes payments on a monthly schedule.

| Key Points about the BVP Program | |
| --- | --- |
| 1 | All purchased body armor must comply with NIJ body armor standards, which are available at the NIJ Definition of Eligible Body Armor web page. |
| 2 | BVP funds can be used to purchase only one vest per officer during the jurisdiction's stated replacement cycle. |
| 3 | BVP funds may be used toward the purchase of tactical-level vests, but if a tactical-level vest is purchased for an officer, it must be the officer's primary vest; a regular-duty vest cannot be purchased for the same officer, during the same replacement cycle, using BVP funds. |
| 4 | Beginning in fiscal year 2009, during the payment request process, jurisdictions may request, based on financial hardship, a waiver of the 50 percent match requirement. Jurisdictions that request the waiver must cite the nature of the financial hardship and maintain documentation pertaining to the hardship. |
| 5 | BJA strongly recommends that every LEA implement a mandatory body armor wear policy, if one is not currently in place. A mandatory wear concepts and issues paper and model policy are avail-able by contacting the International Association of Chiefs of Police at policycenter@theiacp.org. |
| 6 | BJA recognizes that LEA operational and equipment needs may change. Consequently, participating agencies are not required to purchase the exact number, type, or model of vests contained in the approved application. Vests may be purchased at any threat level, make, or model and from any distributor or manufacturer, as long as the vests have been tested and found to comply with applicable NIJ ballistic or stab standards. |

### ⓘ FINANCIAL MANAGEMENT TIP

Justice Assistance Grant funds also may be used to purchase vests for an agency, but they may not be used to pay for that portion of the bulletproof vest (50 percent) that is not covered by BVP funds.

## III. Postaward Requirements

### 3.21 OJP'S PAYMENT PROGRAMS

#### State Criminal Alien Assistance Program

Trough SCAAP, the U.S. Government provides payments to States and localities that incurred correctional officer salary costs for incarcerating undocumented criminal aliens who had at least one felony or two misdemeanor convictions for violations of State or local law, and were incarcerated for at least 4 consecutive days during a reporting period. BJA administers SCAAP in cooperation with the U.S. Department of Homeland Security (DHS).

#### Eligibility and Guidelines

Beginning with Federal fiscal year 2007, SCAAP awards must be used for correctional purposes only. To be considered for SCAAP funding, States and localities must prove that inmate records, convictions, and length of custody to meet the following eligibility requirements:

- **Inmate records**. For the purposes of SCAAP, an inmate is defined as a person who did one of the following things or was in one of the following situations:
  - ▶ Entered the United States without inspection or at any time or place other than as designated by the Attorney General.
  - ▶ Was in deportation or exclusion proceedings at the time he or she was taken into custody.
  - ▶ Is a nonimmigrant who failed to maintain his or her nonimmigrant status at the time he or she was taken into custody.
  - ▶ Is part of a subset of Mariel Cubans who otherwise meet these requirements.

- **Convictions and custody information.** To apply for SCAAP funds, an entity must be a State or unit of government with authority over correctional facilities that incarcerate or detain undocumented criminal aliens for terms of 4 or more consecutive days. Applicants may submit records of eligible inmates in their custody during the reporting period who meet all of the following criteria:
  - ▶ Were born outside the United States or one of its Territories and have no reported or documented claim to
  - ▶ U.S. citizenship;
  - ▶ Were in the applicant's custody for 4 or more consecutive days during the reporting period;
  - ▶ Were convicted of a felony or second misdemeanor for violations of State or local law; and
  - ▶ Were identified and reported using due diligence.
- DHS makes the final determination on whether the documentation submitted supports the status of the inmate as an undocumented alien.

#### Application and Funding Process

- The application and payment process for SCAAP is managed using the JustGrants.
- The SCAAP system is available through the main JustGrants log-in page.
- SCAAP payments must go directly to eligible States and localities.
- Authorized jurisdiction employees for SCAAP purposes must be listed as either the Authorized Representative or Alternate Contact in the JustGrants  user profile

# III. Postaward Requirements

## 3.21 OJP'S PAYMENT PROGRAMS

- The chief executive officer (CEO) of an eligible jurisdiction may apply directly or delegate authority to another jurisdiction official. The CEO is generally considered the highest ranking elected or appointed official of a unit of government.

> ⓘ **FINANCIAL MANAGEMENT TIP**
>
> A SCAAP application without the CEO information included will be significantly delayed.

| Key Points about the SCAAP | |
|:---:|:---|
| 1 | Each SCAAP reporting period is based on the previous year's cases and salary. For example, the reporting period for fiscal year 2010 was July 1, 2008 through June 30, 2009. |
| 2 | Correctional officer salaries reported in the SCAAP application may only include base salary, overtime, and shift differential pay. Fringe benefits should not be included in the total salary. |
| 3 | The "total all inmate days" is the cumulative number of incarceration or detention days attributable to all inmates housed in the jurisdiction's facilities during the reporting period. It includes all inmates, regardless of their status, citizenship, disposition, or length of stay, including inmates held at contract facilities. A jurisdiction can use the sum of all nightly facility head counts for the 365 days in the reporting period. |
| 4 | All SCAAP payments must go to the jurisdiction's general fund. Please use the jurisdiction's Employer Identification Number (tax identification), jurisdiction name, and vendor number when applying for SCAAP funds. For example, police department and sheriff's offices may not apply directly for SCAAP funding. |
| 5 | See the 2015 SCAAP Program Guidelines located on the BJA website for more information. |

## Northern Border Prosecution Initiative and Southwest Border Prosecution Initiative

The NBPI and SWBPI programs were created to reimburse eligible State and local jurisdictions for prosecution and pretrial detention costs for cases that the Federal Government declined and referred to these jurisdictions. While applicant jurisdictions may use funds from NBPI/SWBPI Federal payments for any purpose not otherwise prohibited by Federal law, the programs encourage the jurisdictions to use the funds to support and enhance prosecutorial and detention services.

Note: Beginning in Fiscal Year 2013, BJA will only reimburse prosecution costs and will no longer reimburse detention costs under the Northern Border Prosecution Initiative and the Southwest Border Prosecution Initiative.

### Eligibility and Guidelines

- A federally initiated and referred criminal case is eligible if it was prosecuted by a State or county prosecutor and disposed of during one of the eligibility periods.

- An applicant must be the chief executive or an authorized designee of any eligible jurisdiction.

- Only employees, such as a sheriff or county prosecutor, of the applicant jurisdiction can serve as an authorized designee for SWBPI or NBPI applications.

III. Postaward Requirements

........................................................................................................................

### 3.21 OJP'S PAYMENT PROGRAMS

- The following border State and county governments are eligible to receive funding under the border prosecution initiatives:
  - ▶ Northern border: Alaska, Idaho, Maine, Michigan, Minnesota, Montana, New Hampshire, New York, North Dakota, Ohio, Pennsylvania, Vermont, Washington, and Wisconsin
  - ▶ Southwest Border: Arizona, California, New Mexico, and Texas

- In addition to being an approved border State, submitted cases must meet the following criteria to be considered for NBPI and SWBPI funding:
  - ▶ The criminal case was federally initiated.
  - ▶ The case was declined or referred to a county or State jurisdiction after October 1, 2005.
  - ▶ The case was prosecuted by a State or county prosecutor.
  - ▶ The case was disposed of during a designated reporting period.

- Each defendant listed represents a separate case. If one case has multiple defendants, each defendant should be listed as a separate case.
- If one defendant was charged in multiple cases and the cases were investigated or prosecuted during concurrent periods of time, all cases are claimed as one case.

**Application and Funding Process**

- The annual application-through-payment processes for the NBPI and SWBPI programs are managed via online systems.
- The NBPI program is available at https://www.ojp.gov/nbpi, and guidelines are available in the document Northern Border Prosecution Initiative 2013 Guidelines (PDF).
- The SWBPI program can be found at https://www.ojp.gov/swbpi, and guidelines are available in the document Southwest Border Prosecution Initiative 2013 Guidelines (PDF)

| | |
|---|---|
| 1 | Each NBPI/SWBPI reporting period is based on the previous year's cases and salary. For example, the reporting period for fiscal year 2010 was October 1, 2008 through September 30, 2009. |
| 2 | Court and arrest records for each case submitted for NBPI/SWBPI funding may be requested by BJA for pre- and post-award review. Any cases that do not have the corresponding court and arrest records will not be considered for funding. |
| 3 | Documentation must be maintained to support that NBPI/SWBPI funds, when combined with other Federal prosecution funds, do not exceed 100 percent of the prosecution costs for the cases. |
| 4 | Time spent by prosecutors on judicial appeals and incarceration time for sentenced offenders are not allowable program costs and should not be reported on the application. |

## III. Postaward Requirements

### 3.22 FINANCIAL MANAGEMENT TRAINING REQUIREMENTS

#### Introduction

Both the Grant Award Administrator and the Financial Manager for OJP awards must complete the required DOJ Grants Financial Management Trainings within 120 calendar days after the date of the recipient's acceptance of the award. New recipients, recipients with a "high" pre-award risk, and DOJ high-risk recipients will receive a withholding of funds special condition until the Grant Award Administrator and Financial Manager have completed the training.

OVW and COPS Office recipients are not required, but highly encouraged, to complete the DOJ Grants Financial Management Online Training. In some cases, a high-risk recipient may be required to complete the online training.

#### Requirement for Compliance

Successful completion of the required DOJ Grants Financial Management Trainings every three (3) years is required.

In the event that either the Grant Award Administrator or the Financial Manager for an award changes during the period of performance, the new Grant Award Administrator or Financial Manager must successfully complete a financial management training by 120 calendar days after the date the Entity Administrator enters updated Grant Award Administrator or Financial Manager information in JustGrants.

Non-compliance with the training requirements will result in placing a withholding of funds on all applicable awards.

#### Expiration of Training Certificates

Grant Award Administrator and the Financial Manager for the award will be required to re-certify their compliance with the financial management training requirement by successfully completing required Financial Management Training every (3) three years.

#### List of Financial Management Trainings

Award recipients can register for financial management trainings at the following website: https://www.ojp.gov/training/financial-management-training-webinars.

# IV. Organization Structure

## 4.1 ORGANIZATION CHARTS

**United States Department of Justice Organization Chart**

# V. Appendices

## 5.1 ACRONYMS

### A Note for Readers

To reduce clutter and ease reading, DOJ has used acronyms instead of the full phrasings for organizations, positions, and other items referenced more than once in the Guide. For the reader's convenience, the list of acronyms is organized alphabetically.

| A | |
|---|---|
| ACH | Automated Clearing House |
| ADP | Automatic Data Processing |
| ASAP | Automated Standard Application for Payments |
| **B** | |
| BJA | Bureau of Justice Assistance |
| BPIs | Border Prosecution Initiatives |
| BVP | Bulletproof Vest Partnership |
| **C** | |
| CAP | Corrective Action Plan |
| CEO | Chief Executive Officer |
| CFDA | Catalog of Federal Domestic Assistance |
| CFR | Code of Federal Regulations |
| CJICS | Criminal Justice Information and Communication Systems |
| COPS | Office of Community Oriented Policing Services |
| CSB | Customer Service Branch (of the Office of the Chief Financial Officer) |
| **D** | |
| DHS | U.S. Department of Homeland Security |
| DOJ | U.S. Department of Justice |
| DUNS | Data Universal Numbering System |
| **E** | |
| EFT | Electronic funds transfer |
| EIN | Employer Identification Number |
| **F** | |
| FAC | Federal Audit Clearinghouse |
| FAQs | Frequently Asked Questions |
| FAR | Federal Acquisition Regulation |
| FBI | Federal Bureau of Investigation |
| FFATA | Federal Funding Accountability and Transparency Act |
| FFR | Federal Financial Report (SF-425) |
| FSRS | FFATA Subaward Reporting System |
| FTR | Federal Travel Regulation |
| FY | Fiscal Year |

| G | |
|---|---|
| GAM | Grant Award Modification |
| GAO | U.S. Government Accountability Office |
| GSA | U.S. General Services Administration |
| **H** | |
| HHS | U.S. Department of Health and Human Services |
| **I** | |
| ICAC | Internet Crimes Against Children |
| IDES | Internet Data Entry System |
| IFB | Invitation for Bid |
| IRS | Internal Revenue Service |
| IT | Information Technology |
| **J** | |
| JABG | Juvenile Accountability Block Grant |
| JAG | Justice Assistance Grant |
| JJA | Juvenile Justice Act |
| **L** | |
| LEA | Law Enforcement Agency |
| **M** | |
| M&IE | Meals and Incidental Expenses |
| MPIN | Marketing Partner Identification Number |
| MTDC | Modified Total Direct Cost |
| **N** | |
| NBPI | Northern Border Prosecution Initiative |
| NEPA | National Environmental Policy Act |
| NIJ | National Institute of Justice |
| **O** | |
| OCFO | Office of the Chief Financial Officer |
| OCR | Office for Civil Rights (of the Office of Justice Programs) |
| OIG | Office of the Inspector General |
| OJJDP | Office of Juvenile Justice and Delinquency Prevention |
| OJP | Office of Justice Programs |
| OMB | Office of Management and Budget |
| OVC | Office for Victims of Crime |
| OVW | Office on Violence Against Women |

V. Appendices

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## 5.1 ACRONYMS

| P | |
|---|---|
| P/E | Purchase of Evidence |
| P/I | Purchase of Specific Information |
| PMT | Performance Measurement Tool |
| POV | Privately owned vehicle |
| P/S | Purchase of Services |
| **R** | |
| RFP | Request for Proposal |
| RISS | Regional Information Sharing Systems |
| **S** | |
| SAM | System for Award Management |
| SCAAP | State Criminal Alien Assistance Program |
| SES | Senior Executive Service |
| SF-424 | Standard Form 424 |
| SF-425 | Standard Form 425 (FFR) |
| SF-SAC | Standard Form-Single Audit Component |
| SOW | Statement of Work |
| STOP | Services Training Officers Prosecutors (Violence Against Women OVW formula grant program) |
| SWBPI | Southwest Border Prosecution Initiative |
| **T** | |
| Treasury | U.S. Department of the Treasury |
| **U** | |
| U.S.C. | United States Code |
| **V** | |
| VAWA | Violence Against Women Act |
| VOCA | Victims of Crime Act |
| **X** | |
| XML | Extensible Markup Language |

# V. Appendices

## 5.2 GLOSSARY OF TERMS

### A

**ACCRUAL BASIS** is the method of recording revenues in the period in which they are earned, regardless of when cash is received, and reporting expenses in the period when the charges are incurred, regardless of when payment is made.

**ADDENDUM RECORD** is what the bank receives that explains what a payment is for and gives the detail necessary for accurate posting into the correct account.

**ADMINISTRATIVE REQUIREMENTS** are set forth at 2C.F.R. Part 200.

**AMUSEMENT/SOCIAL EVENT** is an informal gathering which is not mandatory for all participants to attain the necessary information. An indicator of a social/amusement event is a cash bar.

**AUTOMATED STANDARD APPLICATION FOR PAYMENTS (ASAP)** is a system that allows entities receiving federal funds to draw funding securely from pre-authorized accounts established by the agency issuing the payment

**AWARDS** typically means grants or cooperative agreements for financial assistance that a non-Federal entity receives directly from a Federal agency, or indirectly via a pass-through entity.

### B

**BLANKET REQUEST** a series of the same or similar pre-arranged events containing multiple delivery dates scheduled to take place within the same fiscal year.

**BREAK FOODS** consist of cookies, sodas, and fruits or other snack items, and may be served at a training program, a meeting, or a conference.

**BREAKS** are short pauses in an ongoing informational program at trainings, meetings, conferences, or retreats. Typically, an all-day event may include one break during a morning session and one break during an afternoon session.

**BUDGET PERIOD** means the time interval from the start date of a funded portion of an award to the end date of that funded portion during which recipients and subrecipients are authorized to incur financial obligations of the funds awarded, including any funds carried forward or other revisions pursuant to § 200.308.

### C

**CASH BASIS** is the method of reporting revenues and expenses when cash is actually received or paid out.

**CLOSEOUT** is the process by which the Federal agency or pass-through entity determines that all applicable administrative actions and all required work of the Federal award have been completed and take actions as described in § 200.344.

**COGNIZANT AGENCY FOR AUDITS** means

the Federal agency designated to carry out the responsibilities described in § 200.513(a). The cognizant agency for audit is not necessarily the same as the cognizant agency for indirect costs. A list of Federal agency Single Audit contacts can be found on the Federal Audit Clearinghouse (FAC) website.

**COGNIZANT AGENCY FOR INDIRECT COSTS** means the Federal agency responsible for reviewing, negotiating, and approving cost allocation plans or indirect cost proposals developed under this part on behalf of all Federal agencies. The cognizant agency for indirect cost is not necessarily the same as the cognizant agency for audit. For assignments of cognizant agencies refer to the appropriate Appendices.

**CONFERENCE** includes meetings, retreats, seminars, symposia, or training activities, it means an event whose primary purpose is to disseminate technical information beyond the recipient or subrecipient. See 41 CF.R § 300-3.1; 2 CF.R § 200.432.

**CONSULTANT** is an individual who provides professional advice or services.

**CONTINENTAL BREAKFAST** means a light breakfast that may include a selection of coffees, teas, juices, fruits, and assorted pastries, and is allowable provided several hours of substantive material directly follows the continental breakfast. Grant recipients are reminded that the least expensive of the available selections should be chosen.

**CONTRACT** means a legal instrument by which a recipient or subrecipient conducts procurement transactions under a Federal award. The term does not include a legal instrument, even if recipient or subrecipient considers it a contract, when the substance of the transaction meets the definition of a Federal award or subaward. See 2 CF.R § 200.1.

**COOPERATIVE AGREEMENTS** means a legal instrument of financial assistance between a Federal agency and a recipient or a pass-through entity and a subrecipient that, consistent with 31 U.S.C.6302-6305.

**COST SHARING** means the portion of project costs not paid by Federal funds or contributions (unless authorized by Federal statute). This term includes matching, which refers to required levels of cost share that must be provided.

# V. Appendices

## D

**DISCRETIONARY AWARDS** is an award in which the Federal agency, in keeping with specific statutory authority that enables the agency to exercise judgment ("discretion"), selects the recipient or the amount of Federal funding awarded through a competitive process or based on merit of proposals. A discretionary award may be selected on a noncompetitive basis, as appropriate.

**DOMESTIC TRAVEL** includes travel within and between the United States and its territories and possessions. However, for organizations located in foreign countries, domestic travel means travel inside of the organization's country.

**DRAW OR DRAWING DOWN** is the term used to describe the process when a recipient requests and receives money under an award agreement.

## E

**EQUIPMENT** is tangible personal property (including information technology systems) having a useful life of more than 1 year and a per-unit acquisition cost that equals or exceeds the lesser of the capitalization level established by the recipient or subrecipient for financial statement purposes, or $10,000.

**EXPENDITURE** is a charge made by a recipient or subrecipient to a project or program for which a Federal award is received

## F

**FEDERAL AGENCY** generally refers to the agency that provides a Federal award directly to a recipient unless the context indicates otherwise.

**FEDERAL CONTRACTOR** is a person or entity that contracts with the Federal Government to provide supplies, services, or experimental, developmental, or research work. Entities may include commercial organizations, educational institutions, construction and architect-engineer companies, State and local governments, and nonprofit organizations. See Title 48 C.F.R. § 31.103-105, § 31.107-108.

**FEDERAL EMPLOYEES** are those persons employed in or under an agency of the United States Federal Government or the District of Columbia. See 5 U.S.C. 4101 (1994) [PDF – 35.9 Kb].

**FOOD AND/OR BEVERAGES** retain their common meanings. Food or beverages are considered in the context of formal meals and in the context of refreshments served at short, intermittent breaks during an activity. Beverages do not include alcoholic drinks.

**FOREIGN TRAVEL** includes any travel outside of the United States and its territories and possessions. For an organization located in a foreign country, this means travel outside that country.

**FORMAL AGENDA** provides a list of all activities that shall occur during the event, using an hour-by-hour timeline. It must specifically include the times during the event when food and beverages will be provided.

**FORMULA AWARDS** are awarded to the States to provide assistance to State and local units of government for programs in accordance with legislative requirements.

## G

**GRANT AGREEMENT or grant** is a legal instrument of financial assistance between a Federal agency or pass through entity and a recipient or subrecipient to carry out a public purpose. See 2 C.F.R. § 200.1.

## H

**HIGH RISK** is a determination made by the agency of a recipient's ability to administer Federal project funds based on issues such as a history of unsatisfactory performance; financial instability; inadequate financial management system; non conformance to terms and conditions of previous awards; or is otherwise not responsible. Additional reporting or other requirements may be placed on high- risk recipients.

## I

**INTEREST FUNDS** are fixed- or petty-cash funds in the form of currency or coin that have been advanced as funds held outside of the usual secure account. Agencies typically use interest funds to reimburse employees for expenses, to make small purchases, to make emergency beneficiary payments, and to pay informants, among other uses.

**INCIDENTAL** means (in the conference context) relating to a formal event where full participation by participants mandates the provision of food and beverages.

**INDIRECT COST** means those costs incurred for a common or joint purpose benefitting more than one cost objective, and not readily assignable to the cost objectives specifically benefitted, without effort disproportionate to the results achieved.

**INTERNAL CONTROL** means processes, implemented by a recipient or subrecipient, designed to provide reasonable assurance regarding the achievement of objectives in the following categories:

(a)  Effectiveness and efficiency of operations;

(b)  Reliability of reporting for internal and external use; and

(c)  Compliance with applicable laws and regulations. See 2 C.F.R. § 200.61.

## J

**JUSTICE GRANTS SYSTEM** (JustGrants) represents a significant IT modernization effort to develop and implement a single grants management system for all three DOJ grant-making components. It also gives applicants and award recipients new ways to manage their own entity information and users in the system. JustGrants offers the ability for applicants and award recipients to:

# V. Appendices

(a) authenticate each user with their own login and password,

(b) manage multiple users and associate individual roles which govern access to information and tasks in the system, and

(c) assign users to one or many applications and award tasks and activities.

## L

**LIQUIDATION PERIOD** provides awardees time to receive ordered goods or services, and make final payments on trailing costs. It is usually a 120 day period after award end date.

**LOBBYING** is generally considered to be the act of trying to influence legislation. An organization will be regarded as attempting to influence legislation if it contacts, or urges the public to contact, members or employees of a legislative body for the purpose of proposing, supporting, or opposing legislation, or if the organization advocates the adoption or rejection of legislation. See 2 C.F.R. § 200.450.

## M

**MODIFIED TOTAL DIRECT COST (MTDC)** means all direct salaries and wages, applicable fringe benefits, materials and supplies, services, travel, and up to the first $50,000 of each subaward (regardless of the period of performance of the subawards under the award). MTDC excludes equipment, capital expenditures, charges for patient care, rental costs, tuition remission, scholarships and fellowships, participant support costs, and the portion of each subaward in excess of $50,000.

## N

**NONEXPENDABLE PERSONAL PROPERTY** (i.e., equipment) includes tangible personal property (including information technology systems) having a useful life of more than 1 year and an acquisition cost of $10,000 or more per unit. A recipient may use its own definition of nonexpendable personal property provided that the definition would at least include all tangible personal property as defined below. See 2 C.F.R. § 200.1.

## O

**OBLIGATION** means orders placed for property and services, contracts and subawards made, and similar transactions during a given period that require payment by the recipient or subrecipient during the same or a future period (i.e., a legal liability to pay under a grant, subgrant, and/or contract determinable sums for services or goods incurred during the period of performance). See 2 C.F.R. § 200.1.

## P

**PASS-THROUGH ENTITY** means a recipient or subrecipient that provides a subaward to a subrecipient (including lower tier subrecipients) to carry out part of a program.

**PERSONAL PROPERTY** means property of any kind except real property. It may be tangible or intangible. See 2 C.F.R. § 200.1.

**PREAGREEMENT COSTS** are defined as those costs which are considered necessary to the project but occur prior to the starting date of the period of performance.

**PRIOR APPROVAL** means written approval obtained in advance by an authorized official of a Federal agency or pass-through entity of certain costs or programmatic decisions.

**PROGRAM INCOME** is gross income earned by the recipient or subrecipient that is directly generated by a supported activity or earned as a result of the Federal award during the period of performance except as provided in § 200.307(c). See 2 C.F.R. § 200.1. Program income includes but is not limited to income from fees for services performed, the use or rental or real or personal property acquired under Federal awards, the sale of commodities or items fabricated under a Federal award, license fees and royalties on patents and copyrights, and principal and interest on loans made with Federal award funds. Interest earned on advances of Federal funds is not program income. Except as otherwise provided in Federal statutes, regulations, or the terms and conditions of the Federal award, program income does not include rebates, credits, discounts, and interest earned on any of them.

**PERIOD OF PERFORMANCE** is the period for which implementation of a project is authorized. The project period may be equal to or longer than the budget period for an award, but cannot be shorter than the budget period.

**PURCHASE OF EVIDENCE (P/E)** is the purchase of evidence and/or contraband, such as narcotics and dangerous drugs, firearms, stolen property, counterfeit tax stamps, and so forth, required to determine the existence of a crime or to establish the identity of a participant in a crime.

**PURCHASE OF SERVICES (P/S)** includes travel or transportation of a non-Federal officer or an informant; the lease of an apartment, business front, luxury-type automobiles, aircraft or boat, or similar effects to create or establish the appearance of affluence; and/or meals, beverages, entertainment, and similar expenses (including buy money and cash rolls, etc.) for undercover purposes, within reasonable limits.

**PURCHASE OF SPECIFIC INFORMATION (P/I)** includes the payment of monies to an informant for specific information. All other informant expenses would be classified under P/S and charged accordingly.

# V. Appendices

## R

**REAL PROPERTY** means land, including land improvements, structures, and appurtenances thereto, and legal interests in land, including fee interest, licenses, rights of way, and easements. Real property excludes movable machinery and equipment.

**REASONABLE** means those costs that a prudent person would have incurred under the circumstances prevailing at the time the decision to incur the cost  was made.

**RECEPTION** means an informal gathering which is not mandatory for all event participants to obtain necessary information. Indicators of a reception include a cash  bar, inadequate seating for the entire group, food items from a reception menu (such as finger foods), and a longer break (than utilized throughout the day) between the substantive meetings and the reception. Receptions are expressly prohibited and are considered to be an unallowable cost with Federal funds.

**RECIPIENT** means an entity that receives a Federal award directly from a Federal agency to carry out an activity under a Federal program. The term recipient does not include subrecipients or individuals that are participants or beneficiaries of the award.

**REGIONAL INFORMATION SHARING SYSTEMS (RISS)** is a national program of regionally oriented services designed to facilitate the coordination and communication capabilities of local, state, federal, and tribal criminal justice agencies.

## S

**SEPARATION OF DUTIES** is a key internal control concept that establishes procedures for certain types of financial transactions where no one person is able to execute the entire procedure alone. The most commonly used example concerns initiating a payment (writing the check) and authorizing a payment (signing the check).

**SOCIAL EVENT** is any event with alcoholic beverages served, available, or present.

**SPECIAL CONDITIONS** are contractual terms and conditions that are included with the award. Examples of special conditions include additional reports, audits, conferences, and disposition of program income.

**STIPEND** is an allowance to defray expenses.  Examples of these expenses include, but are not limited to, rent, utilities, travel, incidentals, etc.

**SUBAWARD** means an award provided by a pass- through entity to a subrecipient for the subrecipient to contribute to the goals and objectives of the project by carrying out part of a Federal award received by the pass-through entity. It does not include payments to a contractor, beneficiary, or participant of a Federal program. A subaward may  be provided through any form of legal agreement consistent with criteria in 200.331, including an agreement the pass-through entity considers a contract.

**SUBRECIPIENT** an entity, that receives a subaward from a pass-through entity to carry out part of a Federal program; but does not include a beneficiary or participant. A subrecipient may also be a recipient of other Federal awards directly from a Federal agency.

**SUPPLANTING** is to deliberately reduce State or  local funds because of the existence of Federal funds. For example, when State funds are appropriated for  a stated purpose and Federal funds are awarded for that same purpose, the State replaces its State funds with Federal funds, thereby reducing the total amount available for the stated purpose.

## U

**UNIQUE ENTITY IDENTIFIER** is the official  identifier for doing business with the U.S. Government as of   April 4, 2022. All entities (public and private companies, individuals, institutions, or organizations) must register in SAM.gov to obtain a **12-character unique number** to do business with the Federal government.

**UNALLOWABLE COSTS** are costs the government is unwilling to pay as a direct charge or through an indirect cost pool applied to the federal grant  or contract. An organization is not prohibited from incurring unallowable costs but they cannot be recovered either directly or indirectly under federal grants or contracts.

## W

**WORKING DINNER** means a formal and mandatory dinner necessary for all participants to have full participation in the conference or event. A working dinner must include a formal agenda including a program or speakers that will impart necessary information important for full understanding of the subject matter of the conference. There should be several hours of informative sessions providing substantive information scheduled both before and after a working dinner. Indicators of a working dinner include seating for all participants. A cash bar is expressly prohibited.

**WORKING LUNCH** is a formal and mandatory lunch necessary for all participants to have full participation in the conference or event. A working lunch must include  a formal agenda including a program or speakers that will impart necessary information important for full understanding of the subject matter of the conference. There should be several hours of informative sessions providing substantive information scheduled both  before and after a working lunch (exhibits are not included). Indicators of a working lunch include seating for all participants. A cash bar is expressly prohibited.

**WORK-RELATED EVENT** is a conference or meeting involving a topical matter of interest within the purview of the agency's mission and function.

V. Appendices

## 5.2 APPENDICES

### Appendix I: Sample ACH Template Instructions

The sample ACH template should be completed by the recipient's Financial Institution for the remittance of Automated Clearing House (ACH) credits to the US Department of Justice, Office of Justice Programs.

Sample ACH Template Instructions

### Appendix II: Sample Fedwire Template Instructions

The sample Fedwire template should be completed by the recipient's Financial Institution for the remittance of Fedwire payments to the US Department of Justice, Office of Justice Programs.

Sample Fedwire Template Instructions