# EXHIBIT #8

## DECLARATION OF SHATAUN HAILEY

I, Shataun Hailey, pursuant to 28 U.S.C. § 1746, hereby declare that the following is true and correct:

1. I am over the age of eighteen and understand the obligations of an oath.

1. I am the Victim Services Program Manager at the Illinois Criminal Justice Information Authority (ICJIA). I manage the agency's federal awards for VOCA and VAWA. I have personal knowledge of all the facts stated herein, including knowledge based on my experience and information provided to me. If called as a witness, I could and would testify competently to the matters set forth below.

2. ICJIA is a state agency dedicated to improving the administration of criminal justice. ICJIA also works to ensure the criminal justice system in Illinois is efficient, effective, and equitable. ICJIA's specific powers and duties are detailed in the Illinois Criminal Justice Information Act, 20 ILCS 3930 *et seq.* They include grants administration, research and analysis, policy and planning, and information systems and technology.

3. ICJIA is a recipient of federal funds under various statutes and administers a variety of federal grant programs in Illinois. One of those statutes is the Victims of Crime Act (VOCA).

*Victims of Crime Act – Victim Assistance Program*

4. I am familiar with the Victims of Crime Act ("VOCA"), and, specifically, with VOCA's Victim Assistance program. The purpose of VOCA is to provide resources and assistance, including certain direct services, to victims and witnesses of crime, and their families. The resources and assistance provided to these individuals in the wake of a crime is critical to their healing, their safety, and public safety generally.

1

5. The Victim Assistance Program is a "formula grant" program under VOCA. Under this program, States receive funding from the U.S. Department of Justice (through its Office for Victims of Crime, or OVC, which is a program office within the Office of Justice Programs, or OJP). The amount of funding allocated to each state is calculated from a formula in the VOCA statute, based on a state's population. In Illinois, VOCA Assistance Program awards from FY2022-2025 remain open.

6. For FY2022, OVC allocated $53,660,957 to Illinois under the VOCA Assistance Program. ICJIA applied for and received this award.

7. For FY2023, OVC allocated $49,916,616 to Illinois under the VOCA Assistance Program. ICJIA applied for and received this award.

8. For FY2024, OVC allocated $28,385,202 to Illinois under the VOCA Assistance Program. ICJIA applied for and received this award.

9. For FY2025, OVC allocated $45,400,453 to Illinois under the VOCA Assistance Program. ICJIA applied for and received this award.

10. For VOCA formula grants, including the Victim Assistance Program grant, the "award period" is the year that the grant was received, plus the three years after that. A grantee state and its subgrantees may spend down the awarded monies at any time during that four-year award period. For example, a grantee State (and its subgrantees) may draw from a VOCA Victim Assistance award received for FY 2020 through the end of FY 2023. If the award is not fully spent by the end of the award period, the grantee State can seek an extension from OVC to be able to continue to draw from that award. The federal fiscal year concludes at the end of September. As of this date, Illinois and its subgrantees have a total of $60,662,389 left to draw down on the above-listed open awards from FY2022-2025.

11. VOCA Assistance Program funds support programming including:

- Services for victims of domestic violence, including crisis response, legal advocacy, shelter, counseling, and case management to survivors of domestic violence through a statewide network of service providers. These programs help survivors across urban, rural, and underserved areas find shelter, rebuild safety plans, obtain protective orders, and navigate custody issues;

- Services for victims of sexual assault, including support for over 30 rape crisis centers in Illinois that provide 24/7 advocacy, medical accompaniment, counseling, support groups, and prevention education. These programs provide immediate crisis support, allowing trained advocates to meet survivors at hospitals or police stations at any hour;

- Services for victims of child abuse, including forensic interviews, medical exams, counseling, and family advocacy to child victims of abuse, working closely with law enforcement and DCFS. These services include programs in schools and communities that work to prevent sexual violence before it happens. These services minimize trauma by using trained interviewers in child-friendly environments and by ensuring law enforcement, prosecutors, and child welfare agencies work together to protect the best interests of the child;

- Transitional housing services that provide safe, supportive housing for victims of domestic violence, trafficking, or other violent crimes. These services also include life skills training, job training, therapy, and child

3

services. These services prevent crime victims (especially women and children) from becoming unhoused or returning to dangerous situations;

- Trauma recovery centers that provide crime victims with mental health care, substance abuse support, and intensive case management

12. ICJIA and our subgrantees do not screen individuals for immigration status as an eligibility factor for VOCA services. This is in accordance with VOCA regulations, which state that "[v]ictim eligibility under this program for direct services is not dependent on the victim's immigration status." 28 C.F.R. §§ 94.103(a), 94.116. Consistent with these regulations, ICJIA and our subgrantees do not turn away any victims seeking VOCA allowable assistance based on their immigration status. The accessibility of these services to all victims, witnesses, and families is essential given that VOCA funds support some of the most vulnerable members of our communities, including people who have experienced significant upheaval in their lives and who do not traditionally seek help when needed. The programming and services that these funds support also help us to build trust with victims and witnesses, whose participation (irrespective of their immigration status) is important to the advancement of public safety interests.

13. Our subgrantees likewise would not inquire about an individual's immigration status to determine whether that person is eligible for VOCA-funded services, because the regulations make clear that immigration status is not an eligibility requirement for VOCA-funded and subgrantee-provided direct services. 28 C.F.R. § 94.116.

14. Victims and witnesses come to our subgrantees seeking assistance after they have been victimized, and it is critical that we use this opportunity to build trust with them. In my experience, when victims or witnesses are afraid that reporting a crime (or seeking related services/support) could result in adverse immigration consequences for them or their families, it

4

is both harmful for them personally and a detriment to public safety broadly. Victims and witnesses must be able to come forward and access services. Their participation can be integral to the disposition of a criminal action and to the functioning of the criminal justice system itself.

***Legal assistance under VOCA Victim Assistance***

15. Some of our subgrantees provide certain direct civil legal assistance to victims in the wake of a crime. Under VOCA, these services must be directly related to their victimization. 28 C.F.R. §§ 94.119(a)(10), (f).

16. One category of legal services provided under VOCA includes emergency legal services, which includes filing for emergency restraining or protective orders and obtaining emergency custody orders and visitation rights.

17. The second category of legal services provided under VOCA includes victims' rights enforcement, including assisting victims in asserting their rights as victims or otherwise protecting their safety, privacy, or other interests as victims, in a criminal proceeding directly related to the victimization.

18. The third category of legal services provided under VOCA includes civil legal services, which includes:

- o Proceedings for protective/restraining orders or campus administrative protection/stay-away orders;
- o Family, custody, support, or dependency matters;
- o Contract, housing, or employment matters;
- o Immigration assistance;
- o Intervention with creditors, law enforcement (e.g., to obtain police reports), and other entities;

5

- o Intervention with administrative agencies, schools/colleges, or tribal entities and other circumstances where legal advice or intervention would assist in addressing the consequences of a person's victimization; and

- o Filing a motion to vacate or expunge a victim's conviction, or similar action, based on his/her status of being a victim, where permitted under Illinois law.

19. Each of the direct services allowable under the VOCA Victim Assistance Program is critical to victim restoration, well-being, and safety. Civil legal assistance is particularly important for victims, witnesses, and their families because meeting a victim's legal needs is key to ensuring their safety and security, enabling them to continue to recover from their victimization, and preventing future victimization. Effective legal services demonstrate that the justice system can protect victims, encouraging reporting of crimes and engagement with community resources.

***Violence Against Women Act (VAWA)***

20. I am familiar with the Violence Against Women Act (VAWA), and specifically the VAWA STOP (Services, Training, Officers, and Prosecutors) Formula Grant Program ("VAWA STOP") and the VAWA Sexual Assault Services Formula Grant ("VAWA SASP"). Under these programs, States receive funding from the U.S. Department of Justice through its Office on Violence Against Women (OVW). The purpose of VAWA is to provide financial assistance to states for developing and strengthening effective law enforcement and prosecution strategies and victim services in cases involving violent crimes against women.

21. For FY2021, the OVW allocated $4,595,110 to Illinois under the VAWA STOP program. ICJIA applied for and received this award.

22. For FY2022, the OVW allocated $4,165,552 to Illinois under the VAWA STOP program. ICJIA applied for and received this award.

23. For FY2023, the OVW allocated $5,171,178 to Illinois under the VAWA STOP program. ICJIA applied for and received this award.

24. For FY2024, the OVW allocated $5,058,550 to Illinois under the VAWA STOP program. ICJIA applied for and received this award.

25. For FY2025, the OVW allocated $5,781,711 to Illinois under the VAWA STOP program. ICJIA applied for and received this award.

26. For FY2023, the OVW allocated $1,115,471 to Illinois under the VAWA SASP program. ICJIA applied for and received this award.

27. For FY2024, the OVW allocated $1,101,529 to Illinois under the VAWA SASP program. ICJIA applied for and received this award.

28. For FY2025, the OVW allocated $1,174,123 to Illinois under the VAWA SASP program. ICJIA applied for and received this award.

29. ICJIA and our subgrantees do not screen individuals for immigration status as an eligibility factor for VAWA services. This is in accordance with VAWA regulations, which state that "[v]ictim eligibility for direct services is not dependent on the victim's immigration status." 28 C.F.R. § 90.4(c). Consistent with these regulations, ICJIA and our subgrantees do not turn away any victims seeking VAWA assistance based on their immigration status. The accessibility of these services to all victims, witnesses, and families is essential given that VAWA funds support some of the most vulnerable members of our communities, including people who have experienced significant upheaval in their lives and who do not traditionally seek help when needed. The programming and services that these funds support also help us to build trust with victims and witnesses, whose participation (irrespective of their immigration status) is important to the advancement of public safety interests.

7

30. Our subgrantees likewise would not inquire about an individual's immigration status to determine whether that person is eligible for VAWA-funded services, because the regulations make clear that immigration status is not an eligibility requirement for VAWA-funded and subgrantee-provided direct services. 28 C.F.R. § 90.4(c)).

*Legal assistance under VAWA*

31. VAWA funding may be used for "legal assistance." 34 U.S.C. § 10441 (b)(5).

32. In June 2025, ICJIA posted a funding opportunity for its Multidisciplinary Team Response Program, funded by VAWA STOP funds. Among the services ICJIA recommended recipients use these funds for are "court advocacy," "legal advocacy," and "other civil legal assistance." In connection with this funding opportunity, ICIJA expressly informed applicants that "Court-related services to assist women in participating in criminal justice proceedings" were allowable expenses.

33. Similarly, in June 2023, ICJIA posted a funding opportunity for funds under VAWA SASP. That funding opportunity was posted to fund "core services" at sexual assault victim service providers, which includes "legal advocacy" including "helping victims obtain emergency orders of protection, notifying them of scheduled court proceedings, and accompanying them to court."

34. Accordingly, ICJIA has funded legal services through VAWA funds and intends to continue funding legal services through VAWA funds.

*The unallowable cost notice and legal services restriction*

35. On August 18, 2025, ICJIA received emails from the Office of Justice Programs entitled "Notice Regarding Unallowable Costs" for each of our open VOCA Victim Assistance grants (*i.e.*, for each of FYs 2022, 2023, and 2024). Apart from the number identifying the relevant open grant year, the emails were identical. They contained the following language:

8

Effective immediately upon receipt of this notice, any obligations of funds, at any tier, under this award to provide (or to support the provision of) legal services to any removable alien or any alien otherwise unlawfully present in the United States shall be unallowable costs for purposes of this award, but the foregoing shall not be understood to apply—(1) to legal services to obtain protection orders for victims of crime; or (2) to immigration-related legal services that may be expressly authorized or required by any law, or any judicial ruling, governing or applicable to the award.

36.     This emailed notice and the new unallowable cost that it describes came to ICJIA as a surprise. We had no prior notice that DOJ planned to restrict the provision of legal services under VOCA in this way, whether from OVC, OJP, DOJ, or any other party.

37.     On September 15, 2025, the Office of Justice Programs sent another communication to ICJIA entitled "NOTICE REGARDING UNALLOWABLE COSTS UNDER THE AWARD (re: legal services to certain aliens)," stating:

The notice entitled "Notice Regarding Unallowable Costs Under the Award" that was sent on August 18, 2025 (which this notice supersedes), will be implemented as specified in the DOJ Grants Financial Guide, in Chapter 3.13 "Unallowable Costs" ("Legal Services for Aliens"). As provided in the award itself, compliance with the DOJ Grants Financial Guide is a material requirement of the award. The award requirement specified in the DOJ Grants Financial Guide, in Chapter 3.13 "Unallowable Costs" ("Legal Services for Aliens") will be effective – and will be subject to enforcement under this Federal grant award from the Department of Justice – starting on October 31, 2025.

38.     Although the "DOJ Grants Financial Guide" currently available online states that it was "Last Updated October 2024," it appears that the referenced provision in Chapter 3.13 was added in September of this year. In relevant part, it states that while "costs of providing legal services (that is, professional services of the kind lawfully provided only by individuals licensed to practice law) to any removable alien (see 8 U.S.C. § 1229a(e)(2)) or any alien otherwise unlawfully present in the United States are disallowed and may not be charged against the award," it exempts the following categories of legal services from the prohibition:

9

- Orders of protection, "including associated or related orders (e.g., custody orders), arising from the victimization;"
- Services associated with 18 U.S.C. ch. 77, relating to "peonage, slavery, and trafficking in persons;"
- Services to obtain T-visas, U-visas, or "'continued presence' immigration status (see, e.g., 8 U.S.C. § 1101(a)(15)(T) & (U); 22 U.S.C. § 7105(c)(3)(A); and,
- Services for which "disallowance would contravene any express requirement of any law, or of any judicial ruling, governing or applicable to the award." *Id.*

39. On September 17, 2025 ICJIA received notification of Illinois' VOCA Fiscal Year 2025 Pre-Acceptance Award Package for Victim Assistance. The package contains the following condition, appearing to incorporate the legal services restriction recently added to the DOJ Grants Financial Guide:

> References to the DOJ Grants Financial Guide are to the DOJ Grants Financial Guide as posted on the OJP website (currently, the "DOJ Grants Financial Guide" available at https://ojp.gov/financialguide/DOJ/index.htm), including any updated version that may be posted during the period of performance. The recipient agrees to comply with the DOJ Grants Financial Guide.

40. ICJIA perceives a number of major problems with the new unallowable costs—even as augmented by the Office of Justice Program's September 15, 2025 communication. To begin with, this new restriction was not in any of the original grant awards for the open awards through Fiscal Year 2024, and represents a significant change in how the program has been operated. We did not know, nor could we have known, that DOJ would impose this new unallowable cost on awards years later, while we are still spending down those funds.

41. ICJIA did not receive the September 15, 2025 communication, or any similar notice, for any of its open VAWA awards. However, inclusion of the condition in the DOJ Grants Financial Guide means the restriction apparently now applies to all open VAWA awards.

10

*The impact of the Legal Services Restriction*

42. Even if DOJ only plans to enforce this new restriction going forward, imposing this new restriction after our acceptance of the awards presents challenges for ICJIA. We relied on the various terms and conditions for each grant year, as they were represented to us when the grant awards were made.

43. Generally, when ICJIA makes subgrantee determinations in the year of each award grant, we do so based on a number of factors, including the subgrantee's service model to support victims of crime. Until recently, there was no restriction on the kinds of services that could be provided to certain groups of victims and witnesses (whether based on immigration status, or anything else). Thus, ICJIA did not consider when making past subgrantee awards that certain types of services (in this case, certain legal services) would later be disallowed for certain types of victims and witnesses (in this case, "any removable alien or any alien otherwise unlawfully present in the United States").

44. Further, based on my experience, it would be extremely difficult for our subgrantees to implement a system to verify immigration status and exclude some victims from some services. Immigration status is legally complex, and it would require extensive new expertise and training for staff members to learn how to verify various immigration statuses. It is hard to determine how ICJIA could expect our subgrantees, most of whom are resource-limited, non-profit, and community-based organizations, to develop entirely new expertise and practices for determining which victims are "removeable" or "otherwise unlawfully present."

45. It is also important to consider that people who have experienced crime, and survivors of domestic violence and human trafficking, in particular, may not have access to the legal documents required to prove that they have lawful status. In fact, we know from our work

with survivors that cutting off victims' access to important legal documents is a common coercive and abusive tactic. Excluding all individuals who cannot prove their immigration status would punish not only undocumented survivors, but would also punish victims who simply do not have access to the requisite documentation.

46. At ICJIA, our work would similarly need a significant overhaul—and additional resources—if we were required to monitor subgrantees' compliance with new condition. To our knowledge, ICJIA has neither needed to make a determination as to which victims or witnesses are "removable alien[s] or … alien[s] otherwise unlawfully present in the United States," nor needed to require our subgrantees to do so. Consistent with the VOCA statute and regulations, eligibility for these services has not been dependent on a person's immigration status. It is hard to know exactly how ICJIA would transform our own operations and practices to be able to ensure subgrantee compliance with the new legal services restriction.

47. At the outset, ICJIA would need to create our own immigration-related expertise and then modify current training and monitoring protocols to accommodate the new legal services restriction. While ICJIA possesses expertise in grant administration, our job has never involved determination of immigration status, and ICJIA does not possess expertise in this area. Not only will ICJIA have to develop and deliver new trainings related to making determinations on immigration status, but we will also need to train subgrantees on their compliance with the restriction. Preparation and delivery of these new trainings alone would take material time and expense from ICJIA. Monitoring subgrantee compliance would also require significant ongoing resources. Operationalizing the legal services restriction, which would entail creating new trainings, changing protocols for us and our subgrantees, and standing up a new statewide

monitoring apparatus, would require considerable time and expenses that would otherwise go toward the victims and witnesses of crime whom we serve.

48.     As should be clear, if required, complying with a condition requiring verification of immigration status would not be a mere tweak to existing operations—it would be a true overhaul and transformation of what our work is and how we do that work. The same would likely be true for our subgrantee organizations. In spite of how big of a change this would be for our VOCA Victim Assistance Program and VAWA programs ICJIA has to this day not received (and is not aware of) any guidance from DOJ, OJP, OVW, OVC about what State grantees must do to develop an internal system to conduct immigration status screenings, to train subgrantees on the same, or to monitor subgrantees' compliance. Considering that we have received only two communications from OJP on this restriction, it is not clear that they understand or have considered how much our work and operations, and those of our subgrantees, would have to change in order to comply with the restriction.

49.     Further, although the condition allows Illinois and its subgrantees to continue providing assistance to victims seeking the legal services exempted in the "DOJ Grants Financial Guide" and legal services where "disallowance would contravene any express requirement of any law," it is not clear which legal services this exemption covers. No guidance has been provided on what constitutes an "express requirement of any law." Illinois is left to guess at what constitutes an "express requirement" and whether the exception applies to regulatory as well as statutory provisions and state as well as federal laws. As described above, existing VOCA regulations contemplate numerous other forms of legal assistance, beyond the exempted categories, such as:

- Custody, guardianship, or visitation proceedings involving child victims of abuse;

13

- Legal assistance to secure safe or transitional housing for victims of domestic violence or human trafficking; and

- Access to public benefits or entitlements required by state or federal law.

These examples illustrate the range of legal services that subgrantees may need to provide to comply with both state and federal requirements, highlighting the importance of clear guidance regarding allowable VOCA-funded legal services.

50. Even if ICJIA had the resources to undertake this transformation without diverting funds from work supporting our mission, and even if it were clear what "legal services" the restriction pertains to, adapting our and our subgrantees' ways of working to comply with the restriction would still fundamentally change how ICJIA and its subgrantees do this work. Our mission is to improve the administration of criminal justice in Illinois and ensure the criminal justice system in Illinois is efficient, effective, and equitable. The services that we fund, using VOCA and VAWA grants, help us to build trust with victims and witnesses by providing them with the support and assistance that they need, when they need it. If we were to start to withhold certain services from victims based on immigration status, this could do irreparable damage to the trust that ICJIA has spent many years building with those victims' communities. For years, our message to *all* victims and witnesses, consistent with the VOCA and VAWA statute and regulations, has been that we are available to support *everyone* who is a victim or witness of crime. If that stops being true, our work will need to change, and we may no longer be as effective at fulfilling our mission as we are now.

51. Finally, the victims, families, and witnesses who come to us and our subgrantees to seek assistance are often going through the worst, most difficult periods of their lives. They have generally experienced serious trauma, and many have been subject to or exposed to physical

14

violence. The entire VAWA program and VOCA program, including Victim Assistance, is designed to build trust with these individuals in spite of the terrible events that have rendered them eligible for the resources, programs, and services funded by VOCA and VAWA. The legal services restriction will have real impact on their lives.

52. This scenario would not only seem to counter to the requirements of VOCA and VAWA as we understand them through the statute and regulations but would also be at odds with the ethos of this work. I know, based on my professional expertise through nine years that asking victims questions that make them fearful, particularly as a threshold question before agreeing to assist them, is harmful to those individuals *and* to their trust in our criminal system. It is detrimental to public safety, as this will foreseeably dissuade some victims and witnesses from coming forward—whether to law enforcement or to us—in the first place.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 30th day of September 2025, in Chicago, IL.

_____
Shataun Hailey
Victim Services Program Manager
Illinois Criminal Justice Information Authority

15