# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| STATE OF NEW YORK, *et al.*, | |
| *Plaintiffs*, | |
| *v.* | Civil Action No. 1:25-cv-00499-MRD |
| UNITED STATES DEPARTMENT OF JUSTICE, *et al.*, | |
| *Defendants*. | |

## MEMORANDUM IN SUPPORT OF DEFENDANTS' CROSS-MOTION TO DISMISS FOR LACK OF VENUE AND IN OPPOSITION TO PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................. 1

BACKGROUND .................................................................................................................. 2

I.     Statutory and Regulatory Background ............................................................... 2

     A.    DOJ's Grant-Making Authority ........................................................... 2

     B.    The Grant Programs at Issue in this Case ........................................... 4

II.    This Litigation ................................................................................................. 6

STANDARD OF REVIEW ................................................................................................. 6

ARGUMENT ....................................................................................................................... 7

I.     Venue is Improper in this District Because No Plaintiff with Standing Resides Here ............. 8

II.    Plaintiffs are Unlikely to Succeed on the Merits .......................................... 10

     A.    This Court Lacks Jurisdiction Over Plaintiffs' Claims as to Previously Awarded Grants ............................................................................. 10

     B.    Plaintiffs' Spending Clause Challenge Fails ..................................... 14

          1.    The Provision is Not Retroactive as Applied to Previously Awarded Grants ........................................................................ 14

          2.    The Provision is Not Unclear in Violation of the Spending Clause ........ 16

     C.    The Challenged Provision Does Not Violate the APA ....................... 19

III.   Plaintiffs Fail to Establish Irreparable Harm .............................................. 23

IV.   The Balance of Equities and Public Interest Favor the Government ............ 26

V.    Any Injunctive Relief Should Be Accompanied by a Bond ......................... 28

CONCLUSION .................................................................................................................. 28

# TABLE OF AUTHORITIES

## CASES

*7-Eleven, Inc. v. Grewal,*
  60 F. Supp. 3d 272, 283 (D. Mass. 2014) ...................................................................................26

*A.J. Taft Coal Co. v. Barnhart,*
  291 F. Supp.2d 1290 (N.D. Ala. 2003) ........................................................................................9

*Akebia Therapeutics, Inc. v. Azar,*
  443 F. Supp. 3d 219 (D. Mass. 2020), *aff'd*, 976 F.3d 86 (1st Cir. 2020) ...............................25

*Albrecht v. Comm. on Emp. Benefits of the Fed. Rsrv. Emp. Benefits Sys.,*
  357 F.3d 62 (D.C. Cir. 2004) .....................................................................................................11

*Am. Sci. & Eng'g v. Califano,*
  571 F.2d 58 (1st Cir. 1978) .............................................................................................11, 12, 14

*Associated Gen. Contractors of Am., Inc. v. Fed. Acquisition Regul. Council,*
  720 F. Supp. 3d 461 (W.D. La. Mar. 12, 2024) ..........................................................................9

*Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.,*
  571 U.S. 49 (2013) .....................................................................................................................10

*Bd. of Educ. for Silver Consol. Sch. v. McMahon,*
  --- F. Supp. 3d. ---, 2025 WL 2017177 (D.N.M. July 18, 2025) ...............................................14

*Bennett v. New Jersey,*
  470 U.S. 632 (1985) ...................................................................................................................13

*Bennett v. Spear,*
  520 U.S. 154 (1997) ...................................................................................................................19

*Benning v. Georgia,*
  391 F.3d 1299 (11th Cir. 2004) .................................................................................................18

*Berman v. United States,*
  264 F.3d 16 (1st Cir. 2001) ........................................................................................................13

*Boaz Hous. Auth. v. United States,*
  994 F.3d 1359 (Fed. Cir. 2021) .................................................................................................11

*Bowen v. Georgetown Univ. Hosp.,*
  488 U.S. 204 (1988) ...................................................................................................................14

*Burgos v. Milton,*
  709 F.2d 1 (1st Cir. 1983) ..........................................................................................................11

*Carney v. Adams*,
 592 U.S. 53 (2020) ..................................................................................................8

*Charles v. Verhagen*,
 348 F.3d 601 (7th Cir. 2003) ..............................................................................18

*Charlesbank Equity Fund II v. Blinds To Go, Inc.*,
 370 F.3d 151 (1st Cir. 2004) ...............................................................................23

*City of New York v. Shalala*,
 34 F.3d 1161 (2d Cir. 1994) ................................................................................20

*Clapper v. Amnesty Int'l USA*,
 568 U.S. 398 (2013) ...............................................................................................8

*Coggeshall Dev. Corp. v. Diamond*,
 884 F.2d 1 (1st Cir. 1989) ....................................................................................13

*Cohen v. Postal Holdings, LLC*,
 873 F.3d 394 (2d Cir. 2017) ................................................................................12

*Columbus Reg'l Hosp. v. United States*,
 990 F.3d 1330 (Fed. Cir. 2021) ...........................................................................13

*Cordis Corp. v. Cardiac Pacemakers*,
 599 F.2d 1085 (1st Cir. 1979) ................................................................................6

*Crowley Gov't Servs., Inc. v. GSA*,
 38 F.4th 1099 (D.C. Cir. 2022).....................................................................10, 13

*Cutter v. Wilkinson*,
 423 F.3d 579 (6th Cir. 2005) ...............................................................................18

*Danielson v. Local 275, Laborers Int'l Union*,
 479 F.2d 1033 (2d Cir. 1973) ..............................................................................25

*Davis ex rel. Lashonda D. v. Monroe Cnty. Bd. of Educ.*,
 526 U.S. 629 (1999) .............................................................................................18

*Dayton Area Chamber of Com. v. Kennedy*,
 147 F.4th 626 (6th Cir. 2025) ................................................................................8

*Department of Education v. California*,
 145 S. Ct. 966 (2025) ...........................................................................................12

*Diaz v. Johnson*,
 No. 19-1501, 2020 WL 9437887 (1st Cir. Nov. 12, 2020)..................................11

*Dist. Hosp. Partners, L.P. v. Burwell,*
    786 F.3d 46 (D.C. Cir. 2015) ................................................................................. 23

*F.C.C. v. Fox Television Stations, Inc.,*
    556 U.S. 502 (2009) ............................................................................................. 23

*FDIC v. Meyer,*
    510 U.S. 471 (1994) ............................................................................................. 10

*Fernandez-Vargas v. Gonzales,*
    548 U.S. 30 (2006) ............................................................................................... 15

*Fla. Power & Light Co. v. Lorion,*
    470 U.S. 729 (1985) ............................................................................................. 23

*Ga. Republican Party v. Sec. & Exch. Comm'n,*
    888 F.3d 1198 (11th Cir. 2018) .............................................................................. 9

*Great-West Life & Annuity Ins. Co. v. Knudson,*
    534 U.S. 204 (2002) ............................................................................................. 12

*Health Sys. v. Bear Stearns & Co.,*
    900 F.3d 87 (3d Cir. 2018) ................................................................................... 10

*Heckler v. Chaney,*
    470 U.S. 821 (1985) ............................................................................................. 21

*Hendricks v. Bank of Am., N.A.,*
    408 F.3d 1127 (9th Cir. 2005) .............................................................................. 10

*In re Higgins,*
    2015 WL 1651424 n.4 (D. Neb. Mar. 23, 2015) ...................................................... 9

*Inc. v. Grewal,*
    60 F. Supp. 3d 272 (D. Mass. 2014) ...................................................................... 26

*Inst. of Certified Pracs., Inc. v. Bentsen,*
    874 F. Supp. 1370 (N.D. Ga. 1994) ........................................................................ 9

*Int'l Ass'n of Machinists Loc. Lodge 207 v. Raimondo,*
    18 F.4th 38 (1st Cir. 2021) .................................................................................... 27

*Jackson v. Birmingham Bd. of Educ.,*
    544 U.S. 167 (2005) ............................................................................................. 18

*Keane v. Velarde,*
    2021 WL 4248896 (D. Conn. Sept. 17, 2021) ......................................................... 9

*Lancor v. Lebanon Hous. Auth.,*
   760 F. 2d 361 (1st Cir. 1985) ..................................................................................26

*Landgraf v. USI Film Prods., Inc.,*
   511 U.S. 244 (1994) ....................................................................................14, 15

*Lincoln v. Vigil,*
   508 U.S. 182 (1993) ....................................................................................20, 21

*Maher v. Roe,*
   432 U.S. 464 (1977) ..........................................................................................27

*Martin v. Hadix,*
   527 U.S. 343 (1999) ..........................................................................................15

*Maryland v. King,*
   567 U.S. 1301 (2012) ........................................................................................27

*Massachusetts v. Bowen,*
   487 U.S. 879 (1988) ..........................................................................................12

*Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak,*
   567 U.S. 209 (2012) ..........................................................................................11

*Matos ex rel. Matos v. Clinton Sch. Dist.,*
   367 F.3d 68 (1st Cir. 2004) ..............................................................................23

*Maybelline Co. v. Noxell Corp.,*
   813 F.2d 901 (8th Cir. 1987) ............................................................................10

*Mayweathers v. Newland,*
   314 F.3d 1062 (9th Cir. 2002) ..........................................................................18

*Mazurek v. Armstrong,*
   520 U.S. 968 (1997) ............................................................................................7

*McGee v. Mathis,*
   71 U.S. 143 (1866) ............................................................................................13

*Megapulse, Inc. v. Lewis,*
   672 F.2d 959 (D.C. Cir. 1982) ..........................................................................12

*Mich. Ass'n of Pub. Sch. Acads. v. U.S. Dep't of Educ.,*
   711 F. Supp.3d 686, 2024 WL 455079 (W.D. Mich. Jan. 10, 2024) ..................9

*Miller v. Albright,*
   523 U.S. 420 (1998) ............................................................................................8

*Murthy v. Missouri,*
   603 U.S. 43 (2024) .................................................................................................8

*Narragansett Indian Tribe v. Guilbert,*
   934 F.2d 4 (1st Cir. 1991) ...................................................................................23

*National Institutes of Health v. American Public Health Association,*
   145 S. Ct. 2658 (2025) ....................................................................................12, 19

*Nat'l Fed'n of Indep. Bus. v. Sebelius,*
   567 U.S. 519 (2012) .......................................................................................16, 25

*New York v. United States,*
   505 U.S. 144 (1992) ..............................................................................................16

*Nieves-Marquez v. Puerto Rico,*
   353 F.3d 108 (1st Cir. 2003) .................................................................................7

*Nken v. Holder,*
   556 U.S. 418 (2009) ...........................................................................................7, 26

*Nutrition Distribution, LLC v. Enhanced Athlete, Inc.,*
   2017 WL 5467252 (E.D. Cal. Nov. 14, 2017) .....................................................26

*Pennhurst State Sch. & Hosp. v. Halderman,*
   451 U.S. 1 (1981) .............................................................................................17, 18

*Perez v. Mortg. Bankers Ass'n,*
   575 U.S. 92 (2015) ...............................................................................................22

*Rust v. Sullivan,*
   500 U.S. 173 (1991) .............................................................................................27

*Seafreeze Shoreside, Inc v. U.S. Dep't of Interior,*
   2023 WL 3660689 (D. Mass. May 25, 2023) .......................................................25

*Sierra Club v. Larson,*
   769 F. Supp. 420 (D. Mass. 1991) .......................................................................24

*Sindicato Puertorriqueño de Trabajadores v. Fortuño,*
   699 F.3d 1 (1st Cir. 2012) .....................................................................................7

*South Dakota v. Dole,*
   483 U.S. 203 (1987) .............................................................................................17

*Summers v. Earth Island Inst.,*
   555 U.S. 488 (2009) .............................................................................................25

*Thermalon Indus., Ltd. v. United States,*
  51 Fed. Cl. 464 (2002) ...................................................................................................11

*Tolliver Grp., Inc. v. United States,*
  140 Fed. Cl. 520 (2018) .................................................................................................11

*United States v. Sherwood,*
  312 U.S. 584 (1941) .......................................................................................................10

*Van Wyhe v. Reisch,*
  581 F.3d 639 (8th Cir. 2009) .........................................................................................18

*Weinberger v. Romero-Barcelo,*
  456 U.S. 305 (1982) .......................................................................................................25

*Wilmer Cutler Pickering Hale & Dorr LLP v. Exec. Off. of the President,*
  784 F. Supp. 3d. 127 (D.D.C. 2025) .............................................................................14

*Winter v. Nat. Res. Def. Council, Inc.,*
  555 U.S. 7 (2008) ...........................................................................................7, 23, 24, 26

*Wis. Gas Co. v. FERC,*
  758 F.2d 669 (D.C. Cir. 1985) .......................................................................................25

**STATUTES**

5 U.S.C. § 701(a)(2) ............................................................................................................21

5 U.S.C. § 704 .....................................................................................................................19

5 U.S.C. § 705 .......................................................................................................................6

8 U.S.C. § 1101(a)(15)(T) ...................................................................................................4

8 U.S.C. § 1229a(e)(2) ..........................................................................................................3

18 U.S.C. ch. 77 ....................................................................................................................4

22 U.S.C. § 7105(c)(3)(A) ....................................................................................................4

28 U.S.C. § 530C(a)(4) .......................................................................................................20

28 U.S.C. § 1391(e) ..........................................................................................................8, 9

28 U.S.C. § 1406 ...............................................................................................................6, 7

28 U.S.C. § 1491(a)(1) .......................................................................................................11

34 U.S.C. § 10102(a)(6) .....................................................................................................20

34 U.S.C. § 10442 ..........................................................................................................5, 20

34 U.S.C. § 12511 ..................................................................................................................5

34 U.S.C. § 20101 ..................................................................................................................4

34 U.S.C. § 20102 ...............................................................................................................4, 5

34 U.S.C. § 20103 ..................................................................................................................4

34 U.S.C. § 20111 ..................................................................................................................4

42 U.S.C. § 6010 ..................................................................................................................17

**LEGISLATIVE MATERIALS**

Data Supplied by the U.S. Dep't of Just.,
    Pub. L. No. 98-473, 98 Stat. 1837 (1984) (codified at Title 34, Subtitle II, Ch. 201)............................4

U.S. Statutes at Large,
    Pub. L. No. 90-351, tit. I, 82 Stat. 197, 197–98 (1968) ..........................................................2

Violence Against Women and Department of Justice Reauthorization Act of 2005,
    § 202, Pub. L. No. 109-162, 119 Stat. 2960, 2994-2998 (2005)
    (codified, as amended, at 34 U.S.C. § 12511) ....................................................................5

Violent Crime Control and Law Enforcement Act of 1994,
    Pub. L. No. 103-322, tit. IV, 108 Stat. 1902-1955 (1994)
    (codified, in pertinent part, as amended, at Title 34, Subtitle I, Ch. 101, Subch. XIX) ......................5

**RULES**

Fed. R. Civ. P. 12(b)(3) ..........................................................................................................6

Federal Rule of Civil Procedure 65(c) ..................................................................................27

**REGULATIONS**

2 C.F.R. § 200.211(c)(ii) ..................................................................................................22, 27

2 C.F.R. § 200.300 ..........................................................................................................22, 27

2 C.F.R. § 200.403 ...............................................................................................3, 20, 24, 27

2 C.F.R. § 200.410 ..........................................................................................................3, 20

28 C.F.R. § 94.103(a) ...................................................................................................1, 9, 22

28 C.F.R. § 94.119(a) (2016) ................................................................................................4

Victims of Crime Act Victim Assistance Program,
   81 Fed. Reg. 44515 (July 8, 2016) (to be codified at 28 C.F.R. pt. 94) ....................................................22

Conforming STOP Violence Against Women Formula Grant Program
Regulations to Statutory Change,
   81 Fed. Reg. 85877 (Nov. 29, 2016) (to be codified at 28 C.F.R. pt. 90) ................................................22

## OTHER AUTHORITIES

Grants, U.S. Dep't of Just.,
   https://www.justice.gov/grants.........................................................................................................................2

DOJ Grants Financial Guide, U.S. Dep't of Just. (Sep. 2025),
   https://www.ojp.gov/doj-financial-guide-2024......................................................................3, 4, 8, 21, 22

## INTRODUCTION

The Department of Justice, pursuant to its statutorily delegated authority to administer federal grant awards, has decided not to reimburse the costs of certain legal services for illegal aliens under those awards. DOJ incorporated the so-called legal-services-for-aliens provision into its DOJ Grants Financial Guide, and grantees agree to comply with the terms of that Guide when they accept their awards. But Plaintiffs—twenty States and the District of Columbia—now want this Court to displace DOJ's authority over the federal grant funds it administers in the name of state policy preferences. Indeed, the Plaintiffs demand emergency injunctive relief to force the Government to continue to fund legal services for illegal aliens with federal taxpayer dollars. That request, which would turn federalism on its head, is legally groundless.

As an initial matter, venue in this District is improper because the sole Plaintiff that resides here—Rhode Island—lacks standing. Rhode Island receives federal funds through the Victims of Crime Act's Victim Assistance Program. *See* Decl. of Michael Hogan, Doc. No. 3-20. But the challenged provision does not apply to that program—its regulations specify that eligibility for services is not dependent on immigration status and thus comes within the provision's express exception. *See* 28 C.F.R. § 94.103(a); Grants Guide ch. 3.13. Because venue is improper, this case should be dismissed and the motion for preliminary injunction denied as moot.

Even if the Court could consider the merits of the motion for preliminary injunction, the Court should deny Plaintiffs' request for relief. Plaintiff States seek to facially invalidate the legal-services-for-aliens provision, arguing that it is impermissibly retroactive and fails to provide clear notice in violation of the Spending Clause. They also argue that the provision is arbitrary and capricious and contrary to law in violation of the Administrative Procedure Act ("APA"). But this Court lacks jurisdiction over Plaintiffs' challenge to the application of the provision to previously awarded grants. Those grant agreements are contracts within the meaning of the Tucker Act, and Plaintiffs' challenge, therefore, must be heard in the Court of Federal Claims. Even if this Court had jurisdiction over that challenge, the provision is not impermissibly retroactive—in fact, it is not

1

retroactive at all—because it applies, prospectively, only to costs incurred as of November 14, 2025. And the provision makes clear that States may not charge certain expenses against their federal awards, which is all the Spending Clause requires in terms of clarity. Finally, the provision is neither arbitrary and capricious nor contrary to law. Indeed, the provision—on its face—does not apply to costs whose disallowance would contravene any express requirement of any law.

Beyond the futility of the claims on the merits, Plaintiff States fail to demonstrate imminent irreparable harm to justify an injunction. Their only asserted injuries are vague and unsupported compliance costs, the economic loss of reduced reimbursements under their awards, and highly speculative downstream harm to public safety. None comes close to warranting the extraordinary relief of a preliminary injunction. And the balance of equities and public interest firmly favor the Government's interest in administering federal grant awards in accordance with national policy objectives.

This case should be dismissed for lack of venue and Plaintiffs' request for a preliminary injunction should be denied.

## BACKGROUND

### I.     Statutory and Regulatory Background

#### A.     DOJ's Grant-Making Authority

Congress has authorized DOJ to issue grants to state and local governments to support law enforcement efforts at all levels of government and to assist victims of crime. *See* Pub. L. No. 90-351, tit. I, 82 Stat. 197, 197–98 (1968); *see also* Grants, U.S. Dep't of Just., https://www.justice.gov/grants (last visited Oct. 21, 2025). DOJ administers its various grant programs through three of its component agencies: the Office of Justice Programs ("OJP"), the Office on Violence Against Women ("OVW"), and the Office of Community Oriented Policing Services (the "COPS Office"). *See generally* Decl. of Rachel Johnson ("Johnson Decl.").

2

To facilitate the administration of its grants, DOJ maintains a DOJ Grants Financial Guide. *See* DOJ Grants Financial Guide, U.S. Dep't of Just. (Sep. 2025), https://www.ojp.gov/doj-financial-guide-2024 ("Grants Guide"). The Guide assists award recipients in fulfilling their fiduciary duty to safeguard grant funds and ensure funds are used for the purposes for which they were awarded. *See id.* When grantees accept their awards, they agree to comply with applicable terms of the Guide, including those that may be updated during the course of their awards. *See, e.g.*, Johnson Decl. ¶¶ 9, 10 (stating that all OJP and OVW grant awards include a provision requiring recipients to comply with the DOJ Grants Financial Guide, "including any updated version that may be posted during the period of performance"). The Guide also makes clear that recipients should refer to their particular award terms and conditions to determine the specific requirements that apply to their award. *See id.* ¶ 8.

Allowable costs are those that the agency will reimburse under the award. For costs to be allowable, they must be reasonable, allocable to, and necessary for the performance of the federal award, *see* 2 C.F.R. § 200.403, and comply with the funding statute and agency requirements (including the conditions of the award), *see* Grants Guide Ch. 3.9. Agencies may, in their discretion, determine that certain costs do not meet these requirements and are therefore unallowable, meaning that they will not be reimbursed. *See* 2 C.F.R. § 200.410 ("Payments made for costs *determined to be unallowable by either the awarding Federal agency*, cognizant agency for indirect costs, or pass-through entity must be refunded with interest to the Federal Government.") (emphasis added).

The Grants Guide highlights some of those "unallowable costs," including the one that is the subject of this litigation—Legal Services for Aliens. That provision, which was added to the Guide in September 2025 and will be applied to costs incurred starting on November 14, 2025, provides that:

> [C]osts of providing legal services (that is, professional services of the kind lawfully provided only by individuals licensed to practice law) to any removable alien (*see* 8 U.S.C. § 1229a(e)(2)) or any alien otherwise unlawfully present in the United States are disallowed and may not be charged against the award.

Grants Guide, Ch. 3.13. The provision then specifies that "[c]osts for legal services disallowed under the preceding sentence do not include costs for legal services":

> (1) to obtain protection orders for victims of crime (including associated or related orders (e.g., custody orders), arising from the victimization); (2) that are associated with or relate to actions under 18 U.S.C. ch. 77 (peonage, slavery, and trafficking in persons); (3) to obtain T-visas, U-visas, or "continued presence" immigration status (see, e.g., 8 U.S.C. § 1101(a)(15)(T) & (U); 22 U.S.C. § 7105(c)(3)(A)); or (4) as to which such disallowance would contravene any express requirement of any law, or of any judicial ruling, governing or applicable to the award.

*Id.*

Thus, the challenged provision will bar reimbursement for the cost of certain legal services for illegal aliens incurred starting on November 14, 2025, unless a contrary provision of law or exception applies.

**B.  The Grant Programs at Issue in this Case**

As relevant here, DOJ has long administered grant programs under three statutory schemes.

*First*, the Victims of Crime Act of 1984 ("VOCA") established the Crime Victims Fund within the Treasury, *see* 34 U.S.C. § 20101, and appropriated funds therein to make grants to assist victims of crime. Data Supplied by the U.S. Dep't of Just., Pub. L. No. 98-473, 98 Stat. 1837 (1984) (codified at Title 34, Subtitle II, Ch. 201). It also created the Office for Victims of Crime to administer grants made under the Act. 34 U.S.C. § 20111.

The Office for Victims of Crime administers two formula grant programs pursuant to VOCA: (1) Victim Assistance formula grants, *see* 34 U.S.C. § 20103, and (2) Victim Compensation formula grants, *see* 34 U.S.C. § 20102. Victim Assistance funds may be used for crisis intervention services; emergency food, shelter, and clothing; emergency legal assistance, such as filing for restraining or protective orders, and obtaining emergency custody orders and visitation rights; and other direct services. 28 C.F.R. § 94.119(a) (2016). Victim Assistance funds may also be used for legal assistance services "where reasonable and where the need for such services arises as a direct result of the victimization." *Id.* § 94.119(f). Victim Compensation funds, for their part, support state-run crime

4

victim compensation programs. 34 U.S.C. § 20102. Those programs offer compensation to victims and survivors of victims of criminal violence, including drunk driving and domestic violence, for medical expenses, lost wages, funeral expenses, *id.* § 20102(b)(1), and legal services related to the victimization.

*Next*, the Violence Against Women Act of 1994 ("VAWA") authorized the Attorney General to make grants to assist States, Indian Tribes, and local communities in combatting domestic violence and sexual assault. *See* Violent Crime Control and Law Enforcement Act of 1994, Pub. L. No. 103-322, tit. IV, 108 Stat. 1902-1955 (1994) (codified, in pertinent part, as amended, at Title 34, Subtitle I, Ch. 101, Subch. XIX). Subsequent legislation established OVW to administer grants under VAWA and its reauthorizations. 34 U.S.C. § 10442. VAWA established one relevant formula grant program—the Services, Training, Officers, and Prosecutors ("STOP") Violence Against Women Formula Grant Program, which is awarded to States for a number of purposes, including to develop, enlarge, or strengthen victim services and legal assistance programs for victims of domestic violence, dating violence, sexual assault, and stalking, *see id.* § 10441(b)(5). "Legal assistance" supported by the STOP Program is limited to assistance provided by a licensed attorney (or other types of authorized representatives in certain administrative proceedings and Indian tribal courts) to victims in a range of legal matters arising out of or related to their victimization, *see id.* § 12291(a)(24).[1]

---

[1] Plaintiffs erroneously state in their brief that the Sexual Assault Services Formula Grant Program ("SASP") funds "[v]ictim services", including "legal assistance", *see* Pls.' Mot. for Prelim. Inj. at 7, Doc. No. 3 (citing the STOP Program statute and the VAWA definition of "underserved populations" (34 U.S.C. §§ 10441(b)(5) and 12291(a)(46), respectively)). SASP, established by the 2005 reauthorization of VAWA, *see* Violence Against Women and Department of Justice Reauthorization Act of 2005, § 202, Pub. L. No. 109-162, 119 Stat. 2960, 2994-2998 (2005) (codified, as amended, at 34 U.S.C. § 12511), does not fund "legal services" as defined in the challenged provision, i.e., "professional services of the kind lawfully provided *only by individuals licensed to practice law*" (emphasis added). SASP funds "intervention and related assistance" for victims of sexual assault, which includes only assistance that may be provided in court by those not licensed to practice law, such as victim advocates, who may support or accompany a victim during a court proceeding. *See* 34 U.S.C. § 12511(b)(2)(C) (defining "intervention and related assistance" to include "accompaniment and advocacy through . . . court proceedings"). The terms, "victim services" and "legal assistance", do not appear in the SASP statute, and the examples Plaintiffs cite in their submissions to the Court of SASP-funded "legal services" all constitute services that may lawfully be provided by individuals who are *not* licensed to practice law.

*Finally*, through the Edward Byrne Memorial Justice Assistance Grant ("Byrne JAG") Program, Congress authorized the Attorney General to make grants to States and local governments so that they may provide additional personnel, equipment, training, and other support "for criminal justice" and certain civil justice matters. *See id.* § 10152(a)(1).

## II.    This Litigation

Plaintiff States initiated this lawsuit on October 1, 2025, to challenge the legal-services-for-aliens provision under the Spending Clause and the Administrative Procedure Act. *See* Compl., Doc. No. 1. That same day, Plaintiffs moved for a preliminary injunction, arguing that the challenged provision violates the Spending Clause for two reasons: 1) it is an impermissibly retroactive condition on previously awarded grants and 2) it is unlawfully ambiguous as to all grants. Pls.' Mot. for Prelim. Inj. at 18-22, Doc. No. 3. In their motion, Plaintiffs also argue that the provision is arbitrary and capricious in violation of the APA, and contrary to law as applied to VOCA's Victim Assistance Program and VAWA Programs. *Id.* at 22–28. Plaintiffs seek a preliminary injunction and a stay under 5 U.S.C. § 705, barring Defendants from enforcing or implementing the legal-services-for-aliens provision against the Plaintiff States pending a final ruling on the merits of this case. *Id.* at 34–35.

## STANDARD OF REVIEW

Pursuant to Fed. R. Civ. P. 12(b)(3) and 28 U.S.C. § 1406, when a lawsuit is filed in an improper venue, the lawsuit must be dismissed or transferred to a district where it could have been brought. The plaintiff bears the burden of establishing that its chosen venue is proper. *See Cordis Corp. v. Cardiac Pacemakers*, 599 F.2d 1085, 1086 (1st Cir. 1979) (noting "that there is ample authority placing the burden of [proof] on the plaintiff once a defendant has challenged venue by filing a motion to dismiss based on the lack thereof")). When venue is found to be improper, 28 U.S.C. § 1406 provides that the Court "shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a).

A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008) (citing *Mazurek v. Armstrong,* 520 U.S. 968, 972 (1997) (per curiam)). A "plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Id.* at 20. The third and fourth factors "merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009). The plaintiff bears the burden of demonstrating those requirements. *Nieves-Marquez v. Puerto Rico*, 353 F.3d 108, 120 (1st Cir. 2003).

"To demonstrate likelihood of success on the merits, plaintiffs must show 'more than mere possibility' of success—rather, they must establish a 'strong likelihood' that they will ultimately prevail." *Sindicato Puertorriqueño de Trabajadores v. Fortuño*, 699 F.3d 1, 10 (1st Cir. 2012) (per curiam) (citation omitted). The Supreme Court has also instructed that a preliminary injunction cannot issue on the basis of speculative or possible injury. Rather, the moving party must establish that irreparable harm is "*likely* in the absence of an injunction." *Winter*, 555 U.S. at 22.

## ARGUMENT

At the outset, venue is improper in this District because Rhode Island, the sole Plaintiff that resides here, lacks standing. On this ground alone, the Court should dismiss this case and deny the motion for preliminary injunction as moot. Plaintiffs' motion also fails on the merits. This Court lacks jurisdiction over Plaintiffs' challenge to the application of the legal-services-for-aliens provision to previously awarded grants. Whether plaintiffs are entitled to seek reimbursement for the costs of legal services under the terms of their grant agreements is a contractual matter that, by law, is committed to the jurisdiction of the Court of Federal Claims. Even if this Court had jurisdiction over that challenge, the provision is not impermissibly retroactive in any event. And the challenged provision

violates neither the Spending Clause nor the APA. Finally, Plaintiffs have failed to establish irreparable harm, and the balance of equities and public interest favor the Federal Government.

## I.   Venue is Improper in this District Because No Plaintiff with Standing Resides Here

Venue is improper in this District because the lone Plaintiff that resides here—Rhode Island— lacks standing. *See Miller v. Albright*, 523 U.S. 420, 427 (1998) (explaining that the district court transferred the case because venue was improper after the only Plaintiff that resided in that district was dismissed for lack of standing (citing 28 U.S.C. § 1391(e))); *Dayton Area Chamber of Com. v. Kennedy*, 147 F.4th 626, 635 (6th Cir. 2025) (transferring the case for improper venue where the only plaintiffs that resided in the district lacked standing).

A "plaintiff bears the burden of establishing standing as of the time [it] brought the lawsuit and maintaining it thereafter." *Murthy v. Missouri*, 603 U.S. 43, 58 (2024) (quoting *Carney v. Adams*, 592 U.S. 53, 59 (2020)). "At the preliminary injunction stage," that means "the plaintiff must make a 'clear showing' that [it] is 'likely' to establish each element of standing": "that [it] [1] has suffered, or will suffer, an injury that is 'concrete, particularized, and actual or imminent; [2] fairly traceable to the challenged action; and [3] redressable by a favorable ruling." *Id.* at 57 (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013)).

Here, Rhode Island has failed to make this showing because, as averred in its declaration, its only open awards are through VOCA's Victim Assistance Program. *See* Decl. of Michael Hogan ¶¶ 3– 10, 13, Doc. No. 3-20 (Rhode Island). But as explained below, *see infra* Section II.C., the legal-services- for-aliens provision does not apply to VOCA's Victim Assistance Program: the provision does not apply to costs "as to which such disallowance would contravene any express requirement of any law," *see* Grants Guide ch. 3.13, and regulations for the Victim Assistance Program state that "[v]ictim eligibility under this program for direct services is not dependent on the victim's immigration status." 28 C.F.R. § 94.103(a); *id.* § 94.116. Accordingly, Rhode Island is not, and could not be, injured by the legal-services-for-aliens provision, and it lacks standing to challenge the provision in this litigation.

Because Rhode Island lacks standing, venue is improper in this District. In a civil action in which the defendant is the Federal Government, venue is proper "in any judicial district in which (A) a defendant in the action resides, (B) a substantial part of the events or omissions giving rise to the claim occurred, or (C) the plaintiff resides if no real property is involved in the action." 28 U.S.C. § 1391(e)(1). Given that none of the federal defendants here "resides" in Rhode Island and that none of the "events . . . giving rise" to the implementation of the challenged provision took place in the State, *id.*, the only possible basis for venue in the District of Rhode Island is the fact that Rhode Island is one of the Plaintiff States. Compl. ¶ 15. As explained above, however, Rhode Island lacks standing, which requires that it be dismissed from the case. *See, e.g.*, *Associated Gen. Contractors of Am., Inc. v. Fed. Acquisition Regul. Council*, 720 F. Supp. 3d 461, 472 (W.D. La. Mar. 12, 2024) ("[T]he Court concludes that the Individual Plaintiffs do not have standing under Article III . . . , and they will be dismissed from this lawsuit without prejudice."). The remaining Plaintiff States and the District of Columbia obviously do not reside in the District of Rhode Island. And as various federal courts have held, when the plaintiff that serves as the sole basis for venue in a particular judicial district lacks standing, venue in turn is improper.[2]

The lack of venue means that this Court lacks authority to grant preliminary relief. *See Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 56 (2013) ("[If] venue is improper, . . . the case must be dismissed or transferred under § 1406(a)."); *see also Hendricks v. Bank of*

---

[2] *See, e.g.*, *Ga. Republican Party v. Sec. & Exch. Comm'n*, 888 F.3d 1198, 1205 (11th Cir. 2018); *Mich. Ass'n of Pub. Sch. Acads. v. U.S. Dep't of Educ.*, 711 F. Supp.3d 686, 2024 WL 455079, at *5 (W.D. Mich. Jan. 10, 2024) (finding that "the Western District of Michigan is no longer the venue best suited to adjudicate this matter" where the only Michigan plaintiff "lack[ed] standing" and the remaining plaintiffs were residents of Ohio and West Virginia); *Keane v. Velarde*, 2021 WL 4248896, at *5 (D. Conn. Sept. 17, 2021) (transferring the case because the "only party residing in Connecticut" was dismissed for lack of standing); *Inst. of Certified Pracs., Inc. v. Bentsen*, 874 F. Supp. 1370, 1372 (N.D. Ga. 1994) ("Having found that the Institute lacks standing to bring this action and has failed to state a claim upon which relief can be granted, plaintiff cannot manufacture venue by adding the Institute as a party."); *A.J. Taft Coal Co. v. Barnhart*, 291 F. Supp.2d 1290, 1304 (N.D. Ala. 2003) ("Venue is proper in this court because at least one Alabama plaintiff had standing."); *see also In re Higgins*, 2015 WL 1651424, at *2 n.4 (D. Neb. Mar. 23, 2015) (noting that because the plaintiff "lack[ed] standing," the court "either lack[ed] jurisdiction or venue").

9

*Am., N.A.*, 408 F.3d 1127, 1135 (9th Cir. 2005) (noting that a venue defense "bear[s] on [a] district court's power to issue [an] injunction"); *Reading Health Sys. v. Bear Stearns & Co.*, 900 F.3d 87, 95 (3d Cir. 2018) ("We agree that threshold disputes over venue and jurisdiction should be resolved before merits disputes."); *Maybelline Co. v. Noxell Corp.*, 813 F.2d 901, 907 (8th Cir. 1987) (reversing a preliminary injunction because the "district court erred in failing to grant . . . [the] motion to dismiss or transfer for improper venue").

Thus, because no plaintiff with standing resides in this district, venue is improper. Accordingly, the Court should dismiss this case and deny Plaintiffs' motion for preliminary injunction.

## II.    Plaintiffs are Unlikely to Succeed on the Merits

### A.    This Court Lacks Jurisdiction Over Plaintiffs' Claims as to Previously Awarded Grants

This Court lacks jurisdiction over Plaintiffs' challenge to the application of the legal-services-for-aliens provision to previously awarded grants. That challenge arises from Plaintiffs' grant agreements with the Federal Government, which are contracts within the meaning of the Tucker Act, so it must be heard in the Court of Federal Claims.

The Federal Government and its agencies cannot be sued absent a waiver of sovereign immunity. *See FDIC v. Meyer*, 510 U.S. 471, 475 (1994). Sovereign immunity is jurisdictional: "the terms of [the United States'] consent to be sued in any court define that court's jurisdiction." *Id.* (quoting *United States v. Sherwood*, 312 U.S. 584, 586 (1941)). The APA provides "a limited waiver of sovereign immunity for claims against the United States" that seek "'relief other than money damages.'" *Crowley Gov't Servs., Inc. v. GSA*, 38 F.4th 1099, 1105 (D.C. Cir. 2022) (quoting 5 U.S.C. § 702). But section 702's waiver of immunity facially "does not apply 'if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought.'" *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 567 U.S. 209, 215 (2012) (quoting 5 U.S.C. § 702).

When a party demands continued payment of funds it believes the Federal Government is obligated to pay under a contract, the relevant "statute that grants consent to suit," *id.*, is the Tucker

Act. The Tucker Act vests the Court of Federal Claims with exclusive "jurisdiction to render judgment upon any claim against the United States founded . . . upon any express or implied contract with the United States" for amounts over $10,000. 28 U.S.C. § 1491(a)(1).

As the D.C. Circuit has explained, "the Tucker Act impliedly forbids" bringing "contract actions" against "the government in a federal district court." *Albrecht v. Comm. on Emp. Benefits of the Fed. Rsrv. Emp. Benefits Sys.*, 357 F.3d 62, 67–68 (D.C. Cir. 2004) (citation omitted). This prohibition extends to claims founded on grants that are implemented through "contracts to set the terms of and receive commitments from recipients." *Boaz Hous. Auth. v. United States*, 994 F.3d 1359, 1368 (Fed. Cir. 2021). The proper recourse for asserted violations of such grant agreements is a "suit in the Claims Court for damages relating to [the] alleged breach." *Id.*; *see, e.g.*, *Tolliver Grp., Inc. v. United States*, 140 Fed. Cl. 520, 522 (2018) (addressing whether certain types of legal fees are an allowable cost that may be reimbursed under contract with the government); *Thermalon Indus., Ltd. v. United States*, 51 Fed. Cl. 464, 470 (2002) (addressing dispute over allowable costs based on grant agreement between United States and scientific research company, including allegations that agency failed "comply with the provisions of the Grant Policy Manual").

As the First Circuit has long recognized, a plaintiff's own characterization of its claims does not control. If "the essence of the claim is in contract," a plaintiff "cannot 'by the mystique of a different form of complaint' make it otherwise." *Am. Sci. & Eng'g v. Califano*, 571 F.2d 58, 63 (1st Cir. 1978). In particular, "[a] plaintiff cannot transform a claim for damages into an equitable action by asking for an injunction that orders the payment of money." *Burgos v. Milton*, 709 F.2d 1, 3 (1st Cir. 1983) (citation omitted); *see Diaz v. Johnson*, No. 19-1501, 2020 WL 9437887, at *2 (1st Cir. Nov. 12, 2020) ("Because it seems clear that the injury [the plaintiff] is alleging is pecuniary in nature and at bottom what he seeks is monetary relief based on what he perceived as a contract . . . [he] cannot manufacture an APA claim by asking the court to declare . . . an arbitrary or capricious act."). Other courts of appeals, applying these same principles, have looked at both "the course of the rights upon

11

which the plaintiff bases its claims" and "the type of relief sought (or appropriate)." *Megapulse, Inc. v. Lewis*, 672 F.2d 959, 968 (D.C. Cir. 1982); *see also, e.g., Cohen v. Postal Holdings, LLC*, 873 F.3d 394, 403 (2d Cir. 2017) (applying *Megapulse* test).

    The Supreme Court recently confirmed the Tucker Act's substantial preclusive scope in *Department of Education v. California*, 145 S. Ct. 966, 968 (2025) (per curiam) and *National Institutes of Health v. American Public Health Association*, 145 S. Ct. 2658 (2025) ("*NIH*"). In those cases, the Court stayed district courts' orders vacating the Government's termination of grants after concluding that the Government was likely to show that the district court "lacked jurisdiction to order the payment of money under the APA." *Dep't of Educ.*, 145 S. Ct. at 968. And it emphasized that "the APA's limited waiver of immunity does not extend to orders 'to enforce a contractual obligation to pay money[.]'" *Id.* (quoting *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 212 (2002)).

    Here, too, for much the same reasons given by the Supreme Court in *Department of Education* and *NIH*, this Court lacks jurisdiction over Plaintiffs' challenge to the application of the provision to previously awarded grants.[3] Despite Plaintiffs' framing of their claims as constitutional and APA claims, the "essence" of those claims is "in contract." *Am. Sci. & Eng'g*, 571 F.2d at 63. DOJ grant agreements are contracts within the meaning of the Tucker Act: they are written arrangements, agreed to by both DOJ and the recipient State, that set forth the maximum amount that DOJ agrees to pay for the project specified in the grant agreement; the performance period for the project; and the applicable terms and conditions of the grant agreement. *See, e.g., McGee v. Mathis*, 71 U.S. 143, 154 (1866) (concluding that a grant by the United States to the State upon conditions, and the acceptance of the grant by the States, constituted a contract); *Bennett v. New Jersey*, 470 U.S. 632, 638 (1985) (noting that "many . . . federal grant programs" are "much in the nature of a contract") (citation omitted);

---

[3] Nor does *Massachusetts v. Bowen*, 487 U.S. 879 (1988), require a different result. Critically, although *Bowen* recognized the authority of district courts in appropriate cases to provide equitable relief that may eventually result in the payment of money, *Bowen* did not involve contracts or grant agreements with the Government. Indeed, the Supreme Court expressly cited *Bowen* in its *Department of Education* stay decision but saw no conflict between *Bowen* and its conclusion that the Government was likely to succeed in showing that the district court lacked jurisdiction. *See Dep't of Educ.*, 145 S. Ct. at 968.

*Columbus Reg'l Hosp. v. United States*, 990 F.3d 1330, 1338 (Fed. Cir. 2021) (generally "treating federal grant agreements as contracts when the standard conditions for a contract are satisfied").

At bottom, Plaintiffs allege that DOJ is failing to abide by its contractual obligations to reimburse the States for costs they incur to provide legal services to illegal aliens. *See* Doc. No. 3 at 19 (arguing that the modification of their grant agreements amounts to a post-acceptance condition on "awarded grants, often years after they were applied for and granted, and years after States made subgrantee awards based on the terms of the awards at the time they were made"). That claim sounds in contract and ultimately seeks money pursuant to the terms of the underlying grant agreement. Notably, the challenged provision is a term expressly incorporated into the grant agreements themselves. And the continued reimbursement of legal services for aliens, far from being merely incidental to or "hint[ed] at" by Plaintiffs' request for relief, is the entire object of Plaintiffs' suit. *Crowley*, 38 F.4th at 1112. In other words, Plaintiffs seek specific performance of the grant agreements as they previously existed—a prototypical contract remedy. *See* Restatement (Second) of Contracts § 357 cmt. a "(An order of specific performance . . . orders a party to render the performance that he promised."). But that remedy is not available in a contract claim against the Federal Government: a plaintiff's remedy is damages for any underpayment, not an injunction to continue payments. *See Coggeshall Dev. Corp. v. Diamond*, 884 F.2d 1, 3 (1st Cir. 1989) ("Federal courts do not have the power to order specific performance by the United States of its alleged contractual obligations."); *Berman v. United States*, 264 F.3d 16, 21 (1st Cir. 2001) (similar).

Thus, because Plaintiffs' claims with respect to existing grants are contractual, and they "cannot 'by the mystique of a different form of complaint' [be] otherwise," *Am. Sci. & Eng'g*, 571 F.2d at 63, this Court lacks jurisdiction over those claims.

**B.      Plaintiffs' Spending Clause Challenge Fails**

As an initial matter, the Spending Clause does not apply here at all. That Clause is a limitation on Congress' power to legislate; it has no application to Executive Branch decisions about how to expend funds Congress has appropriated for the Executive Branch to administer. *See Bd. of Educ. for Silver Consol. Sch. v. McMahon*, --- F. Supp. 3d. ---, 2025 WL 2017177, at *10 (D.N.M. July 18, 2025) ("[T]he Spending Clause is only implicated 'when Congress imposes a spending or funding condition.' And without alleging congressional action, Plaintiff 'cannot state a claim under the Spending Clause.'" (quoting *Wilmer Cutler Pickering Hale & Dorr LLP v. Exec. Off. of the President*, 784 F. Supp. 3d. 127, 162 (D.D.C. 2025))).

Even if the Spending Clause did apply to Executive Branch spending decisions, the challenge would still fail because the legal-services-for-aliens provision is neither retroactive as to previously awarded grants nor unclear.

**1.      The Provision is Not Retroactive as Applied to Previously Awarded Grants**

Even if this Court had jurisdiction over Plaintiffs' challenge to the provision's application to previously awarded grants, Plaintiffs are wrong that the provision is retroactive. *See* Doc. No. 3 at 19–20.

Because "[r]etroactivity is not favored in the law," neither statutes nor agency regulations are "construed to have retroactive effect unless their language requires this result." *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988). But not all changes that bear upon existing legal obligations are retroactive. An enactment "does not operate 'retrospectively' merely because it is applied in a case arising from conduct antedating the statute's enactment, or upsets expectations based in prior law." *Landgraf v. USI Film Prods., Inc.*, 511 U.S. 244, 269 (1994) (citation omitted). Rather, "the court must ask whether the new provision attaches new legal consequences to *events completed* before its enactment." *Id.* at 269–70 (emphasis added). A consequence is not "retroactive" unless it "affect[s]

14

substantive rights, liabilities, or duties on the basis of conduct arising before its enactment." *Fernandez-Vargas v. Gonzales*, 548 U.S. 30, 37 (2006) (citation modified).

The Supreme Court's decision in *Martin v. Hadix*, 527 U.S. 343 (1999), provides a useful application of these principles. There, Congress had enacted a statute (the Prison Litigation Reform Act) that placed a new cap "on the fees that may be awarded to attorneys who litigate prisoner lawsuits." *Id.* at 347. Specifically at issue was how the fee cap "applie[d] to cases that were [already] pending" on the statute's effective date in April 1996. *Id.* The Court concluded that, as to fees incurred prior to the statutory effective date, application of the fee cap would be retroactive because it would "attach new legal consequences to completed conduct," specifically, to "work performed before the [statute's] effective date" and undertaken "in reasonable reliance on th[e] [prior] fee schedule." *Id.* at 358. By contrast, as to fees incurred for work performed by attorneys in pending cases after the statutory effective date, no such retroactivity problem existed. That is because "[f]rom that point forward," the "plaintiffs' attorneys were on notice that their hourly rate had been adjusted" and they could conform their conduct accordingly. *Id.* at 360. That was true even though the attorneys had decided to file suit, and thus assume the duty of representation for ongoing cases, before the statute's effective date. *See id.* at 360–61.

Under those principles, the legal-services-for-aliens provision is prospective in application. It applies only to expenses incurred starting November 14, 2025—not to services rendered before that date. Here, as in *Martin v. Hadix*, there is "no manifest injustice" in informing States with taxpayer-funded DOJ grants that, going forward, they will not be reimbursed for certain legal services rendered to illegal aliens. States are on notice of the adjustment and can conform their conduct accordingly. *See* 527 U.S. at 360.

The governing regulatory regime confirms this result. DOJ and other agencies routinely announce new policies governing federal grant awards and apply them to existing grant agreements. Indeed, States expressly agree to comply with such requirements when accepting their awards, and

those awards put them on notice that the terms of the Guide may change. *See, e.g.*, Johnson Decl. ¶¶ 9, 10 (stating that all OJP and OVW grant awards contain a provision requiring recipients to comply with the DOJ Grants Financial Guide, "including any updated version that may be posted during the period of performance"). Plaintiff States may well disagree about whether the legal-services-for-aliens provision reflects sound policy, but they cannot dispute that this term is now part of their grant agreements and sets forth the type of legal services costs that will be reimbursed going forward starting on November 14.

For those reasons, Plaintiffs' claim that the provision is retroactive lacks merit.

## 2. The Provision is Not Unclear in Violation of the Spending Clause

As explained above, the legal-services-for-aliens provision does not implicate the Spending Clause at all. But even if the Spending Clause did apply to it, the provision still would not fall within the scope of activity susceptible to a Spending Clause challenge because it does not condition the States' receipt of funds on their adopting favored policies—sometimes known as "leveraging"—rather, it is a direct restriction on the use of federal funds themselves. The Supreme Court made this distinction in *Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519, 580 (2012) ("*NFIB*"). In that case, it explained that Congress's authority to condition the States' receipt of funds on their compliance with restrictions on the use of those funds has been upheld because that is how Congress ensures that the funds are spent according to its view of the "general Welfare." *Id.* Congress also may impose conditions that "take the form of threats to terminate other significant independent grants, [which] are properly viewed as a means of pressuring the States to accept policy changes," and those conditions are subject to additional considerations. *Id.* Congress does the latter when it attaches conditions to federal funds to influence a State's legislative choice. *See, e.g.*, *New York v. United States*, 505 U.S. 144, 167 (1992); *South Dakota v. Dole*, 483 U.S. 203, 205–08 (1987) (conditioning the receipt of federal highway funds on state adoption of a minimum drinking age of twenty-one).

Here, the Federal Government has done the former in deciding not to reimburse certain expenses with federal taxpayer dollars, regardless of whether States continue to incur those expenses and pay for them with their own money or stop incurring them altogether. The Spending Clause does not require the Federal Government to reimburse expenses incurred for activities that do not align with its policy objectives.

Even on its own terms, Plaintiffs' argument that the challenged provision fails to provide clear notice fails. Doc. No. 3 at 20–22. Plaintiffs claim that States and subgrantees have no way to determine what services are at issue, who is excluded from those services, and what obligations state agencies are required to undertake to identify which persons to exclude. But Plaintiffs' arguments misunderstand the nature of the constitutional inquiry.

To comply with the clear notice requirement of Spending Clause jurisprudence, Congress must only make clear that acceptance of federal funds obligates States to comply with a condition. *Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1, 18 (1981). In *Pennhurst*—the origin of the Spending Clause clear notice requirement—the Supreme Court held that "if Congress intends to impose a condition on the grant of federal moneys, it must do so unambiguously." *Id.* at 17. There, the statute provided money to States and contained a "bill of rights" provision specifying that mentally disabled citizens "have a right to appropriate treatment, services, and habilitation for such disabilities" to be provided "in the setting that is least restrictive of the person's personal liberty." *Id.* at 13 (quoting 42 U.S.C. § 6010). The Court asked whether, through that language, Congress imposed an obligation on the States or "spoke merely in precatory terms," *id.* at 18. It held that Congress had done the latter after finding that the statements "represent general statements of federal policy, not newly created legal duties" and "in no way suggests that the grant of federal funds is 'conditioned' on a State's funding the rights described therein." *Id.* at 23. The *Pennhurst* Court then explicitly recognized that a State's obligations under a Spending Clause program may be "largely indeterminate," so long as Congress

gives "clear notice to the States that they, by accepting funds under the Act, would indeed be obligated to comply with" the condition. *Id.* at 24–25.

Numerous Spending Clause cases all confirm that States make an "informed choice" when the Federal Government simply makes clear that acceptance of federal money obligates the States to comply with a condition. *Id.* at 25. The Supreme Court itself has repeatedly affirmed that "there [i]s sufficient notice under *Pennhurst* where a statute ma[kes] clear that some conditions [a]re placed on the receipt of federal funds." *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 183 (2005); *Davis ex rel. Lashonda D. v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 650 (1999). And the courts of appeals have done the same, holding that the Spending Clause is satisfied where a "statute's *intention to impose a condition* is expressed clearly," even though the operation of a funding condition "is perhaps unpredictable." *Mayweathers v. Newland*, 314 F.3d 1062, 1067 (9th Cir. 2002); *Cutter v. Wilkinson*, 423 F.3d 579, 586 (6th Cir. 2005) ("Nothing more is required under *Pennhurst*, which held that Congress need provide no more than 'clear notice' to the states that funding is conditioned upon compliance with certain standards."); *Charles v. Verhagen*, 348 F.3d 601, 607–08 (7th Cir. 2003) ("[T]he exact nature of the conditions may be 'largely indeterminate,' provided that the existence of the conditions is clear . . . ."); *Benning v. Georgia*, 391 F.3d 1299, 1307 (11th Cir. 2004) ("The federal law in *Pennhurst* was unclear as to whether the [S]tates incurred any obligations at all by accepting federal funds, but [the statute at issue] is clear that [S]tates incur an obligation when they accept federal funds, even if the method for compliance is left to the [S]tates."); *Van Wyhe v. Reisch*, 581 F.3d 639, 650–51 (8th Cir. 2009) ("[S]etting forth every conceivable variation in the statute is neither feasible nor required."). Congress must only "make the existence of the condition itself—in exchange for the receipt of federal funds—explicitly obvious." *Mayweathers*, 314 F.3d at 1067.

Here, there is no doubt that grantees must comply with the terms of the Grants Guide, including with the legal-services-for-aliens provision. The provision in turn makes clear that grantees

cannot charge costs of certain legal services for illegal aliens against their awards, and that provision operates prospectively. The Spending Clause demands no more.

## C.    The Challenged Provision Does Not Violate the APA

Despite Plaintiffs' arguments to the contrary, *see* Doc. No. 3 at 22–28, the challenged provision does not violate the APA for several reasons. First, with respect to future grant awards, the challenged provision does not constitute final agency action. *See* 5 U.S.C. § 704. Second, the agency's decision to disallow certain costs under its grant awards, absent an applicable statute cabining the agency's discretion, is committed to agency discretion by law. Third, the provision is not contrary to law because it facially does not apply to costs as to which such disallowance would contravene any express requirement of any law. And finally, the provision is not arbitrary and capricious.

**1.**    The APA allows review only of "final agency action for which there is no other adequate remedy in a court[.]" *See* 5 U.S.C. § 704.[4] Agency action is final only if two conditions are met: (1) the agency action marks "the 'consummation' of the agency's decision-making process," and (2) the "action must be one by which 'rights or obligations have been determined,' or from which 'legal consequences will flow.'" *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997) (citations omitted). *Both* conditions must be satisfied for agency action to be considered "final" under the APA. *Id.* at 175.

Here, with respect to grants that have not been awarded yet, the second condition is lacking. Until a grant is applied for, awarded, and executed, the provision as it exists in the DOJ Grants Financial Guide, unconnected to a specific grant or party, does not create any rights or obligations, nor does it have legal consequences. It is the incorporation of the term into the grant agreement that gives the provision legal effect. Thus, until that happens, there is no final agency action, and Plaintiffs cannot succeed on their APA claim. *See NIH*, 145 S. Ct. at 2662 (Barrett, J., concurring) (stating that it "is not obvious, for instance, that NIH's guidance is final agency action").

---

[4] As discussed above, challenges to the provision's application to previously awarded grants must be brought in the Court of Federal Claims. *See* Section II.A, *supra*. Therefore, since there is an adequate remedy in a court with respect to that challenge, review under the APA is not permitted. *See* 5 U.S.C. § 704.

2.    Even if there were final agency action, the APA challenge would fail on the merits. In general, agencies have broad discretion in administering grant awards. *Cf. Lincoln v. Vigil*, 508 U.S. 182, 192 (1993). That is particularly true here. *See* 28 U.S.C. § 530C(a)(4) ("Except to the extent provided otherwise by law, the activities of the Department of Justice . . . may, *in the reasonable discretion of the Attorney General*, be carried out through any means, including—through contracts, grants, or cooperative agreements with non-Federal parties[.]") (emphasis added); 34 U.S.C. § 10102(a)(6) (providing OJP with express authority to "exercise such other powers and functions as may be vested in [its] Assistant Attorney General pursuant to [34 U.S.C. ch. 101] or by delegation of the Attorney General, including placing special conditions on all grants, and determining priority purposes for formula grants"); 34 U.S.C. § 10442(b)–(c) (providing the OVW Director with "final authority over all . . . grants awarded by the Office" and the Office, under the general authority of the Attorney General, with "sole jurisdiction over all duties and functions described in section 10444", which in turn include "the award and termination of grants"); *id.* § 10446(e)(3) (providing that, in disbursing STOP grants, the Attorney General may "impose reasonable conditions on grant awards to ensure that the States meet statutory, regulatory, and other program requirements"); *see also* 2 C.F.R. § 200.403 (providing that "[e]xcept where otherwise authorized by statute, costs must . . . be necessary and reasonable for the performance of the Federal award" to be allowable); *id.* § 200.410 ("Payments made for costs *determined to be unallowable by either the awarding Federal agency*, cognizant agency for indirect costs, or pass-through entity must be refunded with interest to the Federal Government." (emphasis added)). And agencies have a duty to administer grants in a way that is consistent with national policy requirements. *See id.* § 200.300; *id.* § 200.211(c)(ii).

As the Supreme Court has acknowledged, "Congress may always circumscribe agency discretion to allocate resources by putting restrictions in the operative statutes." *Id.* But so long as Congress has not done so, the APA "gives the courts no leave to intrude" via arbitrary-and-capricious review. *Vigil*, 508 U.S. at 193; *see also City of New York v. Shalala*, 34 F.3d 1161, 1167 (2d Cir. 1994)

(upholding HHS's decision to disallow funds under the Head Start Program "[b]ecause of HHS's broad discretion in this area, and the fact that Congress did not speak to the issues under review" and concluding that "the City's argument that HHS has acted in excess of its statutory authority is without merit"). Here, by its own terms, the legal-services-for-aliens provision applies in the absence of "any express requirement of any law, or of any judicial ruling, governing or applicable to the award." Grants Guide, Ch. 3.13. Without such standards for the Court to apply, the agency's action is "committed to agency discretion by law[.]" 5 U.S.C. § 701(a)(2); *see also Heckler v. Chaney*, 470 U.S. 821, 834–35 (1985).

Further, the decision to reimburse some types of legal services and not others is a quintessential policy choice committed to the agency's discretion. There are no standards "against which to judge the agency's exercise of discretion" in choosing how best spend money for legal services costs. *Heckler*, 470 U.S at 830. Accordingly, DOJ has discretion to "meet its statutory responsibilities in what it sees as the most effective or desirable way." *Vigil*, 508 U.S. at 192 (stating that agencies must have "flexibility" to make "necessary adjustments for 'unforeseen developments' and 'changing requirements'" when deciding how to spend appropriations). As *Vigil* made clear, an agency's "allocation of funds" to various programs and priorities "requires 'a complicated balance of a number of factors,'" including whether the agency's "'resources are best spent' on one program or another" and "whether a particular program 'best fits the agency's overall policies.'" *Id.* at 193 (quoting *Heckler*, 470 U.S. at 831). Here, any decisions regarding how much funding to allocate to legal services reimbursement, or whether to fund only a portion of such reimbursements, are committed entirely to the agency's discretion and therefore unreviewable under § 701(a)(2) of the APA.

**3.** Because the legal-services-for-aliens provision applies in the absence of "any express requirement of any law, or of any judicial ruling, governing or applicable to the award," Grants Guide, Ch. 3.13, it is not contrary to law. Plaintiffs argue that the challenged provision is contrary to law as applied to VOCA's Victim Assistance Program and VAWA Programs because it conflicts with several provisions of the VAWA statute and regulations applicable to both VAWA and VOCA Victim

Assistance grants. *See* Doc. No. 3 at 27–28. The relevant regulations were adopted after notice-and-comment rulemaking. *See* Victims of Crime Act Victim Assistance Program, 81 Fed. Reg. 44515 (July 8, 2016) (to be codified at 28 C.F.R. pt. 94) (VOCA Victim Assistance grants); Conforming STOP Violence Against Women Formula Grant Program Regulations to Statutory Change, 81 Fed. Reg. 85877 (Nov. 29, 2016) (to be codified at 28 C.F.R. pt. 90) (OVW grants). Those regulations provide that "[v]ictim eligibility under this program for direct services is not dependent on the victim's immigration status." 28 C.F.R. §§ 94.103(a), 94.116 (VOCA Victim Assistance); *id.* § 90.4(c) (VAWA). But the legal-services-for-aliens provision does not apply to costs "as to which such disallowance would contravene any express requirement of any law[.]" *See* Grants Guide ch. 3.13. Since agency regulations issued after notice and comment have the force of law, applying the challenged provision to VOCA's Victim Assistance Program and VAWA Programs would contravene an express requirement of law. *See Perez v. Mortg. Bankers Ass'n*, 575 U.S. 92, 96 (2015) ("Rules issued through the notice-and-comment process are often referred to as 'legislative rules' because they have the 'force and effect of law.'" (citation omitted)). Consequently, and by its own express terms, the legal-services-for-aliens provision does not apply to VOCA's Victim Assistance Program or VAWA Programs.[5] The provision is therefore not contrary to—but facially consistent with—law.[6]

    **4.**    Finally, it is not arbitrary and capricious for DOJ to decline to reimburse a small subset of expenses under its grant awards that are inconsistent with its policy objectives. *See* 2 C.F.R. § 200.300; 2 C.F.R. § 200.211(c)(ii). DOJ has no obligation to provide additional explanation for the

---

[5] Because the regulations suffice to dispose of Plaintiffs' contrary-to-law claim, Defendants do not address Plaintiffs' allegation that the challenged provision would also be contrary to the VAWA statute if applied to VAWA programs.

[6] Because the following States' declarations address only grants to which the provision does *not* apply (as with Rhode Island), they, too, lack standing and must be dismissed from this suit: Arizona, *see* Decl. of Deston Coleman, Doc. No. 3-2; California, *see* Decl. of Ulrice Hammett, Doc. No. 3-3; Colorado, *see* Decl. of Matthew Lunn, Doc. No. 3-4; Delaware, *see* Decl. of Christian Kervick, Doc. No. 3-6; Maine, *see* Decls. of Derek Gorneau & Bobbi Johnson, Doc. Nos. 3-9 & 3-10; New Mexico, *see* Decl. of Francisco Zubia, Doc. No. 3-16; Wisconsin, *see* Decl. of Shira Phelps, Doc. No. 3-23; and Nevada, *see* Decl. of Jessica Hoban, Doc. No. 3-26.

types of expenses it chooses to reimburse. Agencies have not typically been compelled to provide a more extensive explanation when setting funding priorities. Rather, an agency's determination must be upheld if its "path may reasonably be discerned." *F.C.C. v. Fox Television Stations, Inc.*, 556 U.S. 502, 513–14 (2009) (citation omitted). Here, the rationale for the provision is self-evident on its face, reflecting DOJ's policy choice not to fund legal services for removable aliens or aliens otherwise unlawfully present in the United States, other than under certain circumstances.

Even if the Court were to find a failure to comply with the APA, the appropriate remedy would be to remand to the agency for further consideration or explanation. If that were the relief Plaintiffs would theoretically be entitled to, it would not be appropriate to grant the broader relief of excising the challenged provision from the Grants Guide at this preliminary stage. *See Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985) ("[T]he proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation"); *Dist. Hosp. Partners, L.P. v. Burwell*, 786 F.3d 46, 60 (D.C. Cir. 2015) ("[B]edrock principles of administrative law preclude us from declaring definitively that the Secretary's decision was arbitrary and capricious without first affording her an opportunity to articulate, if possible, a better explanation" (citation modified)).

## III.    Plaintiffs Fail to Establish Irreparable Harm

Plaintiffs have also failed to demonstrate irreparable harm. A plaintiff must show that a preliminary injunction is needed "to prevent a real threat of [irreparable] harm." *See Matos ex rel. Matos v. Clinton Sch. Dist.*, 367 F.3d 68, 73 (1st Cir. 2004). "A finding of irreparable harm must be grounded on something more than conjecture, surmise, or a party's unsubstantiated fears of what the future may have in store." *Charlesbank Equity Fund II v. Blinds To Go, Inc.*, 370 F.3d 151, 162 (1st Cir. 2004); *see also Winter*, 555 U.S. at 22 (a party "seeking preliminary relief [must] demonstrate that irreparable injury is *likely* in the absence of an injunction"). In other words, "speculative injury" is not enough. *Narragansett Indian Tribe v. Guilbert*, 934 F.2d 4, 6–8 (1st Cir. 1991) (cleaned up).

Plaintiff States rely on three theories of injury: the administrative costs of complying with the legal-services-for-aliens provision, a reduction in the amount of reimbursements to which they are entitled under their federal awards, and potential downstream adverse effects on public safety. None of those theories of harm constitutes irreparable harm.

**1.**    Plaintiff States first contend that they are harmed through the costs they will incur in complying with the legal-services-for-aliens-provision. But Plaintiffs offer sparse and largely conclusory assertions of the costs of compliance. Even assuming such costs both constitute cognizable injury and can be irreparable in the abstract, the threadbare assertions that Plaintiffs will have to "expend substantial additional administrative costs" to verify immigration status, *see* Doc. No. 3 at 30, are not enough to warrant the "extraordinary remedy" of a preliminary injunction. *Winter*, 555 U.S. at 22. The States already incur administrative costs in administering their DOJ grants, and some of those costs are subsidized by the Federal Government. *See, e.g.*, 2 C.F.R. § 200.403(h) (allowing recipients to charge administrative closeout costs to a federal grant award). And certainly, none of the States' many declarations establishes that the alleged incidental burdens of complying with the legal-services-for-aliens provision are sufficiently weighty to constitute irreparable harm. *See Sierra Club v. Larson*, 769 F. Supp. 420, 422 (D. Mass. 1991) ("To establish irreparable harm there must be an actual, viable, presently existing threat of *serious* harm.") (emphasis added). Indeed, the States have not explained why any administrative cost separately attributable to the challenged provision would not be exceedingly minimal. For example, rather than develop their own expertise in immigration law, the States could simply ask individuals seeking legal services whether they are removable or otherwise unlawfully present in the United States prior to incurring the expense of serving them. The States are not entitled to a preliminary injunction merely to avoid such *de minimis* costs.

**2.**    Plaintiffs also assert that they face losing some unspecified portion of their federal awards if they do not change their practices, Doc. No. 3 at 31. They seek to force the Federal Government to continue to reimburse them for the costs of providing legal services to illegal aliens despite DOJ's

24

judgment that some of those costs may not be charged against their awards and paid for with DOJ's own funds. Those claims are economic, and it is "well settled that economic loss does not, in and of itself, constitute irreparable harm." *Wis. Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985); *see also, e.g., Akebia Therapeutics, Inc. v. Azar*, 443 F. Supp. 3d 219, 230 (D. Mass. 2020) ("[E]conomic loss alone does not usually rise to the level of irreparable harm which a party must establish to obtain a preliminary injunction" (citation omitted)), *aff'd*, 976 F.3d 86 (1st Cir. 2020); *Seafreeze Shoreside, Inc v. U.S. Dep't of Interior*, 2023 WL 3660689, at *7 (D. Mass. May 25, 2023) ("Plaintiffs have not demonstrated 'irreparable harm,' but at most, economic loss"); *see also e.g., Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982) ("The Court has repeatedly held that the basis for injunctive relief in the federal courts has always been irreparable injury and the inadequacy of legal remedies."); *Danielson v. Local 275, Laborers Int'l Union*, 479 F.2d 1033, 1037 (2d Cir. 1973) ("Irreparable injury is suffered where monetary damages are difficult to ascertain or are inadequate."). As explained above, Plaintiffs have a remedy to obtain these costs in the Court of Federal Claims if they believe DOJ has not reimbursed them appropriately.

**3.** Finally, to the extent the States attempt to rely on their "sovereign interests," in the efficacy of their own crime victim programs, Doc. No. 3 at 29, that assertion of irreparable harm similarly fails. Nothing in the legal-services-for-aliens provision hinders States' ability to determine who should receive legal services. The challenged provision simply determines which of those services the Federal Government will finance with federal taxpayer dollars. The challenged provision does not condition Plaintiffs' acceptance of their grant award on adoption of a specified policy. Nor does it implicate all of the funds under the award or limit anything Plaintiffs may choose to do with their own funding. States remain free to furnish services to illegal aliens at their own expense. *See NFIB*, 567 U.S. at 579 ("The States are separate and independent sovereigns. Sometimes they have to act like it.").

The States' speculation that public safety may suffer if some illegal aliens are reluctant to seek assistance for fear of facing immigration consequences, Doc. No. 3 at 31, cannot salvage this claim.

That prediction of attenuated harm contingent on the independent acts of third parties is insufficient to support preliminary injunctive relief. *Cf. Summers v. Earth Island Inst.*, 555 U.S. 488 (2009) (rejecting a standing theory premised on a speculative chain of possibilities). Moreover, a plaintiff cannot establish irreparable injury by citing harms allegedly inflicted on non-parties. *See Winter*, 555 U.S. at 20 ("A plaintiff seeking a preliminary injunction must establish . . . that *he* is likely to suffer irreparable harm[.]") (emphasis added); *Nutrition Distribution, LLC v. Enhanced Athlete, Inc.*, 2017 WL 5467252, at *2 (E.D. Cal. Nov. 14, 2017) (rejecting argument that "the Court may consider irreparable harm to third parties in lieu of or in addition to irreparable harm to Plaintiff"). Ultimately, States have no interest in directing federal funds to expenses that the Federal Government has determined should not receive them. That argument, if accepted, would conscript the Federal Government into funding state policy preferences against the Federal Government's express judgment. The States cite no authority warranting that result, which would significantly impede the Federal Government's sovereign interests.

Even if Plaintiffs could claim some threat of harm, there would be no reason why they could not vindicate that alleged harm through individualized, specific lawsuits challenging particular funding disallowances for specific grants in the appropriate forum. Plaintiffs' declarations do not establish the need for the exceedingly broad relief they claim.

## IV.    The Balance of Equities and Public Interest Favor the Government

Even if Plaintiffs could establish irreparable harm, they have not shown that "the balance of equities and consideration of the public interest" favor a preliminary injunction. *Winter*, 555 U.S. at 32. Traditionally, a court first determines whether the movant's likely harm "will outweigh the harm which granting the injunction would inflict on [the defendant]." *7-Eleven, Inc. v. Grewal*, 60 F. Supp. 3d 272, 283 (D. Mass. 2014). Plaintiffs must demonstrate that their claimed injury outweighs any harm that granting the injunctive relief would inflict upon Defendants. *Lancor v. Lebanon Hous. Auth.*, 760 F. 2d 361, 362 (1st Cir. 1985). Next, courts consider whether "[t]he public interest weighs in favor of

granting" the preliminary injunction. *Grewal,* 60 F. Supp. 3d at 285. But where, as here, the government is the defendant, these factors simply "merge." *Nken*, 556 U.S. at 435.

Plaintiffs claim that granting emergency relief is equitable and in the public interest because it will avert the harms that will occur in the absence of an injunction. Doc. No. 3 at 33. But for the reasons already explained, none of those alleged harms rises to the level of irreparable harm justifying the extraordinary remedy of preliminary relief, *see* Section III, *supra*. Plaintiffs further claim that the public interest favors them because there is no public interest in the perpetuation of unlawful agency action. Doc. No. 3 at 33. But that argument presupposes the success of their incorrect view of the merits.

As the First Circuit has recognized, "[a]ny time a [government] is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury." *Int'l Ass'n of Machinists Loc. Lodge 207 v. Raimondo*, 18 F.4th 38, 47 (1st Cir. 2021) (quoting *Maryland v. King*, 567 U.S. 1301 (2012)). That is particularly true here, where Congress has enacted statutes authorizing the use of public funds for certain purposes, and the Executive Branch, in administering those statutes, has made a judgment about which services within the scope of those programs qualify for reimbursement. Indeed, that judgment fulfills DOJ's duty to ensure that allowable costs are reasonable and necessary for the performance of the federal award, *see* 2 C.F.R. § 200.403, and to administer grants in a way that is consistent with national policy objectives, *see id.* § 200.300*; id.* § 200.211(c)(ii). DOJ has done just that. And if Plaintiffs profess a different policy view, they may continue to provide legal services to illegal aliens without seeking federal reimbursement for those costs. At bottom, Plaintiffs simply desire to receive government subsidies on the terms that they prefer. But the government may make a value judgment and "implement that judgment by the allocation of public funds,'" *Rust v. Sullivan*, 500 U.S. 173, 192–93 (1991) (quoting *Maher v. Roe,* 432 U.S. 464, 474 (1977)). Accordingly, the balance of equities and public interest make preliminary injunctive relief inappropriate.

## V.    Any Injunctive Relief Should Be Accompanied by a Bond

Defendants also respectfully request that any injunctive relief accompany a bond under Federal Rule of Civil Procedure 65(c), which provides that "[t]he court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." A bond—in the amount of the affected funds themselves—is appropriate here given that any preliminary relief would potentially mandate that the agencies at issue spend money from the public fisc to which Plaintiffs are not entitled.

## CONCLUSION

For the foregoing reasons, the Court should dismiss this case for lack of venue and deny Plaintiffs' motion for preliminary injunction.

Dated: October 22, 2025

<div style="margin-left: 40%;">

Respectfully submitted,

BRETT A. SHUMATE
*Assistant Attorney General, Civil Division*

YAAKOV M. ROTH
*Principal Deputy Assistant Attorney General*

ANDREW I. WARDEN
*Assistant Branch Director*

*/s/ Elisabeth J. Neylan*
Elisabeth J. Neylan
N.Y. Bar Reg. No.: 6125736
*Trial Attorney*
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20530
Telephone: (202) 616-3519
Email: elisabeth.j.neylan@usdoj.gov

*Counsel for Defendants*

</div>