UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

STATE OF NEW YORK, *et al.*,

    *Plaintiffs*,

v.

UNITED STATES DEPARTMENT OF JUSTICE, *et al.*,

    *Defendants*.

Civil Action No. 1:25-CV-00499

**DECLARATION OF RACHEL JOHNSON**

I, RACHEL JOHNSON, pursuant to 28 U.S.C. § 1746, declare as follows:

1. I am the Chief Financial Officer for the Office of Justice Programs ("OJP"), a bureau of the United States Department of Justice ("DOJ" or, the "Department") at Washington, D.C. I have served OJP in this role since February 2022. In this position and through the staff of the office that I oversee (the Office of the Chief Financial Officer ("OCFO")), I provide fiscal policy guidance as well as accounting, budget, financial, and grants management oversight and support to contribute to OJP's overall financial integrity and the achievement of its programmatic and operational goals and objectives. Among my responsibilities—and those of OCFO—is the responsibility to maintain and update the *DOJ Grants Financial Guide* (the "*Guide*") in

coordination with the Department's Office on Violence Against Women ("OVW") and Office of Community Oriented Policing Services (the "COPS Office"), which are DOJ grant-making components that are separate from one another and from OJP.

2. This declaration is based on my personal knowledge and information made available to me in the course of performing my official duties.

3. I understand that the purpose of this declaration is to provide data and other information in support of Defendant's Motion to Dismiss and Opposition to Plaintiffs' Motion for Preliminary Injunction.

4. I understand that the subject of this litigation is the application, to certain OJP and OVW grant awards, of an unallowable-costs provision in the *Guide*, accessible in pdf format at https://www.ojp.gov/doj-financial-guide-2024, Chapter 3.13 ("Unallowable Costs"), p. 102, regarding "Legal Services for Aliens." The provision speaks for itself, but on its face, it prohibits the use of federal grant award funds to fund costs for certain legal services, subject to the various exceptions laid out in the provision itself—including where prohibiting such use would "contravene any express requirement of any law, or of any judicial ruling, governing or applicable to the award." For purposes of convenience of reference, page 102 is attached as an Addendum to this Declaration.

5. OJP is established by Title I of the Omnibus Crime Control and Safe Streets Act of 1968, Pub. L. No. 90-351, 82 Stat. 197, as amended (the "Omnibus Act"; codified, in main, at 34 U.S.C. ch. 101), which, pursuant to a Congressional finding that, "[t]o prevent crime and to insure the greater safety of the people, law enforcement efforts must be better coordinated, intensified, and made more effective at all levels of government," among many other things "authorize[s] grants to States and units of local government in order to improve and strengthen law enforcement." OJP administers federal grant programs authorized under many different statutory authorities, including (but not limited to) the Omnibus Act itself, the Juvenile Justice

and Delinquency Prevention Act of 1974,[1] the Victims of Crime Act of 1984,[2] the Violent Crime Control and Law Enforcement Act of 1994,[3] and the Homeland Security Act of 2002.[4] OJP programs, including through its grant-making, advance work that furthers DOJ's mission to uphold the rule of law, keep America safe, and protect civil rights. OJP provides federal leadership, funding, and other critical resources to directly support law enforcement, combat violent crime, protect American children, provide services to American crime victims, address public safety challenges (including human trafficking and the opioid crisis), and otherwise improve the coordination of law enforcement efforts at all levels of government.[5] Among other programs, OJP administers discretionary grant programs, including competitive-discretionary grant programs under which OJP selects grant recipients by means of a merit review process, and administrative-formula grant programs under which the amount an eligible applicant may apply to receive is determined by certain set criteria and OJP's administrative application of a mathematical formula.[6] OJP also administers statutory-formula programs under which an applicable program authorizing statute specifies program eligibility requirements and how award amounts are to be calculated.

6. OVW is established to carry out the functions of DOJ under the Violence Against Women Act of 1994 and its reauthorizations in 2000, 2006, 2013, and 2022, among other duties assigned to the OVW Director by law.[7] As indicated in its mission statement, OVW's mission is to provide

---

[1] Pub. L. No. 93-415, 88 Stat. 1109 (codified, in main, as amended, at 34 U.S.C. ch. 111).

[2] Pub. L. No. 98-473, 98 Stat. 2170 (codified, in part, as amended, at 34 U.S.C. ch. 201).

[3] Pub. L. No. 103-322, 108 Stat. 1796 (codified, in part, as amended, at 34 U.S.C. ch. 121).

[4] Pub. L. No. 107-296, subpart D, 116 Stat. 2159 (codified, as amended, at 6 U.S.C. ch. 1, subch. II, part C).

[5] U.S. Department of Justice, Office of Justice Programs, "About Us," https://www.ojp.gov/about (last visited October 15, 2025).

[6] *See* 2 C.F.R. § 200.1 (defining a discretionary award as "an award in which the Federal agency, in keeping with specific statutory authority that enables the agency to exercise judgment ('discretion'), selects the recipient or the amount of Federal funding awarded through a competitive process or based on merit of proposals" and noting that "[a] discretionary award may be selected on a non-competitive basis, as appropriate."); *see also* 2 C.F.R. § 2801 (adopting 2 C.F.R. part 200, with some specified exceptions, as a DOJ regulation).

[7] *See* Violence Against Women Office Act, Pub. L. No. 107-173, div. A, tit. IV, 116 Stat. 1758, 1789 (2002) (codified, as amended, at 34 U.S.C. §§ 10442-10445); *see also* Violence Against Women Act of 1994, Pub. L. No. 103-322, tit. IV, 108 Stat. 1796, 1902 (codified, in part, as amended, at 34 U.S.C. ch. 101, subchs. XIX & XX; ch. 121, subch. III; ch. 201, subch. II; ch. 213; ch. 301; ch 407, subch. II; and 25 U.S.C. § 1304(h)).

federal leadership in developing the nation's capacity to reduce violence against women and administer justice for and strengthen services to victims of domestic violence, dating violence, sexual assault, and stalking.[8]  I understand that OVW administers several federal grant programs, some of which are competitive-discretionary (whereby eligible applicants generally must compete for funding through a merit review process conducted by OVW, typically using external peer reviewers), and others are formula (whereby all eligible applicants receive an award, provided that they meet application requirements, with the amount of the award determined by a mathematical formula).

7. Many laws govern DOJ grant-making and the use of funds under DOJ grant awards, including provisions of pertinent appropriations statutes, program-authorizing- and organic statutory provisions, and any applicable regulations.  These may set out grant program purposes, elements, requirements, or limitations, as well as administrative requirements.  DOJ grant award recipients see the effect of DOJ's implementation of these laws in the award requirements that are set out in the offers of award that they, respectively, receive.  Recipients of such offers may accept them or not; to accept such an offer is to agree to comply with the requirements it sets out.

8. The *Guide* is published for use by recipients of Federal grant awards administered by OJP, OVW, and the COPS Office.  Although DOJ grant award recipients are always to refer to the award requirements set out in their respective offers of award, to determine any specific requirements that may apply to the award, the *Guide* serves as the primary reference source to assist such recipients to discharge their respective responsibilities under the awards, safeguard grant funds, and ensure that those funds are used for the purposes for which they were awarded.

9. All grant awards made by OJP contain the following provision (among others):

> Compliance with DOJ Grants Financial Guide
>
> References to the DOJ Grants Financial Guide are to the DOJ Grants Financial Guide as posted on the OJP website (currently, the "DOJ Grants Financial Guide" available at https://www.ojp.gov/funding/financialguidedoj/overview), including

---

[8] U.S. Department of Justice, Office on Violence Against Women, "Mission," https://www.justice.gov/ovw/mission (last visited October 16, 2025).

    any updated version that may be posted during the period of performance.  The recipient agrees to comply with the DOJ Grants Financial Guide.

10. All grant awards made by OVW contain the following provision (among others):

    Applicability of Part 200 Uniform Requirements and DOJ Grants Financial Guide

    The recipient agrees to comply with the Uniform Administrative Requirements, Cost Principles, and Audit Requirements in 2 C.F.R. Part 200, as adopted and supplemented by the Department of Justice (DOJ) in 2 C.F.R. Part 2800 (together, the "Part 200 Uniform Requirements"), and the current edition of the DOJ Grants Financial Guide posted on the OVW website, including any updated version that may be posted during the period of performance.  The recipient also agrees that all financial records pertinent to this award, including the general accounting ledger and all supporting documents, are subject to agency review throughout the life of the award, during the close-out process, and for three years after submission of the final Federal Financial Report (SF-425) or as long as the records are retained, whichever is longer, pursuant to 2 C.F.R. 200.334, 200.337.

11. Chapter 1.2 ("Resources"), in the opening section of the *Guide*, provides general details and background information, including regarding the general content of the *Guide* and the availability of "Change History" information.[9]  The "Change History" is a longstanding and regularly maintained online resource that enables recipients (and subrecipients) to keep track of updates to the *Guide* that may be incorporated into it during the period of performance under an award.  In addition to providing a regularly accessible "Change History" documenting the timing, affected sections, and general content of incorporated changes, OCFO regularly makes federal grants financial management training opportunities (in-person and virtually) and other resources available to help recipients (and subrecipients) stay informed of updates to the *Guide* and to other applicable financial management rules and policies.[10]  OVW similarly provides training and related resources on grants financial management.[11]  Additionally, both OJP and OVW provide one-on-one assistance for recipients, as may be indicated or requested from time

---

[9]    U.S. Department of Justice, Office of Justice Programs, "DOJ Grants Financial Guide Change History," https://www.ojp.gov/doj-financial-guide-2024/change-history (last visited October 16, 2025).  Recipients and subrecipients also may readily access the Guide and the "Change History" via the "DOJ Grants Financial Guide 2024" landing page, at https://www.ojp.gov/funding/financialguidedoj/overview (last visited October 16, 2025).

[10]    *See, e.g.,* U.S. Department of Justice, Office of Justice Programs, "Grants/Funding" webpages, https://www.ojp.gov/funding (last visited October 16, 2025).

[11]    *See*, *e.g.*, U.S. Department of Justice, Office on Violence Against Women, "After Receiving OVW Funds" webpages, https://www.justice.gov/ovw/after-receiving-ovw-funds (last visited October 16, 2025).

to time. DOJ grant-making agencies also make episodic use of electronically-disseminated communications that provide notice to recipients of changes affecting the financial management and administration of their DOJ grant awards.

12. In general, as the recipient executes award-funded projects during an award's period of performance, the DOJ grant-making component conducts oversight and monitoring of the recipients' compliance with the award's programmatic- and financial-management requirements. Each component, respectively, assigns grant managers to perform day-to-day award oversight and monitoring activities, review recipient performance and financial reporting, perform periodic review of award records, participate in site visits, and engage directly with recipients regarding their administration of their respective awards. DOJ grants financial management analysts perform grants financial review of pertinent award documentation and conduct site visits that are frequently coordinated and conducted jointly with programmatic site visits.[12]

13. In their respective monitoring and oversight of awards, if OJP or OVW staff were to encounter information or evidence indicating that potentially unallowable costs have been (or are being) incurred under an award, their first step, in the ordinary course (after any internal consultation or review), would be to notify the recipient (in writing) of their findings and detail what gave rise to the concern regarding unallowable costs, of any action(s) the recipient would need to take (such as providing documentation), and of any action(s) the grant-making component might take—consistent with the award's terms and conditions and applicable law, including administrative requirements. Speaking broadly regarding remedies generally available in the event of recipient non-compliance with an award requirement, I am aware that 2 C.F.R. §§ 200.339 and 200.340 identify the following non-compliance remedies:

- Temporarily withholding payments pending the recipient's (or subrecipient's) completion of corrective action(s)
- Disallowance of all or part of the cost of the activity or action not in compliance
- Suspending the award (in whole or in part)
- Terminating the award (in whole or in part)
- Initiating proceedings for suspension or debarment
- Withholding further awards for the project or program

---

[12] OCFO and OVW grants financial management analysts, respectively, perform these functions for OJP and OVW grant awards.

- Taking other remedies that may be legally available

I understand that costs charged to a DOJ grant award, once disallowed, ordinarily must be refunded with interest to the Federal Government—before, during, or after close-out of the award[13]—and constitute a debt to the Federal Government until repaid.  If a DOJ determination to disallow a cost charged to a DOJ grant award is not resolved at the grant-manager level, the award recipient could elect to request further review administrative (*e.g.*, supervisory-level review) of the determination within the DOJ grant-making component, up to the final level of leadership authority over the component.  It is my understanding that, beyond administrative review within DOJ, the recourse for a recipient disputing DOJ's final determination to disallow a cost would be to file a lawsuit in the Court of Federal Claims.[14]

    I declare under penalty of perjury that the foregoing is true and correct.

    EXECUTED this  20th  day of October, 2025.

                                                                           Rachel Johnson

---

[13]     *See*, *e.g.*, 2 C.F.R. §§ 200.410 and 200.345.

[14]     *See* 28 U.S.C. § 1491 (pertaining to the jurisdiction of the U.S. Court of Federal Claims over certain claims against the United States).