## UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| STATE OF NEW YORK; STATE OF COLORADO; STATE OF ILLINOIS; STATE OF RHODE ISLAND; STATE OF ARIZONA; STATE OF CALIFORNIA; DISTRICT OF COLUMBIA; STATE OF CONNECTICUT; STATE OF DELAWARE; STATE OF MAINE; STATE OF MARYLAND; COMMONWEALTH OF MASSACHUSETTS; STATE OF MICHIGAN; STATE OF MINNESOTA; STATE OF NEVADA; STATE OF NEW JERSEY; STATE OF NEW MEXICO; STATE OF OREGON; STATE OF VERMONT; STATE OF WASHINGTON; STATE OF WISCONSIN, | |
| *Plaintiffs*, | |
| v. | No. 1:25-cv-00499-MRD-AEM |
| UNITED STATES DEPARTMENT OF JUSTICE; PAMELA J. BONDI, in her official capacity as Attorney General of the United States; OFFICE OF JUSTICE PROGRAMS; MAUREEN HENNEBERG, in her official capacity as Acting Assistant Attorney General for the Office of Justice Programs; OFFICE FOR VICTIMS OF CRIME; KATHERINE DARKE SCHMITT, in her official capacity as Acting Director of the Office for Victims of Crime; BUREAU OF JUSTICE ASSISTANCE; TAMMIE GREGG, in her official capacity as Acting Director of the Bureau of Justice Assistance; OFFICE ON VIOLENCE AGAINST WOMEN; GINGER BARAN LYONS, in her official capacity as Acting Director of the Office on Violence Against Women. | |
| *Defendants*. | |

## PLAINTIFF STATES' REPLY IN SUPPORT OF THEIR MOTION FOR PRELIMINARY INJUNCTION

# <u>TABLE OF CONTENTS</u>

TABLE OF CONTENTS ........................................................................................... i

INTRODUCTION ................................................................................................. 1

FACTS ................................................................................................................ 2

ARGUMENT ........................................................................................................ 5

  I.   Plaintiffs Are Likely to Succeed on the Merits. ........................................... 5

     A.   All Plaintiffs, Including Rhode Island, Have Established Standing to Sue, and Thus Venue is Proper. ................................................................... 5

     B.   The Court Has Jurisdiction to Consider Plaintiffs' Claims on Previously Awarded Grants. ......................................................................... 8

     C.   The Legal Services Condition Violates the Spending Clause........................ 12

     D.   Plaintiffs Are Likely to Succeed in Showing that the Legal Services Condition Violates the APA. ................................................................... 17

  II.  Plaintiff States Have Demonstrated Irreparable Harm. ................................... 20

  III.  The Balance of the Equities and Public Interest Weigh in Plaintiff States' Favor. ........... 23

  IV.  The Court Should Exercise its Discretion and Deny Defendants' Request for a Bond. .... 24

## **INTRODUCTION**

In the weeks leading up to Plaintiff States' Complaint and Motion for Preliminary Injunction, Defendants repeatedly asserted that the Legal Services Condition applies to all DOJ grants, including Edward Byrne Memorial Justice Assistance ("Byrne JAG"), Victims of Crime Act ("VOCA"), and Violence Against Women Act ("VAWA") grants. At the time the Complaint was filed—the relevant time for evaluating standing—Defendants maintained that position. Then, in responding to Plaintiff States' Motion, Defendants suddenly reversed positions, claiming that the Condition does not apply to VOCA Victim Assistance and VAWA grants. Thus, Defendants argue that this Court lacks venue because Rhode Island's declaration in support of the preliminary injunction discussed VOCA Victim Assistance grants but not Byrne JAG grants. But Defendants' flip-flop, made for the first time in litigation, is insufficient to decide this case. Defendants offer no assurance that they will be bound by their change in litigation position, and they offer no protection against the possibility they will flip back to their pre-litigation position in the future.

Furthermore, Defendants have failed to rebut Plaintiff States' strong showing on each of the preliminary injunction factors. Venue is proper and all Plaintiff States have standing since Defendants have repeatedly and consistently asserted that the Condition applies to all DOJ grants. And as confirmed by Justice Barrett's recent concurrence in *NIH v. American Public Health Ass'n*, the Tucker Act does not apply where Plaintiff States are challenging agency guidance and seeking purely forward-looking relief. 145 S. Ct. 2658, 2662 (2025) (Barrett, J., concurring). Defendants' arguments on the merits of the claims fare no better. Long-standing precedent establishes that the Legal Services Condition violates the Spending Clause because it is unlawfully retroactive and ambiguous. The Legal Services Condition likewise violates the APA because it is arbitrary and capricious and contrary to law. Finally, the harms to Plaintiff States established through

1

voluminous declarations are clear, despite Defendants' efforts to minimize them. Beyond the costs of implementing and complying with ambiguous terms, Plaintiff States face the risk of enforcement actions and the undermining of their sovereign interests in protecting public safety and their criminal justice systems. This Court should therefore grant Plaintiff States' Motion for Preliminary Injunction.

## **FACTS**

Plaintiff States filed this case based on Defendants' repeated and consistent assertions that the Legal Services Condition applies to all DOJ grants. On August 18, Defendant Office of Justice Programs ("OJP") sent notices by email to each Plaintiff State, specifically referencing previously awarded VOCA and Byrne JAG grants, and informing recipients that, effective immediately, they would no longer be allowed to use these grant funds for legal services for certain immigrants. *See* ECF No. 3 ("PI Mot.") at 11, and declarations and exhibits cited therein. In response, Plaintiff States sought, and Defendants agreed, to delay implementation of the Condition until October 31, 2025, so that Plaintiff States could file this action.

On September 15, Defendant OJP sent a follow-up email to each Plaintiff State, again specifically referencing the same previously awarded VOCA and Byrne JAG grants, and informing recipients that, beginning on October 31, 2025, the August 18 notice "will be implemented as specified in the DOJ Grants Financial Guide." *See* PI Mot. at 11, and declarations and exhibits cited therein; *see also* Ex. 3, Nevada (Brady Decl.) ¶ 9. The Legal Services Condition in the DOJ Grants Financial Guide contained a new exclusion, not present in the August 18 notice, providing that legal services for aliens would be permitted if "disallowance would contravene any express requirement of any law, or of any judicial ruling, governing or applicable to the award" (the "disallowance clause"). *Id.* at 12.

2

Defendants never asserted that the disallowance clause meant that the Legal Services Condition did not apply to certain DOJ grants. Rather, through a series of communications, Defendants suggested that it still applies across the board. For example, because the DOJ Grants Financial Guide applies to all DOJ grants—not just those administered by OJP—Plaintiff States sought clarification on the application of the Legal Services Condition and to which grants it applies. In a September 19 email, Plaintiff States inquired:

> We received emailed notices that the 'Legal Services for Aliens' condition applies to VOCA and Byrne grants awarded prior to September 15, 2025. We did not receive notices for any other grants. Can you confirm that this condition does not apply to any other DOJ grants awarded prior to September 15, 2025 (e.g., VAWA, including the FY2025 awards issued in August)?

Ex. 1 at 6. Defendants responded, "[t]o the extent your question is what *OJP awards* does the Aug./Sept notices apply, the answer is OJP award recipients who received the notices." *Id.* at 5 (emphasis added).

Given that Plaintiff States received August 18 notices for VOCA Victim Assistance and Victim Compensation grants, Defendants' response appeared to confirm that the Legal Services Condition applied to these grants despite the disallowance clause. Defendants' email did not, however, answer Plaintiff States' question on VAWA grants given that they are administered by the Office of Violence Against Women ("OVW"), which is not part of OJP. Plaintiff States therefore asked Defendants to clarify:

> We take from your response that the fact that the "Legal Services for Aliens provision is now included in Section 3.13 of the DOJ Grants Financial Guide does not mean that every DOJ grant (such as VAWA) is subject to the condition, only those grants for which a specific notice was issued. We would also appreciate confirmation as to whether DOJ intends to apply this provision to the VAWA grants awarded in August, and the VOCA grants awarded this week both of which contain a reference to the Financial Guide.

*Id.*

After some additional back-and-forth emails, on September 25, Defendants informed Plaintiff States that the terms of the DOJ Grants Financial Guide, including the Legal Services provision, "applies to all DOJ awards." *Id.* at 1. Defendants also caveated their answer, asserting that "[d]epending on the subject matter and scope of the grant, however, the legal services provision may not have any relevance because the grant does not contemplate the provision of legal services." *Id.* Plaintiff States responded, "we have been trying to ascertain whether the condition applies to VAWA and other grants that did not receive a notice. From your response, we understand the condition to apply to VAWA." *Id.*

Notably, Defendants never indicated that either VAWA or VOCA Victim Assistance awards were exempt from the Condition because of the new disallowance clause. To the contrary, Defendants stated that the purpose of OJP's September 15 notice was to alert recipients of OJP awards, including VOCA Victim Assistance, "where the provision of legal services could be a potentially allowable cost of the grant." *Id.* And Defendants indicated that enforcement of the Legal Services provision "to any open OJP or OVW awards" would begin on October 31. *Id.* Defendants likewise never corrected Plaintiff States' statement that the Condition applies to VAWA. Indeed, Defendants confirmed as much when the DOJ sent grantees a September 30, 2025, notification of the addition of the Legal Services condition to the DOJ Grants Financial Guide. PI Mot. Ex. 4, Colorado (Lunn Decl.) ¶ 33, Attachment 3. The notice specifically referenced the application of the Guide to OVW grants—that is, to VAWA grants.

On October 22, 2025, Defendants filed their Opposition to Plaintiffs' Motion for a Preliminary Injunction. In that document, for the first time, Defendants offered a different view on the applicability of the Legal Services Condition. They state in that legal brief that "by its own express terms, the legal-services-for-aliens provision does not apply to VOCA's Victim

Assistance Program or VAWA Programs." ECF 28-1, ("Opp.") at 22. At no point in their brief do they explain why they sent notice of the new provision *specifically* to recipients of the VOCA Victims Assistance Program and VAWA grants, or why they did not disclaim application of the provision to VAWA when specifically asked by counsel of the Plaintiff States.

## ARGUMENT

### I.     Plaintiffs Are Likely to Succeed on the Merits.

In challenging Plaintiff States' claims, Defendants offer new facts that are unsupported by any evidence or declarations, and novel interpretations of well-applied precedents. The Court should reject each of Defendants' arguments.

#### A.  All Plaintiffs, Including Rhode Island, Have Established Standing to Sue, and Thus Venue is Proper.

Defendants' argument that this Court lacks venue is premised entirely on its about-face assertion that the Legal Services Condition does not apply to VOCA Victim Assistance or VAWA grants.[1] Opp. at 8–10. Defendants further claim that because Rhode Island has submitted a declaration addressing only VOCA Victim Assistance funds, Rhode Island does not have standing and therefore venue is improper in this Court. *Id.* In other words, Defendants strategically attempt to use this new litigating position to avoid accountability. But Defendants' about-face assertion is contrary to everything they represented prior to their Opposition, and Defendants offer no assurances they will not change their minds at a later date. Defendants' defective disavowal is insufficient to defeat standing of any Plaintiff States.

---

[1] Defendants styled their response as a "Cross-Motion to Dismiss for Lack of Venue and Opposition" to Plaintiff States' Motion for Preliminary Injunction. *See* Opp.  Defendants would not agree to defer the November 14 enforcement date of the Legal Services Condition to allow the parties to present full briefing on both the Motion for Preliminary Injunction and Motion to Dismiss in time for the Court to decide both motions before the enforcement date. Plaintiff States address the venue arguments here as relevant to Plaintiffs' likelihood of success on the merits.

For Article III standing, "at the commencement of the litigation [the plaintiff must have] a 'personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief.'" *Nat'l Ass'n of Gov't Emps., Inc. v. Yellen*, 120 F.4th 904, 909–10 (1st Cir. 2024) (quoting *Hein v. Freedom From Religion Found., Inc.*, 551 U.S. 587, 598 (2007)); *see also Ramírez v. Sánchez Ramos*, 438 F.3d 92, 97 (1st Cir. 2006) ("The doctrine of standing measures whether a plaintiff has satisfied the 'personal stake' requirement at the commencement of an action."). In seeking "'forward-looking declaratory or injunctive relief,'" the plaintiff must show "ongoing injury or a sufficient threat that the injury will recur." 120 F.4th at 910 (quoting *Roe v. Healey*, 78 F.4th 11, 21 (1st Cir. 2023); *see also City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983)); *see also Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014).

Although Defendants pay lip service to the legal framework for standing, they fail to apply it in any meaningful manner. *See* Opp. at 8. Defendants ignore that, at the time of the "commencement of the litigation," Defendants had repeatedly represented that the Legal Services Condition applies to all DOJ grants and even confirmed in their August 18 and September 15 notices that it applies to VOCA Victim Assistance, which necessarily includes Rhode Island's Victim Assistance program. Indeed, Defendants expressly stated that the provision "applies to all DOJ awards" with the only caveat being "the legal services provision may not have any relevance because the grant does not contemplate the provision of legal services." Ex. 1 at 1. That caveat plainly did not apply to VOCA, VAWA, or Byrne JAG grants, all of which contemplate the provision of legal services. And when pressed directly, Defendants refused to identify any DOJ grants to which the Legal Services condition did not apply, aside from those grants that do not provide legal services. *Id.* Therefore, at the time of filing this action, *all* Plaintiffs had a personal

injury traceable to Defendants' conduct and redressable by the declaratory and injunctive relief requested.

Only when faced with the Complaint and Preliminary Injunction Motion did Defendants suddenly claim that the new condition never applied to VOCA Victim Assistance and VAWA grants. Defendants' new assertions that the Condition does not apply to VOCA Victim Assistance or VAWA grants, made for the first time in their Opposition, are insufficient to defeat Plaintiff States' standing.[2] Defendants only present attorney argument to support it—they offer no supporting declaration or other evidence that would hold them to their position going forward and no evidence that Plaintiff States did not have an injury-in-fact at the time of the Complaint based on Defendants' contrary statements and representations.[3] On its face, Defendants' argument is no

---

[2] Given Defendants' about-face after the Complaint and Motion, mootness is the only relevant doctrine. But Defendants did not argue that their new assertions render Rhode Island's claims moot. "[S]tanding measures whether a plaintiff has satisfied the 'personal stake' requirement at the commencement of an action," while "mootness measures whether the plaintiff's interest remains sufficient to justify continuing federal jurisdiction." *Ramírez*, 438 F.3d at 97. "[M]ootness is aptly described as 'the doctrine of standing set in a time frame.'" *Id.* (quoting *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 397 (1980)). The burden, however, differs—Defendants have a "heavy burden" of establishing that "after the case's commencement, intervening events have blotted out the alleged injury and established that the conduct complained of cannot reasonably be expected to recur." 438 F.3d at 100. Just as Defendants' litigation-based attorney argument fails to defeat Plaintiff States' standing, it does not carry their "heavy burden" on mootness. And in any event, the reason Defendants argue standing is to defeat this Court's venue, which is also determined at the time of filing. *See* 28 U.S.C. 1391(b)(2) (venue proper in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred'); *see also Mollan v. Torrance*, 22 U.S. 537 (1824) ("[J]urisdiction of the Court depends upon the state of things at the time of the action brought, and that after vesting, it cannot be ousted by subsequent events.").
[3] Despite submitting a declaration in support of their Opposition by Rachel Johnson, Chief Financial Officer of the Office of Justice Programs, she offers no statement regarding Defendants' new reading of the Legal Services Condition, and Defendants cite no evidence of any agency adoption of their litigation-focused position. *See* Opp. at 21–22 (citing no evidence).

"more than a mere litigation position" and insufficient to defeat Plaintiff States' standing.[4] *See Lopez v. Candaele*, 630 F.3d 775, 788 (9th Cir. 2010); *Siders v. City of Brandon*, 123 F.4th 293, 300 (5th Cir. 2024) (same); *Yoder v. Bowen*, 146 F.4th 516, 525 (6th Cir. 2025) (same); *Cf. Int'l Game Tech. PLC v. Garland*, 628 F. Supp. 3d 393, 400 (D.R.I. 2022) (explaining that the "[t]hreat of prosecution may be too illusory to support standing when there is an unequivocal statement disavowing the government's right to prosecute").

Under these facts, Plaintiff States cannot take Defendants on their word that the Condition does not apply to VOCA Victim Assistance and VAWA grants because Plaintiff States have no assurance that Defendants will not change their position at any time in the future. Indeed, Defendants argue on Plaintiff States' Spending Clause claim that so long as a new grant condition applies only to future expenditures, it can be imposed any time after award acceptance. *See* Opp. at 14–16. And they argue on Plaintiff States' APA claim that they have broad discretion in determining whether to reimburse certain types of legal services. *See id.* at 20–21. Without an unequivocal and enforceable disavowal, Plaintiff States cannot simply accept that Defendants will maintain their new litigation-based reading of the Condition going forward. All Plaintiffs, including Rhode Island, have standing such that venue in this Court is appropriate.

### B. The Court Has Jurisdiction to Consider Plaintiffs' Claims on Previously Awarded Grants.

The Court should reject Defendants' argument that, with respect to the applicability of its new policy to previously awarded grants, Plaintiff States can only seek relief in the Court of

---

[4] Plaintiff States even proposed that the parties enter a stipulation in light of Defendants' statements in their brief. Plaintiff States explained that they "brought this action after Defendants repeatedly indicated that the Legal Services Condition applies to all DOJ grants. At no point did Defendants offer the interpretation you now provide in your Omnibus Motion to Dismiss/Opposition. If Defendants are truly willing to stand by your representations in your brief, then a stipulation should not be an issue." Ex. 2. Defendants declined.

Federal Claims pursuant to the Tucker Act. *See* Opp. at 10. Defendants' arguments can be easily disposed because the challenge here concerns the legality of a prospective new agency policy and Plaintiff States seek purely forward-looking relief, including a preliminary injunction from future enforcement and a Section 705 stay postponing the effective date of the new policy. *See NIH*, 145 S. Ct. at 2662 (Barrett, J., concurring) (plaintiffs may continue APA challenges to agency guidance and policies in district court). This is not a breach-of-contract claim and seeks no contract remedies. It is a quintessential challenge to unconstitutional and unlawful agency action.

Specifically, in determining whether claims sound in contract and must be brought in the Court of Federal Claims, courts look to (1) "'the source of the rights upon which the plaintiff bases its claims,'" and (2) "'the type of relief sought (or appropriate).'" *Rhode Island Coal. Against Domestic Violence v. Kennedy*, No. 1:25-cv-00342, 2025 WL 2988705, at *3 (D.R.I. Oct. 23, 2025) ("*RICADV*") (quoting *Megapulse, Inc. v. Lewis*, 672 F.2d 959, 968 (D.C. Cir. 1982)). Applied here, "'the gravamen'" of Plaintiff States' claims "'do[] not turn on terms of a contract between the parties;'" they turn on the Spending Clause and Defendants' statutory violations. *See id* at *4 (citation omitted)*. And as to relief sought, Plaintiff States do not assert that any money is currently owed, nor are Plaintiff States seeking payments or any form of monetary relief. Rather, Plaintiff States seek only to prevent the future enforcement of a new unlawful agency policy that does not yet apply and has never been enforced to deny any claims for money.

*NIH* confirms this result. Justice Barrett's deciding vote created a two-track process where parties may continue to assert APA challenges seeking prospective relief regarding an agency's policy decisions in district court, while non-constitutional claims challenging past grant terminations need to be brought in the Court of Federal Claims. *NIH*, 145 S. Ct. at 2661 (Barrett, J., concurring) (distinguishing between "challenges to . . . grant terminations," which "belong[ed]

in the Court of Federal Claims," and challenges to "policies related to grants," which belonged in federal district court); *see also id.* at 2671 (Jackson, J., concurring in part) (noting that five Justices agreed that "district courts may still exercise jurisdiction over . . . grant-related policies that contravene federal law"); *cf. Illinois v. FEMA*, No. 1:25-cv-00206, 2025 WL 2716277, at *9 (D.R.I. Sep. 24, 2025) ("[T]he recent decisions from the Supreme Court regarding grants have arisen in the specific context of grant terminations and damages claims that fall within the Tucker Act framework, not the promulgation of grant conditions that govern eligibility for future funding."). Here, that means that Plaintiff States can continue to prospectively challenge the agency's new policy decision that has not yet gone into effect.

Seeking to avoid this result, Defendants argue that claims based on "previously awarded grants" necessarily sound in contract. Opp. at 12–13. Such argument ignores *Bowen v. Massachusetts*, 487 U.S. 879 (1988), which also addressed previously awarded grants and permitted a challenge seeking declaratory and injunctive relief concerning a new HHS policy disallowing certain costs. *NIH* makes clear that *Bowen* remains good law; indeed, Justice Barrett relied on *Bowen* to explain her reasoning as to why prior grant terminations were distinct from a purely prospective challenge to a policy decision. *NIH*, 145 S. Ct. at 2661 (Barrett, J. concurring).

The Supreme Court cases cited by Defendants do not suggest otherwise, as they all involved prior grant terminations. *See Dep't of Educ. v. California*, 604 U.S. 650, 650 (2025) (per curiam) (relief sought required "the Government to pay out past-due grant obligations and to continue paying obligations as they accrue"); *NIH*, 145 S. Ct. at 2658 (district court did not have jurisdiction over claims "to order relief designed to enforce any obligation to pay money" (internal quotations omitted)). Here, Plaintiff States are not suing over grant terminations. Instead, they seek only to enjoin and stay future enforcement of an agency decision. *NIH*, 145 S. Ct. at 2662 n.1

(Barrett, J., concurring) ("If a district court decides that agency guidance violates the APA, it may vacate the guidance, preventing the agency from using it going forward."); *see also RICADV*, 2025 WL 2988705 at *4 (distinguishing *NIH* and *Department of Education* as "deal[ing] with grant terminations, not grant conditions").

Finally, Defendants offer no basis to support their assertion that the Court lacks jurisdiction to hear the Spending Clause claims. The *NIH* and *Department of Education* decisions were based entirely on limitations in the waiver of sovereign immunity for the APA. *NIH*, 145 S. Ct. at 2659. But constitutional claims do not rely on the APA's waiver of sovereign immunity, and thus those decisions have no application to the Spending Clause claims. Nor is there any basis to accept that Congress clearly intended to strip federal courts of jurisdiction to hear such constitutional claims. If "Congress intends to preclude judicial review of constitutional claims its intent to do so must be clear." *Webster v. Doe*, 486 U.S. 592, 603 (1988) (explaining this "heightened showing" is required "to avoid the 'serious constitutional question' that would arise if a federal statute were construed to deny any judicial forum for a colorable constitutional claim"). The Court of Claims has narrow jurisdiction to hear claims for money damages brought pursuant to money-mandating constitutional provisions. *LeBlanc v. United States*, 50 F.3d 1025, 1028 (Fed. Cir. 1995) (holding Court of Federal Claims lacked jurisdiction over various constitutional claims that did not mandate payment of money by the government). There is zero evidence that by granting jurisdiction to the Court of Federal Claims to hear money-mandating claims, Congress clearly intended to strip district courts of jurisdiction to hear other colorable constitutional claims, like the Spending Clause claim brought here. Defendants' argument that no court has jurisdiction to hear the Spending Clause claims is without basis and should be rejected.

### C.  The Legal Services Condition Violates the Spending Clause.

Plaintiff States are likely to succeed on the Spending Clause claim because Defendants, by adopting the Legal Services Condition, "surpris[ed] participating States with post acceptance or 'retroactive' conditions" and further failed to provide States "clear notice" of the terms of grants awarded to them. *Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1, 25 (1981). Defendants' arguments to the contrary fail.

### 1.  The Spending Clause Applies to Defendants' Actions.

Defendants argue that the Spending Clause does not apply to "Executive Branch decisions about how to expend funds Congress has appropriated for the Executive Branch to administer." Opp. at 14. But courts in this district have repeatedly recognized the applicability of the Spending Clause to conditions placed on grants by agencies. *See, e.g.*, *FEMA,* 2025 WL 2716277, at *14 (conditions placed by agency on grants violated Spending Clause); *California v. U.S. Dep't of Transp.*, 788 F. Supp. 3d 316, 322–23 (D.R.I. 2025) (plaintiffs were likely to succeed on argument that conditions placed by agency on grants violated the Spending Clause); *New York v. U.S. Dep't of Just.*, No. 1:25-cv-00345, 2025 WL 2618023, at *20 (D.R.I. Sep. 10, 2025) (holding an agency rule violated the Spending Clause).

Neither of the out-of-circuit, district court cases that Defendants cite suggest otherwise. In *Bd. of Educ. v. McMahon*, No. 1:25-cv-00586, 2025 WL 2017177 (D.N.M. July 18, 2025), the issue was the termination of grants, not the conditions placed on them. *Id*. at *10. And *Wilmer Cutler Pickering Hale & Dorr LLP v. Exec. Off. of the President*, 784 F. Supp. 3d. 127 (D.D.C. 2025) involved no particular federal grant, but rather an Executive Branch order to suspend security clearances for individuals at a law firm. *Id.* at 162. This Court should therefore reject Defendants' argument that because they are an agency, not the legislature, they have unfettered discretion to impose unclear, post-acceptance conditions on grant funding.

12

2. **The Legal Services Condition Is "Retroactive" Because It Was Imposed "Post-acceptance."**

Relying on cases addressing retroactive application of statutes and regulations, Defendants argue that, as to previously awarded grants, the Legal Services Condition is not "retroactive" because it does not "attach new legal consequences to completed conduct." Opp. at 15 (citation omitted). Defendants' argument ignores the Supreme Court's decision in *Pennhurst*, which prohibited "retroactive" grant conditions, defined as those imposed on states "*post acceptance*." *Pennhurst*, 451 U.S. at 25 (emphasis added). It is irrelevant whether the government imposes a condition on future conduct if that conduct takes place pursuant to a grant accepted before the condition was announced.

Indeed, Defendants' other Spending Clause arguments seem to recognize that the question is not whether the condition applies to future conduct, but whether the grantee was aware of the condition before accepting the grant award. As Defendants acknowledge, what matters is whether states understand "that acceptance of federal funds obligates States to comply with a condition," Opp. at 17 (citing *Pennhurst,* 451 U.S. at 18), such that they can "make an 'informed choice'" as to whether to accept funds, *id.* at 18 (quoting *Pennhurst,* 451 U.S. at 25). As the First Circuit has put it, "in order for an exercise of the spending power to be deemed legitimate, the state must voluntarily and knowingly accept the terms of the deal." *Mayhew v. Burwell*, 772 F.3d 80, 86 (1st Cir. 2014) (internal quotations omitted). Such an "informed choice" could not have possibly happened here, where defendants imposed the condition after States had accepted funds. This is why the *Pennhurst* Court defined a "retroactive" condition as one imposed "post acceptance." *Pennhurst*, 451 U.S. at 25.

Finally, Defendants cannot use the DOJ Grants Financial Guide referenced in the award agreements as a Trojan Horse for imposing post-acceptance conditions. As Defendants themselves

recognize, the government must "make the existence of the condition itself—in exchange for the receipt of federal funds—explicitly obvious." Opp. at 18 (quoting *Mayweathers v. Newland*, 314 F.3d 1062, 1067 (9th Cir. 2002)). There is nothing "explicitly obvious" about sliding a new condition into an old document long after awards had been accepted.

### 3. The Legal Services Condition Is Unlawfully Ambiguous.

Defendants' arguments that the Legal Services Condition does not violate the Spending Clause's requirement for clear notice are not legally supported or based on evidence.

For example, Defendants assert that Plaintiff States cannot assert a Spending Clause claim predicated on lack of clarity because the Legal Services Condition "does not condition the States' receipt of funds on their adopting favored policies" but is instead "a direct restriction on the use of federal funds themselves." Opp. at 16. But the case Defendants rely upon, *National Federation of Independent Business v. Sebelius*, addressed a different issue—whether the Affordable Care Act impermissibly "compel[led] the States to enact or administer a federal regulatory program." 567 U.S. 519, 575 (2012) (internal quotations omitted). *Sebelius* did not change, and in fact recognized, *Pennhurst*'s admonition that "if Congress intends to impose a condition on the grant of federal moneys, it must do so unambiguously." *Id.* at 583 (quoting *Pennhurst*, 451 U.S. at 17).

Ignoring the numerous ambiguities raised by the Legal Services Condition that Plaintiff States raise, Defendants also argue that the Legal Services Condition meets the "clear notice" requirement because "Congress must only make clear that acceptance of federal funds obligates States to comply with a condition." Opp. at 17. According to Defendants, the Spending Clause "demands no more" than inclusion of the condition in a Grants Guide with which grantees must comply. *Id.* at 18–19. In other words, Defendants argue that the Condition need not be clear to comport with the Spending Clause, it need only exist.

14

Defendants are wrong, again ignoring that grant conditions must be unambiguous so that states can knowingly exercise their choice. *Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy*, 548 U.S. 291, 296 (2006) ("[W]hen Congress attaches conditions to a State's acceptance of federal funds, the conditions must be set out 'unambiguously.'") (quoting *Pennhurst*, 451 U.S. at 17). Vague and ambiguous conditions such as these "deprive[] the states of the ability to make informed decisions, rendering the conditions constitutionally invalid." *FEMA*, 2025 WL 2716277, at *14 (finding ambiguity in meaning of conditions attached to the award of federal grants under the Department of Homeland Security); *USDOT*, 788 F. Supp. 3d at 322 (determining that condition placed on federal transportation grants lacked was unclear in "scope and lacks specificity in how the States are to cooperate on immigration enforcement in exchange for Congressionally appropriated transportation dollars").

The cases cited by Defendants do not suggest or change this well-accepted precedent. In both *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167 (2005), and *Davis ex rel. LaShonda D. v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629 (1999), the Supreme Court held that *Pennhurst*'s notice requirement is not at issue where the funding recipient *intentionally* violates the funding requirement. *Jackson*, 544 U.S. at 183; *Davis*, 526 U.S. at 642. Here, Plaintiff States' concern is that they may *unintentionally* violate the Legal Services Condition because of its ambiguity. The remaining out-of-circuit cases that Defendants cite do not help their argument either. To be sure, as Defendants argue, a condition need not lay out "every factual instance in which a state will fail to comply." *Mayweathers*, 314 F.3d at 1067; *see also Charles v. Verhagen*, 348 F.3d 601, 608 (7th Cir. 2003); *Benning v. Georgia*, 391 F.3d 1299, 1307 (11th Cir. 2004). But Plaintiff States are not asking for such specificity. The problem here is that even Defendants themselves have struggled

to determine to which *grants* the condition applies. *See supra* at Facts; Argument § I(A). Such extreme indeterminacy runs afoul of the Spending Clause.

Finally, Defendants' litigation-focused arguments—that the Condition does not apply to VOCA Victim Assistance and VAWA grants, and that for the other grants all that Plaintiff States need to do to comply is ask about recipients' immigration status—does not clarify the ambiguity in the Legal Services Condition. As explained above in Section I(A), Defendants have offered no assurances that they will be bound by these new positions such that the ambiguity Plaintiff States identified in their Complaint and Motion still exist. Further, even if Plaintiff States could accept Defendants' assertions on interpretation, Plaintiff States still do not have clear notice of what constitutes an "express requirement of any law" under the disallowance clause. As one example, courts have long recognized that the Sixth Amendment right to counsel in a criminal case applies to citizens and noncitizens alike. *See Wong Wing v. United States*, 163 U.S. 228, 241 (1896). And indigent defendants have a right to counsel paid by the government. *Gideon v. Wainwright*, 372 U.S. 335, 339–40 (1963). Thus, for Byrne JAG grants funding indigent defense for removable aliens, is the Sixth Amendment right to counsel an "express requirement" of law under the disallowance clause?

Numerous open questions also remain about Defendants' assertion that to comply States "could simply ask individuals seeking legal services whether they are removable or otherwise unlawfully present in the United States prior to incurring the expense of serving them." Opp. at 24. For example, how are Plaintiff States supposed to navigate this issue if they have laws that prevent asking about immigration status? *See* PI Mot. Ex. 17, New York (Williams Decl.) ⁋⁋ 13, 14; PI Mot. Ex. 4, Colorado (Lunn Decl.) ⁋ 20; PI Mot. Ex. 15, New Jersey (Teffenhart Decl.) ⁋ 11; PI Mot. Ex. 25, Oregon (Sivell Decl.) ⁋⁋ 11, 12. Further, can Plaintiff States truly just "simply

ask" or is documentation and recordkeeping required? Finally, individuals often do not know whether the government has or will deem them removable from the United States or whether that determination is correct. Removability is a latent status; it can accrue for complicated reasons and, even when it has been clearly invoked by the federal government, can take years of litigation to resolve. How Plaintiff States and their subgrantees are supposed to treat individuals who are unsure of the government's view of their legal status, particularly when important constitutional rights are at stake, remains unanswered. In sum, Plaintiff States do not have clear notice of how to comply with the Legal Services Condition.

### D. Plaintiffs Are Likely to Succeed in Showing that the Legal Services Condition Violates the APA.

The Legal Services Condition violates the APA because it is an arbitrary and capricious action as applied to all grants, and is contrary to law as to the VOCA and VAWA grants. PI Mot. at 22–27. Defendants' actions are arbitrary and capricious because when an agency changes policy positions, it "must show that there are good reasons for the new policy," *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009), and consider any "serious reliance interests" engendered by the status quo. *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 30 (2020) (citation modified). Defendants offered no reasons when they imposed the Legal Services Condition and paid no heed to the substantial reliance interests affected by this abrupt change. This failure, alone, violates the APA.[5] The APA also requires consideration of the agency's authorizing statutes before acting. *FEMA*, 2025 WL 2716277, at *12. Defendants provide no evidence of such consideration, despite the fact they have blanketed the Legal Services Condition across *every grant* that DOJ administers. Such an "indiscriminate application of these conditions across the entire

---

[5] Defendants do not even attempt to cure this failure in their brief, stating only that the new condition is a "policy choice." Opp. at 21.

spectrum of [agency]-administered grants demonstrates the absence of tailoring and the failure to consider whether such conditions are appropriate for particular programs." *Id.*

Defendants have failed to rebut the merits of Plaintiffs' claims. First, Defendants seek to evade APA review by claiming it is not a "final agency action" under 5 U.S.C. § 704. Courts analyze whether an agency action is final by assessing whether it: (1) "marks the consummation" of agency decision-making and (2) determines "rights or obligations from which legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997) (citation modified). Here, Defendants' actions culminated in a new rule published in the DOJ Financial Guide and announced in a notice to all grant recipients. With an enforcement start date of November 14, 2025, it has concrete consequences for how recipients administer DOJ grants. Nothing about a published rule, with legal consequences, and with a date certain to take effect, is "tentative or interlocutory." *Rhode Island v. Trump*, 781 F. Supp. 3d 25, 45 (D.R.I. 2025) (citation omitted). The rule is final as it applies to both existing grants and future grants, as future applicants are faced with the decision to either forgo the award or accept its terms. *See RICADV*, 2025 WL 2988705, at *5–6.

Defendants next argue they can impose post-acceptance conditions because their decision to do so has been committed to agency discretion. Opp. at 21 (citing *Lincoln v. Vigil*, 508 U.S. 182, 192 (1993)). But *Vigil* involved an agency's discretion to administer a bare-bones lump sum appropriation, one that did not even mention the funding program at issue. *See id.* at 185–90. This case does not involve such an appropriation. Rather, Defendants are attempting to graft a new condition on to formula grants already governed by detailed statutes. *See* 34 U.S.C. §§ 20101–11 (VOCA); 34 U.S.C. § 10446 (VAWA); 34 U.S.C. §§ 10151–59 (Byrne JAG). The rule from *Vigil* simply does not apply. *See, e.g.*, *Dep't of Com. v. New York*, 588 U.S. 752, 772 (2019); *FEMA*, 2025 WL 2716277, at *10.

18

Furthermore, Defendants' attempts to find authority *within* those statutory schemes for this action all fail. Regarding the Byrne JAG grants, Defendants point to § 10102(a)(6), which allows the Assistant Attorney General to "'plac[e] special conditions on all grants.'" Opp. at 20. But the First Circuit has already considered, and rejected, the argument that such language confers broad authority to DOJ to impose novel conditions on Byrne JAG grants. *See City of Providence v. Barr*, 954 F.3d 23, 41 (1st Cir. 2020) (holding § 10102(a)(6) must be read in light of its neighboring provisions which confer "only ministerial responsibilities" to the Assistant AG). They also cite DOJ's "reasonable discretion" to administer grant programs, conferred by 28 U.S.C. § 530C(a)(4). Opp. at 20. But that extremely general power simply to run a grant program does not confer on Defendants the specific power to impose a retroactive condition across grant programs, wholly unrelated to the programs' statutory purpose.

Nor do Defendants ever explain why their Condition would be considered "reasonable" under § 530C(a)(4). Although Defendants cite their regulatory power to categorize certain costs as "unallowable" under § 200.410, *id.*, that provision says nothing about making such a determination *after* an award has been accepted. Furthermore, the new Condition stands in stark contrast to the other "unallowable costs" provisions applicable to these grants, the vast majority of which rely on statutes or underlying regulations adopted through normal agency procedure, and none of which make otherwise-allowable costs unallowable purely due to some potentially latent attribute of the recipient of the grant-funded service.[6] *See* PI Mot. Ex. 1, DOJ Grants Financial Guide, at 5–8

---

[6] Notably, the DOJ Guide provides a statutory and/or regulatory citation for nearly each other listed unallowable cost. The only unallowable costs listed in the Guide *without* an accompanying legal basis are (1) Compensation of Federal Employees, (2) Travel of DOJ Employees, and (3) the "Legal Services for Aliens" condition. *See* PI Mot. Ex. 1, E1-05–08.

(outlining and explaining various unallowable costs). Defendants' attempt to find specific authority for the Legal Services Condition in DOJ's various general grantmaking powers all fail.

Defendants also make a novel argument based on the *quantity* of harm here, asserting that it "is not arbitrary and capricious for DOJ to decline to reimburse a small subset of expenses under its grant awards that are inconsistent with its policy objectives." Opp. at 22. But the APA has no quantity requirement, nor is the harm States suffer from this new condition small. *See* PI Mot. at 28–32 (describing Plaintiffs' irreparable harm). The APA requires reasoned decision-making, with careful analysis of reliance interests, and with consideration of the authorizing statutes governing the agency action. None of that occurred here.

Finally, Defendants argue that the Legal Services Condition is not contrary to law, as it applies to VOCA Victims Assistance and the VAWA grants, because its application to those programs is subject to an exception within the Legal Services Condition. Opp. at 21–22. But as explained above, this is a litigation concession, at odds with both the notice Plaintiff States received regarding the VOCA program and numerous pre-filing communications between counsel. *See supra* § 1(A). Absent a concrete commitment not to apply the Legal Services Condition to VOCA Victims Assistance and VAWA grants, Defendants' concession confirms that the DOJ's application of the Condition to those grants is contrary to law. The imposition of the Legal Services Condition must be set aside under the APA.

## II.     Plaintiff States Have Demonstrated Irreparable Harm.

Plaintiff States have demonstrated that they are "likely to suffer irreparable harm in the absence of preliminary relief" in the form of proprietary injuries stemming from new costs and operational burdens, an undermining of Plaintiff States' sovereign interests in public safety and their criminal justice systems, and injury from the threat of enforcement, which jeopardizes federal funding. PI Mot. at 28–32; *see also Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

20

Ignoring the substantial evidence that Plaintiff States provided, including 25 declarations spanning 24 different agencies across the Plaintiff States, Defendants seek to minimize and/or characterize Plaintiffs' harm as purely economic. The Court should reject these arguments.

*First*, Defendants argue that any harm to Plaintiff States in their efforts towards compliance with the Legal Services Condition is either speculative or *de minimis* given that Plaintiff States already incur administrative costs. Opp. at 24. This argument is nonsensical—the fact that an organization has certain existing administrative costs does not mean that the addition of new and ambiguous administrative responsibilities implied by the Legal Services Condition causes no harm. Indeed, even Defendants admit that at a minimum Plaintiff States will need to inquire about the immigration status of any individuals receiving services. *Id.* But Defendants' suggestion to "simply ask" raises a panoply of its own issues, highlighting the harm to Plaintiffs States. Defendants' single sentence in a legal brief cannot substitute for actual, reliable guidance and leaves unanswered questions on conflicts with state laws, and documentation and verification, imposing unrecoverable administrative costs. *See supra* § 1(C)(3). Further, if there were a way to inquire, as Defendants suggest, even asking the question may undermine the Plaintiff States' ability to carry out public safety programs given the potential deterrence effect such questions may create. *See, e.g.*, Ex. 3, Nevada (Brady Decl.) ¶¶ 10–14; PI Mot. Ex. 3, California (Hammet Decl.) ¶ 17; PI Mot. Ex. 22, Washington (Guertin-Anderson) ¶ 18; PI Mot. Ex. 23, Wisconsin (Phelps Decl.) ¶ 24.

As a result, Defendants fail to refute Plaintiffs' evidence that the administrative costs associated with such immigration verification would be substantial. *See, e.g.*, Ex. 3, Nevada (Brady Decl.) ¶¶ 10–14; PI Mot. Ex. 2, Arizona (Coleman Decl.) ¶¶ 17–21; PI Mot. Ex. 3, California (Hammett Decl.) ¶¶ 28–36; PI Mot. Ex. 5, Connecticut (Pelka Decl.) ¶¶ 30–32; PI Mot. Ex. 6,

Delaware (Kervick Decl.) ¶¶ 22–24; PI Mot. Ex. 7, Illinois (Hadley Decl.) ¶ 23–25; PI Mot. Ex. 12, Massachusetts (Lowney Decl.) ¶¶ 24–30; PI Mot. Ex. 13, Michigan (Nagel Decl.) ¶¶ 37–39; PI Mot. Ex. 17, New York (Williams Decl.) ¶¶ 31–33; PI Mot. Ex. 22, Washington (Guertin-Anderson Decl.) ¶¶ 27–28; *see also New York v. U.S. Dep't of Homeland Sec.*, 969 F.3d 42, 86 (2d Cir. 2020) (finding irreparable harm where States would "be required to undertake costly revisions to their eligibility systems to ensure that non-citizens are not automatically made eligible for or enrolled in benefits"). Notably, Defendants still do not offer to pay any of these costs, which are all unrecoverable because of Defendants' sovereign immunity.

*Second*, Defendants' argument that Plaintiff States' loss of funds is an economic loss that may be compensated through monetary damages not only ignores that economic damages are irreparable if unrecoverable, but misstates the harms flowing from the Legal Services Condition. The Condition's ambiguities give Plaintiff States no notice or guidance regarding compliance, and it is the very uncertainty *itself* that harms Plaintiff States. The only guidance Defendants have offered are the unenforceable statements in their Opposition that the Legal Services Condition does not apply to VOCA Victim Assistance and VAWA grants, and that States may comply with the Condition by asking individuals seeking services about their citizenship status. These statements only confirm that Defendants themselves do not know what compliance requires. This ambiguity means that Plaintiff States face serious consequences from alleged non-compliance or inadequate monitoring at any turn, as explained by Defendants themselves. *See* Opp. Ex. 1, DOJ (Johnson Decl.) ¶ 13. The harms caused by such uncertainty cannot be remedied by monetary damages. And, again, Defendants identify no waiver of sovereign immunity that would allow recovery of monetary damages. *Tennessee v. Dep't of Educ.*, 104 F.4th 577, 613 (6th Cir. 2024) (federal government's sovereign immunity typically makes compliance costs irreparable).

22

*Finally*, "the State has a strong sovereign interest in ensuring public safety and criminal justice within its territory, and in protecting all crime victims." *Oklahoma v. Castro-Huerta*, 597 U.S. 629, 651 (2022); *see also Oregon v. Ice*, 555 U.S. 160, 168 (2009) ("administration of a discrete criminal justice system is among the basic sovereign prerogatives States retain"). The Court should reject Defendants' argument that the harm to Plaintiff States' public safety and criminal justice systems "if some illegal aliens [sic] are reluctant to seek assistance" is speculative. Opp. at 25. Again, Defendants misunderstand Plaintiff States' argument. The unrebutted evidence from Plaintiff States is that *victims and witnesses*—irrespective of citizenship or immigration status—would foreseeably be reluctant to seek services and participate in the criminal justice system if Plaintiff States' agencies included a predicate immigration verification step. *See* PI Mot. at 16, 30–31; *see also* Ex. 3, Nevada (Brady Decl.) ⁋⁋ 10–14; PI Mot. Ex. 3, California (Hammet Decl.) ⁋ 17; PI Mot. Ex. 5, Connecticut (Pelka Decl.) ⁋ 36; PI Mot. Ex. 13, Michigan (Nagel Decl.) ⁋ 11; PI Mot. Ex. 19, Oregon (Keck Decl.) ⁋⁋ 6–7; PI Mot. Ex. 20, Rhode Island (Hogan Decl.) ⁋ 17; PI Mot. Ex. 22, Washington (Guertin-Anderson) ⁋ 18; PI Mot. Ex. 23, Wisconsin (Phelps Decl.) ⁋ 24. This harm flows directly to Plaintiff States through their "strong sovereign interests" in ensuring public safety, administering their criminal justice systems, and protecting all crime victims. *See also, e.g.*, *City & Cnty. of San Francisco v. Trump*, 783 F. Supp. 3d 1148, 1187 (N.D. Cal. 2025) (actions that "threaten to undermine trust between the public and local government constitutes irreparable harm"); *City of Los Angeles v. Sessions*, No. CV17-7215-R, 2018 WL 6071072, at *3 (C.D. Cal. Sep. 13, 2018) (same).

## III. The Balance of the Equities and Public Interest Weigh in Plaintiff States' Favor.

Because of the seriousness of the harm caused to Plaintiff States by Defendants' unlawful Condition, the balance of the equities and public interest weighs heavily in favor of Plaintiffs. Defendants argue that "Congress has enacted statutes authorizing the use of public funds for certain

purposes, and the Executive Branch, in administering those statutes, has made a judgment about which services within the scope of those programs qualify for reimbursement." Opp. at 27. But Defendants have not demonstrated where Congress has authorized the Legal Services Condition. In fact, the Legal Services Condition is instead a policy objective of the Executive Branch that has no basis in law, and "[t]here is generally no public interest in the perpetuation of unlawful agency action." *League of Women Voters of the U.S. v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016). Similarly, there is no public interest in enabling Defendants to act beyond their designated authority. The balance of equities and the public interest therefore favor the maintenance of the status quo by granting Plaintiff States' Motion for Preliminary Injunction.

## IV.    The Court Should Exercise its Discretion and Deny Defendants' Request for a Bond.

The Court should exercise its discretion to deny Defendants' request for a bond. *See Int'l Ass'n of Machinists & Aerospace Workers v. E. Airlines, Inc.*, 925 F.2d 6, 9 (1st Cir. 1991) ("[T]here is ample authority for the proposition that the provisions of Rule 65(c) are not mandatory and that a district court retains substantial discretion to dictate the terms of an injunction bond."). Defendants identify no harm that warrants a bond, *see* Opp. at 28, and a bond should be denied here in any event as this case seeks to vindicate the public interest. *See, e.g.*, *U.S. Dep't of Just.*, 2025 WL 2618023, at *25 (no bond); *Nat'l Council of Nonprofits v. Off. of Mgmt. & Budget*, 775 F. Supp. 3d 100, 130 (D.D.C. 2025) (no bond). To the extent a bond is required, Plaintiffs request that the bond be nominal, consistent with the practice in this Circuit. *See Maine v. U.S. Dep't of Agric.*, 778 F. Supp. 3d 200, 236–38 (D. Me. 2025) (collecting cases); *see also New York v. Kennedy*, 789 F. Supp. 3d 174, 214 (D.R.I. 2025) (imposing nominal bond of $100).

## <u>CONCLUSION</u>

Based on the motion and the above reasoning, Plaintiff States request that the Court grant Plaintiffs' Motion for Preliminary Injunction.

Dated: October 31, 2025                        Respectfully submitted,

**LETITIA JAMES**                              **PHILIP J. WEISER**
Attorney General for the State of New York     Attorney General for the State of Colorado

By: */s/ Natasha M. Korgaonkar*                By: */s/ Nora Passamaneck*
Rabia Muqaddam*                                David Moskowitz*
*Chief Counsel for Federal Initiatives*        *Deputy Solicitor General*
Natasha M. Korgaonkar*                         Nora Passamaneck*
*Special Counsel*                              *Senior Assistant Attorney General*
Zoe Levine*                                    Finnuala K. Tessier*
*Special Counsel*                              *Assistant Attorney General*
Benjamin Liebowitz*                            Colorado Department of Law
*Assistant Attorney General*                   1300 Broadway, #10
28 Liberty St. New York, NY 10005              Denver, CO 80203
212-416-6557                                   (720) 508-6000
Natasha.Korgaonkar@ag.ny.gov                   david.moskowitz@coag.gov

*Attorneys for the State of New York*           *Attorneys for the State of Colorado*

**KWAME RAOUL**                                **PETER F. NERONHA**
Attorney General of Illinois                   Attorney General of Rhode Island

By: */s/ Michael M. Tresnowski*                By: */s/ Patrick J. Dolan*
Michael M. Tresnowski*                         Patrick J. Dolan (RI No. 10462)
*Assistant Attorney General*                   *Senior Counsel to the Attorney General*
Alex Hemmer                                    Paul T.J. Meosky (RI No. 10742)
*Deputy Solicitor General*                     *Special Assistant Attorney General*
Christopher G. Wells                           150 South Main Street
*Chief of the Public Interest Division*        Providence, RI 02903
R. Henry Weaver                                (401) 274-4400
*Assistant Attorney General*                   PDolan@riag.ri.gov
Office of the Illinois Attorney General        PMeosky@riag.ri.gov
115 LaSalle Street
Chicago, IL 60603                              *Attorneys for the State of Rhode Island*
(773) 758-4496
Michael.Tresnowski@ilag.gov

*Attorneys for the State of Illinois*

**KRISTIN K. MAYES**                           **ROB BONTA**
Attorney General of Arizona                    Attorney General for the State of California

By: */s/ Joshua G. Nomkin*                     Michael L. Newman*
Joshua G. Nomkin*                              Senior Assistant Attorney General

25

Office of the Attorney General
2005 North Central Avenue
Phoenix, Arizona 85004
(602) 542-3333
Joshua.Nomkin@azag.gov

*Counsel for the State of Arizona*

Joel Marrero* Supervising Deputy Attorney
General Jesse Basbaum*
Brian Bilford*
Luke Freedman*
Lee I. Sherman*
Deputy Attorneys General

By: */s/ Christopher P. Tenorio*
Christopher P. Tenorio*
Deputy Attorney General California Department
of Justice
600 W. Broadway, Suite 1800
San Diego, CA 92101 (619) 738-9000
Christopher.Tenorio@doj.ca.gov

*Attorneys for the State of California*

**BRIAN L. SCHWALB**
Attorney General for the District of Columbia

By: */s/ Mitchell P. Reich*
Mitchell P. Reich *
Senior Counsel to the Attorney General
Office of the Attorney General for the District
of Columbia
400 Sixth Street, NW
Washington, D.C. 20001
(202) 279-1261
mitchell.reich@dc.gov

*Attorney for the District of Columbia*

**WILLIAM TONG**
Attorney General of Connecticut

By: */s/ Ashley Meskill*
Ashley Meskill*
Assistant Attorney General
Connecticut Office of the Attorney General
165 Capitol Avenue
Hartford, CT 06106
(860) 808-5270
ashley.meskill@ct.gov

*Attorney for the State of Connecticut*

**KATHLEEN JENNINGS**
Attorney General of the State of Delaware

By: */s/ Ian R. Liston*
Ian R. Liston
Director of Impact Litigation
Vanessa L. Kassab
Deputy Attorney General
Rose Gibson
Assistant Attorney General

**AARON M. FREY**
Attorney General for the State of Maine

By: /s/ Stanley Abraham
Stanley Abraham*
Assistant Attorney General
Office of the Attorney General
 6 State House Station
Augusta, ME  04333-0006
Tel.:  207-626-8800

26

Delaware Department of Justice
820 N. French Street
Wilmington, DE 19801
(302) 683-8899
Ian.Liston@delaware.gov

*Attorneys for the State of Delaware*

**ANTHONY G. BROWN**
Attorney General for the State of Maryland

By: */s/ Virginia A. Williamson**
Virginia A. Williamson
Assistant Attorney General
Office of the Attorney General
200 Saint Paul Place, 20th Floor
Baltimore, Maryland 21202
410-576-6584
VWilliamson@oag.state.md.us

*Attorney for the State of Maryland*

**DANA NESSEL**
Attorney General of Michigan

By: */s/ Neil Giovanatti*
Neil Giovanatti*
John Pallas*
*Assistant Attorneys General*
Michigan Department of Attorney General
525 W. Ottawa
Lansing, MI 48909
(517) 335-7603
GiovanattiN@michigan.gov
PallasJ@michigan.gov

*Attorneys for the State of Michigan*

**AARON D. FORD**
Attorney General for the State of Nevada

Fax: 207-287-3145
Stanley.Abraham@maine.gov

*Attorney for the State of Maine*

**ANDREA JOY CAMPBELL**
Attorney General for the Commonwealth of Massachusetts

By: */s/ Michelle R. Pascucci*
Katherine B. Dirks
Chief State Trial Counsel
Michelle Rita Pascucci
State Trial Counsel
1 Ashburton Place
Boston, Massachusetts 02108
(617) 963-2255
Katherine.Dirks@mass.gov
Michelle.Pascucci@mass.gov

*Attorneys for the Commonwealth of Massachusetts*

**KEITH ELLISON**
Attorney General for the State of Minnesota

By: */s/ Joseph R. Richie*
Joseph R. Richie
Special Counsel
445 Minnesota Street, Suite 1400
St. Paul, Minnesota, 55101
(651) 300-0921
joseph.richie@ag.state.mn.us

*Attorney for the State of Minnesota*

**MATTHEW J. PLATKIN**
Attorney General of New Jersey

27

By: /s/ Heidi Parry Stern
Heidi Parry Stern (Bar. No. 8873)
Solicitor General
Office of the Nevada Attorney General
1 State of Nevada Way, Ste. 100
Las Vegas, NV 89119
HStern@ag.nv.gov

*Attorney for the State of Nevada*

By: */s/ Meghan Musso*
Meghan Musso*
Amanda McElfresh*
*Deputy Attorneys General*
Office of the Attorney General
25 Market Street
Trenton, NJ 08625
(609) 696-5276
meghan.musso@law.njoag.gov

*Counsel for the State of New Jersey*

**RAÚL TORREZ**
Attorney General for the State of New Mexico

By: */s/ Mark Noferi*
Mark Noferi*
*Senior Litigation Counsel*
NM Department of Justice
408 Galisteo Street
Santa Fe, New Mexico 87501
(505) 490-4060
MNoferi@nmdoj.gov

*Attorney for the State of New Mexico*

**DAN RAYFIELD**
Attorney General of Oregon

By: */s/ Scott P. Kennedy*[1]
Scott P. Kennedy
Senior Assistant Attorney General
Oregon Department of Justice
100 SW Market Street
Portland, OR 97201
Tel (971) 453-9050
Fax (971) 673-5000
Scott.Kennedy@doj.oregon.gov

*Attorneys for Plaintiff State of Oregon*

**CHARITY R. CLARK**
Attorney General for the State of Vermont

By: */s/ Jonathan T. Rose*
Solicitor General
109 State Street
Montpelier, VT 05609
(802) 828-3171
jonathan.rose@vermont.gov

*Attorney for the State of Vermont*

**NICHOLAS W. BROWN**
Attorney General of Washington

By: */s/ Benjamin Seel*
Benjamin Seel*
*Assistant Attorney General*
Marsha Chien*
Cristina Sepe*
*Deputy Solicitors General*
Washington State Office
of the Attorney General
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744
Benjamin.Seel@atg.wa.gov

*Attorneys for the State of Washington*

28

**JOSHUA L. KAUL**
Attorney General for the State of Wisconsin

By: */s/ Colin T. Roth*
Colin T. Roth*
Assistant Attorney General
Wisconsin Department of Justice
17 West Main Street
Post Office Box 7857
Madison, Wisconsin 53707-7857
(608) 266-7636
colin.roth@wisdoj.gov

*Attorney for the State of Wisconsin*