# EXHIBIT #3

## **DECLARATION OF CHRISTINE BRADY**

I, Christine Brady, pursuant to 28 U.S.C. § 1746, hereby declare that the following is true and correct:

1. I am over the age of eighteen and understand the obligations of an oath. I have personal knowledge of all the facts stated herein. If called as a witness, I could and would testify competently to the matters set forth below.

2. I am an Assistant Attorney General at the Nevada Office of the Attorney General, and I have held this role since February 2019.

3. As an Assistant Attorney General, my main responsibilities include overseeing the Criminal Prosecution Unit, Bureau of Consumer Protection, Investigations, Medicaid Fraud, the Post-Conviction Unit and Victim Support Services. My responsibilities comprise developing policies and programs relating to improving criminal justice response throughout Nevada. I have participated in several statewide boards and commissions, including the Advisory Commission for the Administration of Justice, the Attorney General's Domestic Violence Council, and the Nevada Sentencing Commission. In 2022, I served as a National Association of Attorneys General International Fellow the subject of which was "Prosecutorial and Preventative Strategies to Combat Sexual and Domestic Violence."

4. Prior to my appointment as Assistant Attorney General for the State of Nevada, I served as a Deputy Public Defender, representing indigent persons in Washoe County, Nevada. In that capacity, I contended with the fact that active victim participation in a case increases the likelihood of a successful investigation and prosecution. When a victim fails to show up as a witness for a critical matter, such as a preliminary hearing, bail hearing or trial, the result is that the prosecution is delayed and the charges may be negotiated to a significantly reduced crime or

even dismissed. This is especially true in sexual-violence, trafficking and domestic-battery cases, where much of the evidence consists of the victim's credible testimony.

### *Victims of Crime Act – Victim Assistance and Victim Compensation Programs*

5. I am familiar with the Victims of Crime Act ("VOCA"). The purpose of VOCA is to provide resources and assistance, including certain direct services, to victims and witnesses of crime, and their families. The resources and assistance provided to these individuals in the wake of a crime are critical to their healing, their safety, and public safety generally.

6. Victim Assistance and Victim Compensation funds are critical to Nevada. In this State, these funds assist victims and families to cover costs in the immediate period after a crime has been committed and, in the longer term, when healing from the lasting impacts of crime. These funds support some of the most vulnerable members of our communities, people who may have experienced significant upheaval in their lives. Some of the most vulnerable individuals in Nevada include elder adults, children, injured and disable persons, rural citizens and low-income families. The programming and services that these funds support also help us to build trust with victims and witnesses, whose participation (irrespective of their immigration status) is important to the advancement of public safety interests.

### *Emergency legal assistance under VOCA Victim Assistance*

7. VOCA funding is critical in providing emergency legal assistance involving some of the most violent crimes. For example, when a person is suddenly forced to flee from a violent person to whom they are economically dependent, they are faced not only with the immediate danger of sustaining physical injuries but also the collateral consequences of losing their housing, health care and ability to afford groceries and other basic needs. If the victim has children, then they are confronted with the untenable circumstance of leaving the violence to then subject

themselves and their children to homelessness and abject poverty. VOCA funding is critical in such emergencies because it provides access to the courts to (among many other things) seek an order of protection or obtain representation in family court to gain emergency custody of children right after a domestic violence incident or in housing court for the purpose of legally vacating an unsafe location before a lease agreement has expired. *See* 28 C.F.R. §§ 94.119(a)(10), (f).

8. Emergency legal services that are allowable under the Victim Assistance program are critical to victim restoration, well-being and safety. Civil legal assistance can help mitigate the damage done by criminal acts, protect victims and witnesses from further victimization or retaliation and encourage individuals to report crimes and cooperate with investigations and prosecutions.

***The unallowable cost notice and legal services restriction***

9. I understand that DOJ has announced a new "unallowable costs" rule that purports to limit how the State and its subgrantees can use VOCA funds for legal services. The rule provides that the "costs of providing legal services (that is, professional services of the kind lawfully provided only by individuals licensed to practice law) to any removable alien (see 8 U.S.C. § 1229a(e)(2)) or any alien otherwise unlawfully present in the United States are disallowed and may not be charged against the award," with certain narrow exceptions.

10. There are numerous problems with the legal services restriction. Most importantly, it will injure the criminal-justice system in Nevada. Criminal acts do not discriminate between victims based on immigration status. As discussed above, VOCA funds are essential to ensuring that victims and witnesses assist law enforcement in bringing criminals to justice. Excluding an entire class of victims and witnesses from this support will simply mean that more crimes go unreported or unsolved and more criminals remain on the streets. That undermines public safety

for all community members, including non-immigrants. In fact, when an immigrant commits a crime, prosecuting it will often require securing the cooperation of those in his or her community – that is, fellow immigrants. Demanding immigration documents at best, and outright denying assistance at worst, to members of immigrant communities will make it harder to find victims and witnesses in these communities. If we demand this of witnesses and victims they will be too frightened to assist us with investigations and prosecutions – not because they are necessarily undocumented, but rather they are afraid of being detained, accused and labeled as an "illegal immigrant."

11. Furthermore, based on my experience, it would be extremely difficult to implement a system to verify immigration status and exclude some victims and witnesses from some services. Immigration status is legally complex, and it would require extensive new expertise and training for staff members to learn how to verify various immigration statuses. I do not know how Nevada could expect our subgrantees, most of whom are resource-limited, nonprofit and community-based organizations, to develop entirely new expertise and practices for determining which victims are "removeable" or "otherwise unlawfully present." To my knowledge, the federal government is not offering any funding to address these enormous new burdens that it is imposing.

12. It is also important to consider that people who have experienced crime, such as survivors of domestic violence and human trafficking, may not have access to the legal documents required to prove that they have lawful status. In fact, we know from our work with survivors that cutting off victims' access to important legal documents is a common coercive and abusive tactic. Excluding all individuals who cannot prove their immigration status will inevitably punish victims who simply do not have access to the requisite documentation, regardless of their immigration

4

status. Additionally, many victims are children who never possessed those documents from the onset.

13. Finally, the victims, families, and witnesses who come to us and our subgrantees to seek assistance are often going through the worst, most difficult periods of their lives. Many have been subject to or exposed to physical violence and may be suffering from trauma. The VOCA program is designed to support these individuals in their time of need. The legal services restriction denies them that support.

14. The legal services restriction runs counter to the requirements of VOCA as we understand them and is at odds with the ethos of this work. I know, based on my professional expertise through 6 years of experience in the victim advocacy space and another 13 years working in the criminal-justice system, that asking victims questions that make them fearful, particularly as a threshold question before agreeing to assist them, is harmful to those individuals *and* to their trust in our criminal system. It is detrimental to public safety, as this will foreseeably dissuade some victims and witnesses from coming forward – whether to law enforcement or subgrantees – in the first place. And it will erode the credibility of community organizations that are forced to interrogate individuals in trying circumstances before being able to offer support.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 13th day of October 2025, in Reno, Nevada.

Christine Brady
Assistant Attorney General
Nevada Office of the Attorney General

5